## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| JERALD VARGAS MALESPIN,<br>Individually and On Behalf of All Others<br>Similarly Situated,<br><br>                    Plaintiff,<br><br>          v.<br><br>LONGEVERON INC., GEOFF GREEN,<br>JAMES CLAVIJO, JOSHUA M. HARE,<br>DONALD M. SOFFER, NEIL E. HARE,<br>and ROCK SOFFER,<br><br>                    Defendants. | Case No.<br><br><br>CLASS ACTION COMPLAINT<br><br><br>JURY TRIAL DEMANDED |

Plaintiff Jerald Vargas Malespin ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding Longeveron Inc. ("Longeveron" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet. Plaintiff believes that substantial additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Longeveron Class A common stock pursuant and/or traceable to the Offering Documents (defined below) issued in connection with the Company's initial public offering conducted on or about February 12, 2021 (the "IPO" or "Offering"); and/or (b) Longeveron securities between February 12, 2021 and August 12, 2021, both dates inclusive (the "Class Period"). Plaintiff pursues claims against the Defendants under the Securities Act of 1933 (the "Securities Act") and the Securities Exchange Act of 1934 (the "Exchange Act").

2. Longeveron is a clinical stage biotechnology company that engages in developing cellular therapies for aging-related and life-threatening conditions. The Company's lead investigational product is Lomecel-B, a cell-based therapy product that is derived from culture-expanded medicinal signaling cells that are sourced from the bone marrow of young healthy adult donors. Longeveron is conducting, among other trials, a Phase 2b trial of its Lomecel-B product for aging frailty (the "Phase 2b Aging Frailty Trial"). The Phase 2b Aging Frailty Trial's primary efficacy endpoint is the change from baseline in the six-minute walk test ("6MWT") at six months (or 180 days) for Lomecel-B subjects compared to placebo subjects.

3. On January 19, 2021, Longeveron filed a registration statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on February 11, 2021 (the "Registration Statement").

4. On or about February 12, 2021, pursuant to the Registration Statement, Longeveron's Class A common stock began trading on the Nasdaq Capital Market ("NASDAQ") under the ticker symbol "LGVN."

5.     Also on February 12, 2021, Longeveron filed a prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement (the "Prospectus" and, together with the Registration Statement, the "Offering Documents").

6.     Pursuant to the Offering Documents, Longeveron conducted the IPO, issuing 2.66 million shares of its Class A common stock to the public at the Offering price of $10.00 per share, for approximate proceeds of $24.7 million to the Company after applicable underwriting discounts and commissions, and before expenses.

7.     The Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation.   Additionally, throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and compliance policies.   Specifically, the Offering Documents and Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lomecel-B was not as effective in treating aging frailty as Defendants had led investors to believe; (ii) accordingly, Lomecel-B's clinical and commercial prospects with respect to aging frailty were overstated; and (iii) as a result, the Offering Documents and Defendants' public statements throughout the Class Period were materially false and/or misleading and failed to state information required to be stated therein.

8.     On August 13, 2021, Longeveron issued two press releases—one announcing topline results of the Phase 2b Aging Frailty Trial, and a second providing a corporate update and reporting the Company's financial results for the second quarter of 2021.   Both press releases disclosed, among other results, that Lomecel-B had "not achiev[ed] . . . statistical significance for the pairwise comparison to placebo" with respect to the primary efficacy endpoint.

9.      On this news, Longeveron's stock price fell $1.51 per share, or 27.91%, to close at $3.90 per share on August 13, 2021, representing a total decline of 61% from the Offering price.

10.     As of the time this Complaint was filed, Longeveron's stock price continues to trade below the $10.00 per share Offering price, damaging investors.

11.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Longeveron's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

12.     The claims asserted herein arise under and pursuant to Sections 11 and 15 of the Securities Act (15 U.S.C. §§ 77k and 77o), and Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

13.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, Section 22 of the Securities Act (15 U.S.C. § 77v), and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

14.     Venue is proper in this Judicial District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  Longeveron is headquartered in this Judicial District, Defendants conduct business in this Judicial District, and a significant portion of Defendants' actions took place within this Judicial District.

15.     In connection with the acts alleged in this Complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## **PARTIES**

16.     Plaintiff, as set forth in the attached Certification, purchased or otherwise acquired Longeveron common stock pursuant and/or traceable to the Offering Documents issued in connection with the IPO, and/or purchased or otherwise acquired Longeveron securities at artificially inflated prices during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

17.     Defendant Longeveron is a Delaware corporation with principal executive offices located at 1951 NW 7th Avenue, Suite 520, Miami, Florida 33136.  The Company's Class A common stock trades in an efficient market on the NASDAQ under the ticker symbol "LGVN."

18.     Defendant Geoff Green ("Green") has served as Longeveron's Chief Executive Officer at all relevant times.  Green signed or authorized the signing of the Registration Statement filed with the SEC.

19.     Defendant James Clavijo ("Clavijo") has served as Longeveron's Chief Financial Officer at all relevant times.  Clavijo signed or authorized the signing of the Registration Statement filed with the SEC.

20.     Defendants Green and Clavijo are sometimes referred to herein collectively as the "Exchange Act Individual Defendants."

21.     The Exchange Act Individual Defendants possessed the power and authority to control the contents of Longeveron's SEC filings, press releases, and other market communications.  The Exchange Act Individual Defendants were provided with copies of Longeveron's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them

to be corrected.  Because of their positions with Longeveron, and their access to material information available to them but not to the public, the Exchange Act Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Exchange Act Individual Defendants are liable for the false statements and omissions pleaded herein.

22.     Longeveron and the Exchange Act Individual Defendants are sometimes referred to herein collectively as the "Exchange Act Defendants."

23.     Defendant Joshua M. Hare ("J. Hare") served as a Manager of Longeveron at the time of the IPO and is currently Chairman of the Company's Board of Directors (the "Board").  J. Hare is also a co-founder of the Company.  J. Hare signed or authorized the signing of the Registration Statement filed with the SEC.

24.     Defendant Donald M. Soffer ("D. Soffer") served as a Manager of Longeveron at the time of the IPO and is currently on the Board.  D. Soffer is also a co-founder of the Company.  D. Soffer signed or authorized the signing of the Registration Statement filed with the SEC.

25.     Defendant Neil E. Hare ("N. Hare") served as a Manager of Longeveron at the time of the IPO and is currently on the Board.  N. Hare signed or authorized the signing of the Registration Statement filed with the SEC.

26.     Defendant Rock Soffer ("R. Soffer") served as a Manager of Longeveron at the time of the IPO.  R. Soffer signed or authorized the signing of the Registration Statement filed with the SEC.

27.     The Exchange Act Individual Defendants and Defendants J. Hare, D. Soffer, N. Hare, and R. Soffer are sometimes referred to herein collectively as the "Securities Act Individual Defendants."

28.     As directors, executive officers and/or major shareholders of the Company, the Securities Act Individual Defendants participated in the solicitation and sale of Longeveron common stock in the IPO for their own benefit and the benefit of Longeveron.  The Securities Act Individual Defendants were key members of the IPO working group and executives of Longeveron who pitched investors to purchase the shares sold in the IPO.

29.     Longeveron and the Securities Act Individual Defendants are sometimes referred to herein collectively as the "Securities Act Defendants."

30.     The Exchange Act Defendants and the Securities Act Defendants are sometimes collectively, in whole or in part, referred to herein as the "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background

31.     Longeveron is a clinical stage biotechnology company that engages in developing cellular therapies for aging-related and life-threatening conditions.   The Company's lead investigational product is Lomecel-B, a cell-based therapy product that is derived from culture-expanded medicinal signaling cells that are sourced from the bone marrow of young healthy adult donors.  Longeveron is conducting, among other trials, the Phase 2b Aging Frailty Trial.  That trial's primary efficacy endpoint is the change from baseline in the 6MWT at six months (or 180 days) for Lomecel-B subjects compared to placebo subjects.

32.     On January 19, 2021, Longeveron filed the Registration Statement on Form S-1 with the SEC in connection with the IPO, which, after several amendments, was declared effective by the SEC on February 11, 2021.

33.     On or about February 12, 2021, pursuant to the Registration Statement, Longeveron's Class A common stock began trading on the NASDAQ under the ticker symbol "LGVN."

34.     Also on February 12, 2021, Longeveron filed the Prospectus on Form 424B4 with the SEC in connection with the IPO, which incorporated and formed part of the Registration Statement.

35.      Pursuant to the Offering Documents, Longeveron conducted the IPO, issuing 2.66 million shares of its Class A common stock to the public at the Offering price of $10.00 per share, for approximate proceeds of $24.7 million to the Company after applicable underwriting discounts and commissions, and before expenses.

**Materially False and Misleading Statements Issued in the Offering Documents**

36.     The Offering Documents touted Lomecel-B's effectiveness in treating aging frailty, stating, in relevant part, that "[r]esults from our ongoing clinical trials, in which more than 250 subjects have received Lomecel-B, have shown . . . [that] Aging Frailty subjects given Lomecel-B showed statistically significant improvement in physical function compared to subjects receiving placebo" and that "Aging Frailty subjects, who historically do not respond effectively to vaccines, had a post-vaccination immune response in 19/19 (100%) of the subjects given Lomecel-B in advance of receiving influenza vaccine."

37.     The Offering Documents also represented that Lomecel-B was chosen as a potential treatment for aging frailty based on its purported mechanisms of action, while noting that early

clinical data showed that Lomecel-B could improve aspects of physical functioning and immune function. Specifically, in this regard, the Offering Documents stated, in relevant part:

> We are evaluating Lomecel-B as a therapy for Aging Frailty because the potential mechanisms of action may suitably address many of the features and underpinnings of this condition. Foremost, Lomecel-B has the potential to reduce inflammation associated with Aging Frailty, and to promote an anti-inflammatory state by releasing anti-inflammatory molecules, which can promote physiological restoration to a more normal state. As our early clinical data show, Lomecel-B may be able to improve aspects of physical functioning, as well as immune function.

38.     Additionally, the Offering Documents highlighted the market opportunity for Lomecel-B in treating aging frailty, stating, in relevant part, that "U.S. leading geriatricians and epidemiologists from Johns Hopkins University estimate approximately 15% of community-dwelling individuals 65 years and older in the U.S. have Aging Frailty"; that "[a]nother 45% are considered at risk for becoming frail, or 'pre-frail[,]'"; that "[t]hese equate to 8.1 million and 24.3 million people, respectively"; that "[b]y 2035, the number of individuals with Aging Frailty is projected to reach over 11.4 million"; that "[t]hose with Aging Frailty are disproportionately high consumers of healthcare resources with potentially crippling economic consequences"; and that "[d]eveloping treatments for this unmet medical need is a priority for many single-payor healthcare systems[.]"

39.     With specific respect to the Phase 2b Aging Frailty Trial, the Offering Documents stated, *inter alia*, that "[t]he Phase 2b Trial is our most advanced clinical trial in our Aging Frailty program"; that "[t]he trial design was guided by input from FDA's Center for Biologics Evaluation and Research (CBER), and Longeveron's scientific and clinical advisors"; that "[t]he results of our Aging Frailty trials will be evaluated and discussed with FDA to determine what could be an acceptable and appropriate primary efficacy endpoint(s), in an approvable indication"; that "[i]n lieu of long-term clinical outcomes . . . as endpoints requiring large expensive long trials, the U.S.

FDA has indicated that the 6MWT could be a suitable co-primary or composite primary endpoint in this indication, [for example,] if included with a validated PRO and a suitable biomarker"; that "[t]his Phase 2b Trial is fully-enrolled and patient follow-up is ongoing"; and that "[w]e anticipate reporting data in the second quarter of 2021."

40.     The statements referenced in ¶¶ 36-39 were materially false and misleading because the Offering Documents were negligently prepared and, as a result, contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading and were not prepared in accordance with the rules and regulations governing their preparation. Specifically, the Offering Documents made false and/or misleading statements and/or failed to disclose that: (i) Lomecel-B was not as effective in treating aging frailty as Defendants had led investors to believe; (ii) accordingly, Lomecel-B's clinical and commercial prospects with respect to aging frailty were overstated; and (iii) as a result, the Offering Documents were materially false and/or misleading and failed to state information required to be stated therein.

<u>**Materially False and Misleading Statements Issued During the Class Period**</u>

41.     The Class Period begins on February 12, 2021, when Longeveron's Class A common stock began publicly trading on the NASDAQ pursuant to the materially false or misleading statements or omissions in the Offering Documents, as referenced in ¶¶ 36-39, *supra*.

42.     On March 30, 2021, Longeveron issued a press release providing a corporate update and reporting the Company's fourth quarter and full year 2020 financial results (the "4Q/FY20 Press Release").  In addition to other results, that press release provided certain business updates from the first quarter of the Company's fiscal year 2021, including that the Company had "[s]uccessfully completed [a] 150 subject Phase 2b clinical study of Lomecel-B infusion for Aging Frailty, with top-line trial results anticipated in the third quarter of 2021."

43.     The 4Q/FY20 Press Release also touted the breadth of data accumulated on Lomecel-B's potential treatment of aging frailty, stating, in relevant part, that "Longeveron's Aging Frailty research program spans 5 clinical programs in 3 different countries," including "two US randomized, placebo-controlled Phase 2 trials, a sub-study of the effects of Lomecel-B in Aging Frailty subjects with Metabolic Syndrome, a Japanese Phase 2 study pending initiation, and a Treatment Registry Trial in Nassau, The Bahamas."

44.     Additionally, the 4Q/FY20 Press Release quoted Defendant Green, who stated, *inter alia*, that "[w]e are proud of the significant progress made throughout 2020 and into 2021, including our successful IPO in February, which has positioned Longeveron with a stronger balance sheet and the ability to continue to advance the diverse Lomecel-B pipeline of trials"; that "both of our US Aging Frailty Phase 2 trials will have top line efficacy data available in the 3rd quarter of 2021"; and that "[t]his will be very exciting year for Longeveron, with several clinical trial and clinical data-driven catalysts on the near horizon."

45.     Also on March 30, 2021, Longeveron hosted a conference call with analysts and investors to discuss the Company's fourth quarter and full year 2020 results.  On that call, Defendant Green reiterated substantively the same statements as referenced in ¶¶ 37-38, *supra*, representing that Lomecel-B was chosen as a potential treatment for aging frailty based on its purported mechanisms of action, while noting that early clinical data showed that Lomecel-B could improve aspects of physical functioning and immune function; and highlighting the market opportunity for Lomecel-B in treating aging frailty.

46.     That same day, Longeveron filed an annual report on Form 10-K with the SEC, reporting the Company's financial and operating results for the quarter and year ended December 31, 2020 (the "2020 10-K").  The 2020 10-K contained substantively the same statements as

referenced in ¶¶ 37-39, *supra*, representing that Lomecel-B was chosen as a potential treatment for aging frailty based on its purported mechanisms of action, while noting that early clinical data showed that Lomecel-B could improve aspects of physical functioning and immune function; highlighting the market opportunity for Lomecel-B in treating aging frailty; and describing the development and progress of the Phase 2b Aging Frailty Trial, while advising that "[t]h[e] Phase 2b [Aging Frailty] Trial is Complete and we anticipate reporting data in the third quarter of 2021."

47.     Appended as exhibits to the 2020 10-K were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX"), wherein the Exchange Act Individual Defendants certified that "the [2020 10-K] fully complies with the requirements of Section 13(a) or 15(d) of the [Exchange Act]" and that "the information contained in the [2020 10-K] fairly presents, in all material respects, the financial condition and results of operations of the Company."

48.     On May 14, 2021, Longeveron issued a press release providing a corporate update and reporting the Company's first quarter 2021 financial results (the "1Q21 Press Release").  That press release advised, in relevant part, that "Longeveron plans to announce the top line safety and efficacy results from . . . the US Phase 2b Aging Frailty trial . . . in the third quarter of 2021"; that "[t]he Company plans to present the data [from the Phase 2b Aging Frailty Trial] at the *2021 International Conference on Frailty & Sarcopenia Research* (ICFSR) on September 29th"; and that "ICFSR's scientific committee has invited the Company to present the data during a round table presentation."

49.     The 1Q21 Press Release also quoted Defendant Green, who discussed the market potential for treating aging frailty and the Company's historical focus on developing that treatment, stating, in relevant part, that "[a]ging is the number one risk factor for chronic disease" and "[o]ur

focus since day one has been to develop safe and effective allogeneic cell therapy solutions for the treatment and prevention of these diseases."

50.     Also on May 14, 2021, Longeveron hosted a conference call with analysts and investors to discuss the Company's first quarter 2021 results (the "1Q21 Investor Call").  On that call, Defendant Green reiterated substantively the same statements as referenced in ¶ 49, *supra*, regarding the market potential for treating aging frailty and the Company's historical focus on developing that treatment, and in this same vein further stated, in relevant part:

> The fact that there isn't a single drug approved or a therapeutic approved anywhere in the world for the indication of Aging Frailty, those two trials [including the Phase 2b Aging Frailty Trial] are events that we really look forward to, we've been working on aging frailty research for almost four years, now we have partners in the national institutes on aging . . . . So I think everybody out there should be looking forward to the data and looking forward to see if there is a potential treatment on the horizon that can prevent or reverse these sort of progressive degenerative and devastating syndromes like aging related frailties.
>
> So it's the release of data and the transition to these new phases of development that for us are really the catalyst that we're looking forward to.

51.     Defendant J. Hare also made positive statements regarding Longeveron's clinical programs on the 1Q21 Investor Call, while indicating that Lomecel-B's clinical data would eventually support the drug's approval.  Specifically, Defendant J. Hare stated, in relevant part:

> I would completely agree that we face a very exciting upcoming two quarters, where we'll be releasing a substantial amounts [*sic*] of new clinical information and disseminating that information at important venues . . . . So the timing is very fortunate in that we have a large amount of data being released in a short amount of time, that together will . . . allow us to optimize the development strategies that we'll be using to take this product from where it is now through to approval in major venues like the United States . . . .

52.     That same day, Longeveron filed a quarterly report on Form 10-Q with the SEC, reporting the Company's financial and operating results for the quarter ended March 31, 2021 (the "1Q21 10-Q").  The 1Q21 10-Q described the "successful completion" of the Phase 2b Aging

Frailty Trial, stating, in relevant part, that "[i]n the first quarter of 2021 we announced successful completion of the . . . Phase 2b clinical study of Lomecel-B infusion for subjects with Aging Frailty"; that "[t]his 150-subject, randomized, placebo-controlled multicenter trial is intended to evaluate [*inter alia*] . . . the effect [of Lomecel-B] on signs and symptoms of Aging Frailty"; and that "[t]he top-line trial results are anticipated in the third quarter of 2021."

53.     Appended as an exhibit to the 1Q21 10-Q were substantively the same SOX certifications as referenced in ¶ 47, *supra*, signed by the Exchange Act Individual Defendants.

54.     The statements referenced in ¶¶ 41-53 were materially false and misleading because the Exchange Act Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and compliance policies. Specifically, the Exchange Act Defendants made false and/or misleading statements and/or failed to disclose that: (i) Lomecel-B was not as effective in treating aging frailty as Defendants had led investors to believe; (ii) accordingly, Lomecel-B's clinical and commercial prospects with respect to aging frailty were overstated; (iii) as a result of all the foregoing, Longeveron's financial and business prospects were also overstated; and (iv) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

55.     On August 13, 2021, Longeveron issued two press releases—one announcing topline results of the Phase 2b Aging Frailty Trial, and a second providing a corporate update and reporting the Company's financial results for the second quarter of 2021.  Both press releases disclosed, among other results, that Lomecel-B had "not achiev[ed] . . . statistical significance for the pairwise comparison to placebo" with respect to the primary efficacy endpoint.  In explaining this result, those press releases further disclosed the following:

- **Primary analysis of the primary efficacy endpoint**: The primary analysis compared the change from baseline in 6MWT distance for the four Lomecel-B cohorts to the placebo cohort at Day 180 . . . . *[A]fter adjusting for multiple comparisons using the Hochberg method (1988), the four Lomecel-B cohorts did not show a statistically significant placebo-adjusted difference* . . . .

(Second emphasis added.)

56.     On this news, Longeveron's stock price fell $1.51 per share, or 27.91%, to close at $3.90 per share on August 13, 2021, representing a total decline of 61% from the Offering price.

57.     As of the time this Complaint was filed, Longeveron's stock price continues to trade below the $10.00 per share Offering price, damaging investors.

58.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of Longeveron's securities, Plaintiff and other Class members have suffered significant losses and damages.

## PLAINTIFF'S CLASS ACTION ALLEGATIONS

59.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired: (a) Longeveron common stock in the IPO or purchased Longeveron securities thereafter in the stock market pursuant and/or traceable to the Company's Offering Documents issued in connection with the IPO; or (b) Longeveron securities during the Class Period; and were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

60.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, Longeveron securities were actively traded on the

NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by Longeveron or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

61.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

62.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

63.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public in the Offering Documents for the IPO, or during the Class Period, misrepresented material facts about the business, operations and management of Longeveron;

- whether the Securities Act Individual Defendants negligently prepared the Offering Documents for the IPO and, as a result, the Offering Documents contained untrue statements of material fact or omitted to state other facts necessary to make the statements made not misleading, and were not prepared in accordance with the rules and regulations governing their preparation;

- whether the Exchange Act Individual Defendants caused Longeveron to issue false and misleading financial statements during the Class Period;

- whether certain Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of Longeveron securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

64.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

65.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- Longeveron securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold Longeveron securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

66.    Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

{00457092;1 }

67.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

**(Violations of Section 11 of the Securities Act Against the Securities Act Defendants)**

68.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

69.     This Count is brought pursuant to Section 11 of the Securities Act, 15 U.S.C. § 77k, on behalf of the Class, against the Securities Act Defendants.

70.     The Offering Documents for the IPO were inaccurate and misleading, contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading, and omitted to state material facts required to be stated therein.

71.     Longeveron is the registrant for the IPO.  The Securities Act Defendants named herein were responsible for the contents and dissemination of the Offering Documents.

72.     As issuer of the shares, Longeveron is strictly liable to Plaintiff and the Class for the misstatements and omissions in the Offering Documents.

73.     None of the Securities Act Defendants named herein made a reasonable investigation or possessed reasonable grounds for the belief that the statements contained in the Offering Documents were true and without omissions of any material facts and were not misleading.

74.     By reasons of the conduct herein alleged, each Securities Act Defendant violated, and/or controlled a person who violated Section 11 of the Securities Act.

75.     Plaintiff acquired Longeveron shares pursuant and/or traceable to the Offering Documents for the IPO.

76.     Plaintiff and the Class have sustained damages.  The value of Longeveron securities has declined substantially subsequent to and because of the Securities Act Defendants' violations.

## COUNT II

**(Violations of Section 15 of the Securities Act Against the Securities Act Individual Defendants)**

77.     Plaintiff repeats and incorporates each and every allegation contained above as if fully set forth herein, except any allegation of fraud, recklessness or intentional misconduct.

78.     This Count is asserted against the Securities Act Individual Defendants and is based upon Section 15 of the Securities Act, 15 U.S.C. § 77o.

79.     The Securities Act Individual Defendants, by virtue of their offices, directorship, and specific acts were, at the time of the wrongs alleged herein and as set forth herein, controlling persons of Longeveron within the meaning of Section 15 of the Securities Act.  The Securities Act Individual Defendants had the power and influence and exercised the same to cause Longeveron to engage in the acts described herein.

80.     The Securities Act Individual Defendants' positions made them privy to and provided them with actual knowledge of the material facts concealed from Plaintiff and the Class.

81.     By virtue of the conduct alleged herein, the Securities Act Individual Defendants are liable for the aforesaid wrongful conduct and are liable to Plaintiff and the Class for damages suffered.

{00457092;1 }

## COUNT III

**(Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against the Exchange Act Defendants)**

82. Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

83. This Count is asserted against the Exchange Act Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

84. During the Class Period, the Exchange Act Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of Longeveron securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire Longeveron securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, the Exchange Act Defendants, and each of them, took the actions set forth herein.

85. Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Exchange Act Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents

{00457092;1 }

described above, including statements made to securities analysts and the media that were designed to influence the market for Longeveron securities.  Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about Longeveron's finances and business prospects.

86.     By virtue of their positions at Longeveron, the Exchange Act Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, the Exchange Act Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to the Exchange Act Defendants.  Said acts and omissions of the Exchange Act Defendants were committed willfully or with reckless disregard for the truth.  In addition, each of the Exchange Act Defendants knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

87.     Information showing that the Exchange Act Defendants acted knowingly or with reckless disregard for the truth is peculiarly within the Exchange Act Defendants' knowledge and control.  As the senior managers and/or directors of Longeveron, the Exchange Act Individual Defendants had knowledge of the details of Longeveron's internal affairs.

88.     The Exchange Act Individual Defendants are liable both directly and indirectly for the wrongs complained of herein.  Because of their positions of control and authority, the Exchange Act Individual Defendants were able to and did, directly or indirectly, control the content of the statements of Longeveron.  As officers and/or directors of a publicly-held company, the Exchange Act Individual Defendants had a duty to disseminate timely, accurate, and truthful information

with respect to Longeveron's businesses, operations, future financial condition and future prospects.  As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of Longeveron securities was artificially inflated throughout the Class Period.  In ignorance of the adverse facts concerning Longeveron's business and financial condition which were concealed by the Exchange Act Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired Longeveron securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by the Exchange Act Defendants, and were damaged thereby.

89.     During the Class Period, Longeveron securities were traded on an active and efficient market.  Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Exchange Act Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of Longeveron securities at prices artificially inflated by the Exchange Act Defendants' wrongful conduct.  Had Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of Longeveron securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of Longeveron securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

90.     By reason of the conduct alleged herein, the Exchange Act Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

91.     As a direct and proximate result of the Exchange Act Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## COUNT IV

### (Violations of Section 20(a) of the Exchange Act Against the Exchange Act Individual Defendants)

92.     Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

93.     During the Class Period, the Exchange Act Individual Defendants participated in the operation and management of Longeveron, and conducted and participated, directly and indirectly, in the conduct of Longeveron's business affairs.  Because of their senior positions, they knew the adverse non-public information about Longeveron's misstatement of income and expenses and false financial statements.

94.     As officers and/or directors of a publicly owned company, the Exchange Act Individual Defendants had a duty to disseminate accurate and truthful information with respect to Longeveron's financial condition and results of operations, and to correct promptly any public statements issued by Longeveron which had become materially false or misleading.

95.     Because of their positions of control and authority as senior officers, the Exchange Act Individual Defendants were able to, and did, control the contents of the various reports, press

releases and public filings which Longeveron disseminated in the marketplace during the Class Period concerning Longeveron's results of operations. Throughout the Class Period, the Exchange Act Individual Defendants exercised their power and authority to cause Longeveron to engage in the wrongful acts complained of herein. The Exchange Act Individual Defendants therefore, were "controlling persons" of Longeveron within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Longeveron securities.

96.     Each of the Exchange Act Individual Defendants, therefore, acted as a controlling person of Longeveron. By reason of their senior management positions and/or being directors of Longeveron, each of the Exchange Act Individual Defendants had the power to direct the actions of, and exercised the same to cause, Longeveron to engage in the unlawful acts and conduct complained of herein. Each of the Exchange Act Individual Defendants exercised control over the general operations of Longeveron and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

97.     By reason of the above conduct, the Exchange Act Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by Longeveron.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.      Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.      Awarding such other and further relief as this Court may deem just and proper.

## **DEMAND FOR TRIAL BY JURY**

Plaintiff hereby demands a trial by jury.

Dated:  September 13, 2021                   Respectfully submitted,

                                            MILLER SHAH LLP

                                            */s/ Jayne A. Goldstein*
                                            Jayne A. Goldstein
                                            1625 N. Commerce Pkwy, Suite 320
                                            Fort Lauderdale, Florida 33326
                                            Telephone: (954) 903-3170
                                            Facsimile: (866) 300-7367
                                            jagoldstein@millershah.com

                                            POMERANTZ LLP
                                            Thomas H. Przybylowski
                                            600 Third Avenue
                                            New York, New York 10016
                                            Telephone: (212) 661-1100
                                            Facsimile: (917) 463-1044
                                            tprzybylowski@pomlaw.com

                                            *Attorneys for Plaintiff*

## CERTIFICATION PURSUANT
## TO FEDERAL SECURITIES LAWS

1.      I,Jerald Vargas Malespin, make this declaration pursuant to Section 27(a)(2) of the Securities Act of 1933 (the "Securities Act") and/or Section 21D(a)(2) of the Securities Exchange Act of 1934 (the "Exchange Act") as amended by the Private Securities Litigation Reform Act of 1995.

2.      I have reviewed a Complaint against Longeveron Inc. ("Longeveron" or the "Company") and authorize the filing of a comparable complaint on my behalf.

3.      I did not purchase or acquire Longeveron securities at the direction of plaintiffs' counsel or in order to participate in any private action arising under the Securities Act or the Exchange Act.

4.      I am willing to serve as a representative party on behalf of a Class of investors who purchased or otherwise acquired: (a) Longeveron common stock pursuant and/or traceable to the Offering Documents issued in connection with the IPO as specified in the Complaint; and/or (b) Longeveron securities during the Class Period as specified in the Complaint; including providing testimony at deposition and trial, if necessary.  I understand that the Court has the authority to select the most adequate lead plaintiff in this action.

5.      The attached sheet lists all of my transactions in: (a) Longeveron common stock pursuant and/or traceable to the Offering Documents issued in connection with the IPO as specified in the Complaint; and/or (b) Longeveron securities during the Class Period as specified in the Complaint.

6.      During the three-year period preceding the date on which this Certification is signed, I have not served or sought to serve as a representative party on behalf of a class under the federal securities laws.

7.      I agree not to accept any payment for serving as a representative party on behalf of the class as set forth in the Complaint, beyond my pro rata share of any recovery, except such reasonable costs and expenses directly relating to the representation of the class as ordered or approved by the Court.

8.      I declare under penalty of perjury that the foregoing is true and correct.


**Executed**    **08/17/2021**
                    **(Date)**



_____
        **(Signature)**


        Jerald Vargas Malespin
        **(Type or Print Name)**

**Longeveron Inc. (LGVN)**                                      **Jerald Vargas Malespin**

**List of Purchases and Sales**

| Transaction Type | Date | Number of Shares/Unit | Price Per Share/Unit |
|---|---|---|---|
| Purchase | 2/16/2021 | 857 | $7.5900 |
| Purchase | 2/16/2021 | 766 | $7.6800 |
| Purchase | 2/19/2021 | 30 | $6.7500 |
| Purchase | 3/18/2021 | 987 | $7.3600 |
| Purchase | 3/23/2021 | 840 | $6.8300 |
| Purchase | 7/12/2021 | 1 | $8.2000 |
| Purchase | 7/27/2021 | 270 | $5.9500 |
| Purchase | 7/27/2021 | 100 | $5.8300 |
| Sale | 3/10/2021 | (1,653) | $7.6600 |