**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-23303-COOKE/REID**

**Honorable Lisette M. Reid, United States Magistrate Judge for the Southern District**
**of Florida**

JERALD VARGAS MALESPIN, individually and
on behalf of all others similarly situated,

Plaintiff,

vs.

LONGEVERON INC., GEOFF GREEN, JAMES
CLAVIJO, JOSHUA M. HARE, DONALD M.
SOFFER, NEIL E. HARE, ROCK SOFFER, EF
HUTTON F/K/A KINGSWOOD CAPITAL
MARKETS, and ALEXANDER CAPITAL L.P.

Defendants.

_____ /

**MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION**
**SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES**
**IN SUPPORT THEREOF**

## TABLE OF CONTENTS

MOTION ........................................................................................................................... 1

MEMORANDUM OF LAW ............................................................................................. 2

I.     INTRODUCTION............................................................................................... 2

II.    PROCEDURAL HISTORY ................................................................................ 4

III.   THE PROPOSED SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL ........................................ 5

    A.    The Proposed Settlement Has No Obvious Deficiencies and is the Result of Good Faith, Arm's-Length Negotiations ..................................................... 7

    B.    The Settlement Falls within the Range of Possible Approval ........................... 9

IV.   THE COURT SHOULD CERTIFY A SETTLEMENT CLASS ............................... 11

    A.    The Settlement Class Meets the Requirements of Rule 23(a) ......................... 11

        1.    Numerosity............................................................................................ 12

        2.    Commonality ........................................................................................ 12

        3.    Typicality ............................................................................................. 14

        4.    Adequacy ............................................................................................. 15

    B.    The Settlement Class Meets the Requirements of Rule 23(b)(3) ..................... 16

        1.    Predominance........................................................................................ 16

        2.    Superiority ............................................................................................ 17

V.    THE COURT SHOULD APPROVE THE PROPOSED FORMS OF NOTICE AND PLAN FOR PROVIDING NOTICE ..................................................................... 18

VI.   CONCLUSION .................................................................................................. 20

# TABLE OF AUTHORITIES

**Page(s)**

<u>**Cases**</u>

*Amch*em Prod., Inc. v. Winds*or*,
    521 U.S. 591 (1997)............................................................................................... 16, 17

*Appleyard v. Wallace*,
    754 F.2d 955 (11th Cir. 1985) ................................................................................. 14

*Aranaz v. Catalyst Pharm. Partners Inc.*,
    302 F.R.D. 657 (S.D. Fla. 2014)............................................................................. 11

*Badger v. S. Farm Bureau Life Ins. Co.*,
    612 F.3d 1334 (11th Cir. 2010) (reversing ............................................................. 11

*Behrens v. Wometco Enterprises, Inc.*,
    118 F.R.D. 534 (S.D. Fla. 1988)............................................................................... 7

*Bennett v. Behring Corp.*,
    737 F.2d 982 (11th Cir. 1984) ............................................................................... 6, 7

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) ................................................................................... 17

*Busby v. JRHBW Realty, Inc.*,
    513 F.3d 1314 (11th Cir. 2008) ............................................................................... 15

*Canupp v. Liberty Behav. Health Corp.*,
    417 F. App'x 843 (11th Cir. 2011)............................................................................. 7

*Chatelain v. Prudential-Bache Sec., Inc.*,
    805 F. Supp. 209 (S.D.N.Y. 1992) ......................................................................... 10

*Cheney v. Cyberguard Corp.*,
    213 F.R.D. 484 (S.D. Fla. 2003)............................................................................. 13

*Cotton v. Hinton*,
    559 F.2d 1326 (5th Cir. 1977) ................................................................................... 9

*Cox v. Am. Cast Iron Pipe Co.*,
    784 F.2d 1546 (11th Cir. 1986) ......................................................................... 12, 13

*CV Reit, Inc. v. Levy*,
    144 F.R.D. 690 (S.D. Fla. 1992)............................................................................. 12

*Faught v. Am. Home Shield Corp.*,
   661 F.3d 1040 (11th Cir. 2011) ...................................................................... 7

*Fifth Moorings Condo., Inc. v. Shere*,
   81 F.R.D. 712 (S.D. Fla. 1979) ..................................................................... 12

*Figueroa v. Sharper Image Corp.*,
   517 F. Supp. 2d 1292 (S.D. Fla. 2007) .......................................................... 6

*Francisco v. Numismatic Guar. Corp. of Am.*,
   2008 WL 649124 (S.D. Fla. Jan. 31, 2008) .................................................... 8

*Fresco v. Auto Data Direct, Inc.*,
   2007 WL 2330895 (S.D. Fla. May 14, 2007) .................................................. 6

*In re Alexander Grant & Co. Litig.*,
   110 F.R.D. 528 (S.D. Fla. 1986) .................................................................... 17

*In re Amerifirst Sec. Litig.*,
   139 F.R.D. 423 (S.D. Fla. 1991) ........................................................ 12, 13, 14

*In re Checking Acct. Overdraft Litig.*,
   275 F.R.D. 654 (S.D. Fla. 2011) ..................................................................... 8

*In re Checking Acct. Overdraft Litig.*,
   No. 10-163S, 2012 WL 4173458 (S.D. Fla. Sept. 19, 2012) .......................... 6

*In re Elan Sec. Litig.*,
   385 F. Supp. 2d 363 (S.D.N.Y. 2005) ............................................................ 8

*In re IGI Sec. Litig.*,
   122 F.R.D. 451 (D.N.J. 1988) ........................................................................ 14

*In re Marsh Erisa Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ................................................................... 20

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
   571 F. Supp. 2d 1315 (N.D. Ga. 2007) ................................................... 12, 15

*In re Silicone Gel Breast Implant Prods. Liab. Litig.*,
   1994 WL 114580 (N.D. Ala. Apr. 1, 1994) .................................................... 7

*In re Skinner Grp., Inc.*,
   206 B.R. 252 (Bankr. N.D. Ga. 1997) ............................................................ 6

*In re Smith*,
    926 F.2d 1027 (11th Cir. 1991) ......................................................................... 7

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ........................................................................... 5

*In re Zynga Inc. Sec. Litig.*,
    2015 WL 6471171 (N.D. Cal. Oct. 27, 2015).................................................... 18

*Kennedy v. Tallant*,
    710 F.2d 711 (11th Cir. 1983) ......................................................................... 14

*Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd.*,
    No. 916029CIVUNGAROBENAG, 1994 WL 808074 (S.D. Fla. June 8, 1994) ................... 12

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ........................................................... 16

*Kornberg v. Carnival Cruise Lines, Inc.*,
    741 F.2d 1332 (11th Cir. 1984) ....................................................................... 14

*Kreuzfeld A.G. v. Carnehammar*,
    138 F.R.D. 594 (S.D. Fla. 1991)....................................................................... 13

*Levin v. Mississippi River Corp.*,
    59 F.R.D. 353 (S.D.N.Y.1973) .......................................................................... 5

*Mashburn v. Nat'l Healthcare, Inc.*,
    684 F. Supp. 660 (M.D. Ala. 1988) .................................................................. 5

*Mazur v. Lampert*,
    No. 04-61159-CIV, 2007 WL 9698265 (S.D. Fla. Mar. 23, 2007) ......................... 11

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950)........................................................................................ 18

*Robbins v. Kroger Props. Inc.*,
    116 F.3d 1441 (11th Cir.) ................................................................................ 11

*Rosario-Guerrro v. Orange Blossom Harvesting*,
    265 F.R.D. 619 (M.D. Fla. 2010)...................................................................... 14

*Soberal-Perez v. Heckler*,
    717 F.2d 36 (2d Cir. 1983).............................................................................. 18

*Strube v. Am. Equity Inv. Life Ins. Co.*,
    226 F.R.D. 688 (M.D. Fla. 2005)..................................................................... 9

*Turocy v. El Pollo Loco Holdings, Inc.*,
    2018 WL 3343493 (C.D. Cal. July 3, 2018)........................................................ 16

*Yedlowski v. Roka Bioscience, Inc.*,
    No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016).............................. 16

*Zuckerman v. Smart Choice Auto. Grp., Inc.*,
    No. 6:99-CV-237-ORL28KRS, 2001 WL 686879 (M.D. Fla. May 3, 2001) ......................... 4

**Statutes**

15 U.S.C. § 78u-4(a)(7) ...................................................................................... 19

**Rules**

Fed. R. Civ. P. 23 ......................................................................................... passim

**Other Authorities**

H. Newberg, *Newberg On Class Actions* (2d Ed)............................................. 6, 9, 17

# MOTION

Lead plaintiff John Bosico ("Plaintiff" or "Class Representative" or "Bosico"), on behalf of himself and the Class (defined below), upon the accompanying Memorandum of Law in Support of Plaintiff's Motion for Preliminary Approval, the Declaration of Jonathan Stern ("Stern Decl.") and the exhibit attached thereto, hereby moves the Court for an order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (1) preliminarily approving the terms of the settlement set forth in the Stipulation and Agreement of Settlement dated March 23, 2023 (the "Settlement Stipulation")[1] entered into by the parties; (2) preliminarily certifying a class, for settlement purposes only, of all persons who purchased Longeveron Inc. Class A common stock: (a) pursuant and/or traceable to the initial public offering conducted on or about February 12, 2021 (the "IPO" or "Offering"); and/or (b) between February 12, 2021 and August 12, 2021, both dates inclusive (the "Settlement Class"); (3) establishing a date for a hearing to determine the fairness, reasonableness, and adequacy of the settlement set forth in the Stipulation; (4) appointing Strategic Claims Services as Claims Administrator; (5) approving the form and manner of disseminating notice to the Class; (6) scheduling a hearing to consider final approval of the Settlement and an award of attorneys' fees and expenses and compensatory awards for the Plaintiff; and (7) setting deadlines for the dissemination of notice, the submission of proofs of claim and requests for exclusion, and the filings of objections and papers in support of the Settlement.

The following is a proposed timetable listing the dates requested in the [Proposed] Order Granting Class Representative's Motion for Preliminary Approval of Class Action Settlement. The proposed dates will allow sufficient time for notice to issue, for class members to respond to

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation.

1

the notice and consider their options, and for objections to be brought to the Court's attention. The proposed schedule is consistent with schedules entered in other securities class actions.

| Event | Deadline for Compliance |
|---|---|
| Date for the Settlement Hearing. | Plaintiff suggests one hundred twenty (120) days after entry of the Preliminary Approval Order.<br>(Preliminary Approval Order ¶ 6) |
| Mailing of Notice and Proof of Claim and Release. | No later than sixteen (16) calendar days following entry of the Preliminary Approval Order.<br>(Preliminary Approval Order ¶ 12) |
| Publication of Summary Notice. | No later than sixteen (16) calendar days following entry of the Preliminary Approval Order.<br>(Preliminary Approval Order ¶ 18) |
| Deadline for filing Proof of Claim and Release Forms | No later than forty-four (44) calendar days prior to the settlement hearing.<br>(Preliminary Approval Order ¶ 20(a) |
| Filing deadline for requests for exclusion. | No later than forty-four (44) calendar days prior to the Settlement Hearing.<br>(Preliminary Approval Order ¶ 22) |
| Date for Plaintiff to file papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | No later than thirty-four (34) calendar days prior to the Settlement Hearing.<br>(Preliminary Approval Order ¶ 29) |
| Filing deadline for objections. | No later than seventeen (17) calendar days prior to the Settlement Hearing.<br>(Preliminary Approval Order ¶ 26) |
| Date for Plaintiff to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | No later than seven (7) calendar days prior to the Settlement Hearing.<br>(Preliminary Approval Order ¶ 30) |

## <u>MEMORANDUM OF LAW</u>

## I.    INTRODUCTION

Court approval of a class settlement is a two-step process. First, the Court must decide whether to preliminarily approve the settlement, as well as the content and method of providing notice to the Class. Second, after notice has been issued to class members, the Court must make a

final determination as to whether the Settlement is fair, reasonable and adequate, such that it should be finally approved.

A court should grant preliminary approval as long as it is within the range of settlements that could be finally approved, and does not suffer from any obvious defects. The proposed settlement easily meets these criteria.  First, the settlement is well within the range of settlements that could be finally approved. Indeed, it is an excellent result for the class. Class Representative secured a settlement of one million three hundred ninety seven thousand five hundred dollars ($1,397,500) (the "Settlement Amount"). Class Representative's expert report estimates that the Class's aggregate damages based upon the alleged corrective disclosures in the amended complaint (*i.e.,* August 13, 2021) are $4.4 million for section 10(b) claims and $12.1 million for section 11 claims.[2]  The settlement recovers 31.7% of section 10(b) damages and 11.5% of section 11 damages. By comparison, the median settlement for cases with damages below $20 million recovers 11.1% of maximum damages in 2022, according to Cornerstone Research. Stern Dec. Ex. 2, p. 6.

The proposed notice to class members (the "Notice")" satisfies the PSLRA's separate disclosure requirements and is the best practicable notice under the circumstances. The Notice is based upon templates that have been approved hundreds of times to communicate securities class action settlements. Plaintiff proposes that notice be given to the class by publication of the summary notice in a press release and the Investors' Business Daily, mailing notice to all class members who can be found from Longeveron Inc.'s ("Longeveron") or brokers' records, and

---

[2] The Section 11 damages presume plaintiffs would have defeated a negative causation defense. If Defendants were able to prevail on a negative causation defense with respects to declines in Longeveron stock other than on the date of the alleged corrective disclosure, Section 11 damages would be lower.

publication of all documents on the claims administrator's website. Numerous courts have approved these exact steps. *Zuckerman v. Smart Choice Auto. Grp., Inc.*, No. 6:99-CV-237-ORL28KRS, 2001 WL 686879, at *3 (M.D. Fla. May 3, 2001); *Aranaz et al., v. Catalyst Pharmaceutical Partners, Inc., et al.,* 1:13-cv-23878-UU(S.D.F.L.) (Dkt. No. 146) at ¶15; *Vanleeuwen, et al., v. Keyuan Petrochemicals, Inc., et al.,* 1:13-cv-06057 (S.D.N.Y.)(Dkt. No. 183) at ¶16; *Miller, et al., v. Global Geophysical Services, Inc.,* 14-cv-0708 (S.D.T.X.) (Dkt. No. 120) at ¶17. Thus, the proposed notice is adequate.

## II.   PROCEDURAL HISTORY

On September 13, 2021, named plaintiff Jerald Vargas Malespin ("Malespin") filed the initial complaint alleging violations of federal securities laws against defendants Longeveron, Geoff Green ("Green"), James Clavijo ("Clavijo"), Joshua M. Hare ("J. Hare"), Donald M. Soffer ("D. Soffer"), Neil E. Hare ("N. Hare"), and Rock Soffer ("R. Soffer"). (Docket No. 1).

On November 12, 2021, Bosico moved to be appointed lead plaintiff and to have the Court appoint The Rosen Law Firm, P.A. as Class Counsel, (Docket No. 8), which was approved on February 4, 2022. (Docket No. 22).

On April 26, 2022, Plaintiff filed his Amended Complaint (the "AC") against Defendants Longeveron, Geoff Green, James Clavijo, Joshua M. Hare, Donald M. Soffer, Neil E. Hare, Rock Soffer, EF Hutton, division of Benchmark Investments f/k/a Kingswood Capital Markets, and Alexander Capital L.P. (collectively, "Defendants"), on behalf of investors who purchased Longeveron securities: (a) pursuant and/or traceable to the Company's initial public offering conducted on or about February 12, 2021; and (b) between February 12, 2021 and August 12, 2021 (the "Class Period"), seeking damages caused by the Defendants' alleged violations of Sections 11 and 15 of the Securities Act of 1933 (the "Securities Act"), and damages caused by Defendants Longeveron, Green, Clavijo, J. Hare for alleged violations of 10(b) and 20(a) of the Securities

Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder. (Docket No. 27). Specifically, the AC alleged that defendants Longeveron, Green, Clavijo, J. Hare, D. Soffer, N. Hare, and R. Soffer made or caused to be made false and misleading statements by failing to disclose the existence of facts that undermined the overly optimistic statements regarding Lomocel-B made at the time of the IPO and during the Class Period.

Defense counsel informed Plaintiff that Defendants disputed liability and intended to move to dismiss all counts against all Defendants.  Thereafter, the Parties agreed to participate in private settlement discussions. The parties exchanged settlement demands and offers over the course of several weeks via a series of telephone conferences, and ultimately reached the instant settlement.

The parties, all represented by experienced counsel, agreed to a settlement of $1,397,500 in cash to resolve the claims of the Class against the Defendants, with a class period of February 12, 2021 to August 12, 2021.   In exchange, the Plaintiff agreed to release claims against all Defendants, as specified in the Settlement Agreement.

## III.  THE PROPOSED SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL

Rule 23(e) requires the judicial approval of any settlement of claims brought on a class-wide basis. Approval of a proposed settlement is within the Court's discretion and is to be exercised in conformity with "[p]ublic policy [that] strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). Indeed, federal courts recognize that securities fraud class actions, which can be complex, unpredictable in result and protracted, "readily lend themselves to settlement." *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988); *Levin v. Mississippi River Corp.*, 59 F.R.D. 353, 363 (S.D.N.Y.1973), *aff'd sub nom.*, *Wesson  Mississippi River Corp.*, 486 F.2d 1398 (2d Cir.), *cert.*

*denied*, 414 U.S. 1112, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973); H. Newberg, *Newberg On Class Actions* (2d Ed), § 22.79, at 155 (1985).

Rule 23(e) requires that class members be provided "notice of the proposed dismissal or compromise" of a class action. To avoid serving notice of an obviously deficient settlement, "courts have resorted to a two-step approach" – holding a preliminary hearing prior to determine whether to disseminate notice and hold a final approval hearing. *In re Skinner Grp., Inc.*, 206 B.R. 252, 260-61 (Bankr. N.D. Ga. 1997); *Bennett v. Behring Corp.*, 737 F.2d 982, 985-86, 988 (11th Cir. 1984) (two-step process for approving class action settlement appropriate).

The preliminary approval motion requires that the Court determine whether: (1) the settlement has any obvious deficiencies; (2) the settlement is within the range of reasonableness; and (3) notice to the class is warranted. *Fresco v. Auto Data Direct, Inc.*, No. 0361063CIV-MARTINEZ, 2007 WL 2330895, at *4 (S.D. Fla. May 14, 2007) ("[a] proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement") (internal citations omitted); *In re Checking Acct. Overdraft Litig.*, No. 10-163S, 2012 WL 4173458, at *5 (S.D. Fla. Sept. 19, 2012) ("Preliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason.").

After preliminary approval, the class is notified of the settlement and the final fairness hearing. *See, e.g., Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1299 (S.D. Fla. 2007) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies ... and appears to fall within the range of possible approval, the court should direct that notice issue and should schedule a final approval hearing.") (internal

quotation omitted); *In re Silicone Gel Breast Implant Prods. Liab. Litig.*, 1994 WL 114580, at *7 (N.D. Ala. Apr. 1, 1994) (granting preliminary approval and setting final hearing at future date after class has received notice). The preliminary approval process is not as rigorous and formal as the final approval process.[3]

The proposed Settlement has no obvious deficiencies and falls within the reasonable range of possible approval. First, the Settlement is the culmination of vigorous arm's-length negotiations between well-informed and experienced counsel. Second, the Settlement Amount is well within the reasonable range of recoveries in securities class actions. Third, the substantial risk of continued litigation supports preliminary approval of the proposed Settlement. Therefore, the proposed Settlement satisfies Rule 23(e) and should be preliminarily approved.

## A.    The Proposed Settlement Has No Obvious Deficiencies and is the Result of Good Faith, Arm's-Length Negotiations

Courts place considerable weight on the opinion of experienced and informed counsel. *See Canupp v. Liberty Behav. Health Corp.*, 417 F. App'x 843, 845 (11th Cir. 2011) ("Indeed, absent fraud, collusion, or the like, a district court should be hesitant to substitute its own judgment for that of counsel"); *see also Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 539 (S.D. Fla. 1988), *aff'd sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990) (The court can rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to

---

[3] In the second step, the final approval of a class action settlement pursuant to Rule 23(e), the court "must find that it is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett*, 737 F.2d at 986 (internal citation omitted). Factors to consider are: (1) the likelihood of success at trial; (2) the range of possible recovery; (3) range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the anticipated complexity, expense, and duration of litigation; (5) the opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved. *Id.*; *see also Faught v. Am. Home Shield Corp.*, 661 F.3d 1040, 1047 (11th Cir. 2011) (affirming lower court's *Bennett* analysis). A district court's evaluation of the *Bennett* factors "will be overturned only upon a clear showing of abuse of discretion." *Id.* In evaluating the settlement, the court may rely on the judgment of experienced counsel in the case. *See In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991).

substitute its own judgment for that of counsel.) (internal quotation omitted); *Francisco v. Numismatic Guar. Corp. of Am.*, 2008 WL 649124, at *12 (S.D. Fla. Jan. 31, 2008) ("[c]ounsel's conclusions that the [s]ettlement is fair, adequate and reasonable provides strong evidence that the settlement merits the Court's approval. Here, the Court gives 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'"). Thus, there is "a presumption of fairness" to settlements negotiated at arm's length by informed and experienced counsel. *See In re Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011).

In order to achieve the Settlement, the parties engaged in extensive settlement negotiations. The adversarial process supports preliminary approval. *Id* at 662. (approving settlement that was "the product of informed, good-faith, arms-length negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator").

Class Counsel has ample experience prosecuting securities class actions. Stern Dec. Ex. 1. Further, Class Counsel is well informed about the strengths and weaknesses of the claims against the Defendants. The Settlement was reached only after a thorough investigation of the facts and merits of the legal claims and defenses, which included: the investigation and drafting of an amended complaint, consultation with an expert regarding damages issues, and extensive legal research regarding and investigation into the probable defenses.  Thus, Class Counsel and Lead Plaintiff were well aware of the claims, defenses and litigation risks by the time the Settlement was reached. *See In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005) (class counsel had sufficient information to make an informed judgment based on interviews of former

employees, review of documents relating to SEC investigation and consultation with accounting and damages experts).

Further, the Settlement has no obvious deficiencies.[4] Along with an all-cash recovery, all members of the proposed Class, including Plaintiff, will be treated fairly and in a similar manner—each recovering their pro rata share of the Net Settlement Fund, except that Class Counsel will apply for an incentive fee on Plaintiff's behalf for his efforts in pursuing this action in an amount not exceeding $5,000.

### B.     The Settlement Falls within the Range of Possible Approval

"Particularly in class action suits, there is an overriding public interest in favor of settlement [because it] is common knowledge that class action suits have a well-deserved reputation as being most complex." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 698 (M.D. Fla. 2005) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). Part of that complexity stems from the calculation of damages and determining the range of possible recovery. This generally requires expert testimony and invariably leads to the proverbial battle of the experts at trial, which the Class could lose.

The Class Representative's theory of the case is premised on the theory that Defendants failed to disclose to investors the existence of facts that undermined the overly optimistic statements regarding Lomocel-B made at the time of the IPO and during the Class Period. Contrary to Defendants' public representations, the complaint and AC allege that Defendants were in possession of data that reflected negatively on the efficacy of Lomocel-B in treating Aging Frailty.

---

[4] "[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Newberg on Class Actions*, § 11.51 at 11.88 (4th ed. 1992).

The AC alleged the following corrective disclosure: (1) the August 13, 2021 disclosure that "the four Lomecel-B cohorts did not show a statistically significant placebo-adjusted difference" and that "in the patient reported outcome questionnaire PROMIS—Physical Function—Short Form 20a (SF-20a) total score [. . .] Lomecel-B cohorts did not show a statistically significant difference compared to the placebo cohort[.]". (Docket No. 27, ¶¶ 12, 77-80). Given the complexity of the subject matter and the probable defenses, litigating this case to trial would have required extensive discovery on complex medical and scientific issues, as well as experts to opine on those medical issues, and other experts to opine on market efficiency and damages, at a minimum.

**Substantial Risks of Continued Litigation**

The Settlement is also fair and reasonable in light of the substantial risk, uncertainty, expenses, and duration of further litigation. It is well settled that "[t]he risks of litigation are what ultimately leads to settlement." *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 215 (S.D.N.Y. 1992). Defendants denied liability, intended to file a motion to dismiss all claims against all Defendants, and said they would vigorously defend this action. While Plaintiff was prepared to litigate this case through motions to dismiss and summary judgment and go to trial against the Defendants, and was at all times confident in his ability to ultimately prove his claims, Plaintiff would have had to survive a motion to dismiss and summary judgment, and a trial is always a risky proposition.

Here, Plaintiff faces risks in litigating this action to a verdict. A motion to dismiss has not yet been briefed. Although Plaintiff is confident that his claims would survive a motion to dismiss, there is a risk that the Court would ultimately rule in Defendants' favor. Even if Plaintiff prevailed, he would face further risks related to summary judgment and the motion for class certification, as

well as risks with respect to proving at trial the full amount of damages sustained by the Class and responding to Defendants' litany of arguments and defenses.

Plaintiff and his counsel recognize the significant risks and uncertainty involved in pursuing Plaintiff's claims through litigation. As the Court is aware, the Class must not only win at trial, but against the Defendants' post-trial motions, and on appeal. *See, e.g., Robbins v. Kroger Props. Inc.*, 116 F.3d 1441, 1448-1449 (11th Cir.), *reh'g en banc denied*, 129 F.3d 617 (11th Cir.1997) (finding no loss causation and overturning $81 million jury verdict); *Badger v. S. Farm Bureau Life Ins. Co.*, 612 F.3d 1334, 1347 (11th Cir. 2010) (reversing $31.7 million jury verdict). The Settlement avoids these risks.

Under these circumstances, the proposed settlement balances the risks, expenses, and delay inherent in complex cases among the respective parties. Thus, the benefits created by the Settlement weigh in favor of granting the motion for preliminary approval. In light of the risks of continued litigation and the time and expense to be incurred in prosecuting this action through a trial, the Settlement represents a meaningful recovery that is in the best interest of the class.

## IV. THE COURT SHOULD CERTIFY A SETTLEMENT CLASS

As part of the Settlement, Lead Plaintiff respectfully requests that the Court preliminarily certify the proposed Settlement Class (defined as "Class" in ¶1(h) of the Stipulation). Courts in the Eleventh Circuit, including this District, routinely certify class actions such as this one, alleging violations of the federal securities laws. *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 663 (S.D. Fla. 2014); *Mazur v. Lampert*, No. 04-61159-CIV, 2007 WL 9698265, at *1 (S.D. Fla. Mar. 23, 2007).

### A. The Settlement Class Meets the Requirements of Rule 23(a)

Rule 23 governs class certification and requires that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact

common to the class ("commonality"); (3) the claims or defenses of the representative party are typical of those of the class ("typicality"); and (4) the representative party will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a).

### 1.    Numerosity

For numerosity purposes, "impracticability does not mean 'impossibility,' but only the difficulty or inconvenience of joining all members of the class." "'Impracticability' does not mean impossibility. It is sufficient if it is inconvenient or difficult to join all members of a class" *Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd.*, No. 916029CIVUNGAROBENAG, 1994 WL 808074, at *3 (S.D. Fla. June 8, 1994) *quoting Fifth Moorings Condo., Inc. v. Shere*, 81 F.R.D. 712, 716 (S.D. Fla. 1979). Rule 23(a)(1) requires that a class be so numerous that joinder of all members is impracticable. In securities litigation, courts regularly find the numerosity requirement satisfied with respect to purchasers of nationally traded securities. See *In re Sci.- Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1325 (N.D. Ga. 2007). In this case, Longeveron common stock traded actively on the NASDAQ Capital Market ("NASDAQ") throughout the Class Period under the ticker symbol "LGVN." As of August 12, 2021, there were 5,925,935 shares of Class A common stock outstanding. These shares were purchased by thousands of investors, making joinder impracticable. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate….").

### 2.    Commonality

In order to maintain a class action, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2). Commonality is met if the plaintiff alleges standardized conduct by the defendants directed toward members of the proposed class. *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992); *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991) ("a

court will normally find commonality where a question of law refers to standardized conduct by defendants towards members of the proposed class.").  Rule 23 thus does not require a complete identity of circumstances among class members; differences among class members are not fatal to a class action as long as some common questions of fact or law exist. *Cox*, 784 F.2d at 1557. Rather, "the issue turns on whether there exists at least one issue affecting all or a significant number of proposed class members." *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991).

"Where a common scheme is alleged, common questions of law or fact will exist." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003).  Virtually all of the questions of law and fact in this action are common to Plaintiff and all other purchasers of Longeveron Class A common stock during the Class Period.  These common questions of law and fact include, among others:

- Whether the provisions of the Exchange Act were violated by Defendants' acts as alleged herein;

- Whether documents, including press releases and public statements issued by Defendants to the investing public committed and/or misrepresented material facts about the Company and its business; and

- The extent to which members of the class have sustained damages, and the proper measure of damages.

Accordingly, "[a]s both the factual and legal issues necessary to prove these claims and establish Defendants' liability for the alleged misrepresentations and omissions are essentially identical as to each member of the purported class," the commonality requirement is satisfied. *AmeriFirst*, 139 F.R.D. at 428.

### 3.    Typicality

Rule 23(a)(3) requires that "the claims…of the representative parties [be] typical to the claims…of the class." The typicality requirement is met when the class representative's claims have the same essential characteristics and are based on the same legal theory as claims of the other members of the class. *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *AmeriFirst*, 139 F.R.D. at 428; *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Factual differences between the claims of the class representative and those of other class members will not defeat typicality. *Appleyard*, 754 F.2d at 958; *AmeriFirst*, 139 F.R.D. at 428. Rather, "the typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary." *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619, 627 (M.D. Fla. 2010). The focus of the typicality inquiry is not the plaintiff's behavior, but the defendants' actions. *In re IGI Sec. Litig.*, 122 F.R.D. 451, 456 (D.N.J. 1988) ("[I]t is defendants' course of conduct . . . upon which the court must focus in determining typicality"). "As long as Plaintiffs assert, as they do here, that Defendants committed the same wrongful acts in the same manner against all members of the class, they establish the necessary typicality." *AmeriFirst*, 139 F.R.D. at 429 (citing *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983)). The typicality element is satisfied where "the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory." *Rosario-Guerrro*, 265 F.R.D. at 627. Here, Plaintiff's claims are typical of others in the Class because Plaintiff alleges each: (1) purchased Longeveron shares at artificially inflated prices during the Class Period as a result of Defendants' false statements and omissions and (2) seek to recover damages for losses incurred when the fraud was revealed. Plaintiff's claims and the Class' claims arise out of the same alleged, wrongful conduct and are premised on the same legal theory. Accordingly, Plaintiff's claims are typical of those of the Class

because they have the same interests and same injury as the other members of the Class. *See Busby*

*v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008).

### 4.      Adequacy

Rule 23(a)(4) is satisfied if "the representative Parties will fairly and adequately protect the

interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy of representation prerequisite of

Rule 23 requires that the class representatives have common interests with the non-representative

class members and requires that the representatives demonstrate that they will vigorously

prosecute the interests of the class through qualified counsel." *Scientific-Atlanta*, 571 F. Supp. 2d

at 1331. Here, as mentioned above, Lead Plaintiff has and will continue to represent the interests

of the Settlement Class fairly and adequately. There is no antagonism or conflict of interest

between Lead Plaintiff and the proposed Settlement Class. Lead Counsel also have extensive

experience and expertise in complex securities litigation and class action proceedings throughout

the United States.

As to the adequacy of Lead Counsel, the Court must consider "(i) the work counsel has

done in identifying or investigating potential claims in the action; (ii) counsel's experience in

handling class actions, other complex litigation, and the types of claims asserted in the action; (iii)

counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to

representing the class." Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel has been involved in this action

almost from the beginning, conducting a pre-filing investigation, retaining an investigator to

interview former Longeveron employees, retaining a damages expert to evaluate the case, filing

an amended complaint, formalizing the settlement, and filing the instant motion for preliminary

approval. As set forth in the Declaration of Laurence Rosen, and the firm resume of the Rosen

Law Firm attached thereto, Lead Counsel are experienced securities class action attorneys who are

knowledgeable and capable of evaluating cases to determine when a settlement would be beneficial

to the class, and when to continue litigating. Rosen Dec. ¶3, Ex. 1. This Court and others around the country have consistently found The Rosen Law Firm to be well-suited as class counsel in securities class actions. See *Turocy v. El Pollo Loco Holdings, Inc.*, 2018 WL 3343493, at *7 (C.D. Cal. July 3, 2018) (appointing Rosen Law as class counsel); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law Firm] is highly experienced in the complex field of securities fraud class action litigation"). Lead Counsel will adequately represent the Settlement Class.

## B.    The Settlement Class Meets the Requirements of Rule 23(b)(3)

Plaintiff requests that the Court preliminarily certify the Settlement Class under Rule 23(b)(3), which requires "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) ("predominance" and "superiority").

### 1.  Predominance

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and is "readily met" in securities class actions. *Amchem Prod., Inc. v. Winds*or, 521 U.S. 591, 623 and 625 (1997). Here, no question exists that issues surrounding Defendants' alleged misconduct, such as whether their statements were false or misleading, whether they acted with requisite scienter, and whether their conduct caused damages to Plaintiff and the Settlement Class, are common to each member of the Settlement Class. The common questions need not be dispositive, however. Indeed, "[t]he very definition of the requirement of the predominance of common questions contemplates that individual issues will

usually remain after the common issues are adjudicated."  1 Newberg on Class Actions § 4.25 at 4-82 to 4-83 (3d ed. 1992).  As discussed above, the predominance of common questions over individual claims is apparent from the fact that if Plaintiff and every other Class member were each to bring an individual action, they would each still be required to prove Defendants' liability and would need to prove the same allegations. "Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions." *In re Alexander Grant & Co. Litig.*, 110 F.R.D. 528, 534 (S.D. Fla. 1986). Undoubtedly, common questions of fact and law predominate here because Defendants' alleged conduct affected all class members in the same manner – by making materially false and misleading statements to the public about Lomocel-B. Once common questions of liability are resolved, all that remains is the mechanical act of computing the amount of damages suffered by each Class member. *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment."). Thus, common questions predominate.

### 2.    Superiority

For a settlement class, superiority is more easily established. *Amchem,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

Other superiority factors support certification. As the Supreme Court has recognized, "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617. Many of the Settlement Class Members are individuals for whom prosecution of a costly individual action for relatively minor damages is not a realistic or

efficient alternative. No Settlement Class Members have brought separate claims, which would likely be consolidated into this Action anyway. A class action avoids the duplication of efforts and inconsistent rulings. *In re Zynga Inc. Sec. Litig.*, 2015 WL 6471171, at *7 (N.D. Cal. Oct. 27, 2015) (if shareholders "each brought individual actions, they would each be required to prove the same wrongdoing to establish Defendants' liability. Different courts could interpret the claims differently, resulting in inconsistent rulings or unfair results."). By avoiding repetitious litigation and efficiently resolving the claims of the entire Settlement Class at once, this Action satisfies the superiority requirement. The Court should preliminarily certify the Settlement Class as this Action satisfies each of the Rule 23(a) and (b)(3) requirements.

## V.   THE COURT SHOULD APPROVE THE PROPOSED FORMS OF NOTICE AND PLAN FOR PROVIDING NOTICE

To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). "'The notice must be of such nature as reasonably to convey the required information [...] and it must afford a reasonable time for those interested to make their appearance.'" *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983) (quoting *Mullane*, 339 U.S. at 314).

Plaintiff requests that the Court approve the form and content of the proposed Notice and Summary Notice. (*See* Ex. A-1 and A-3 to the Settlement Stipulation). Consistent with Rules 23(c)(2)(B) and 23(e)(1), the proposed Notice will be mailed to all identifiable Class Members and provide them with detailed information concerning: (a) the rights of Class Members, including the manner in which to object; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) the process for filing a proof of claim; (e) a description of the Plan of Allocation;

(f) the fees and expenses to be sought by Class Counsel; and (g) the necessary information for any Class Member to examine the Court records should they desire to do so. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name. The Notice closely follows a template provided by the Federal Judicial Center. *Compare* Ex. A-1 *with* Federal Judicial Center Model Securities class action certificate and settlement: full notice.[5]

The Notice also satisfies the PSLRA's separate disclosure requirements by (a) stating the amount of the Settlement on both an aggregate and average per share basis, (b) providing a brief statement explaining the reasons why the parties are proposing the Settlement, (c) stating the maximum amount of attorney's fees, compensatory awards for the Class Representative, and expenses (both on an aggregate and average per share basis) that Class Counsel will seek, and (d) providing the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel who will be available to answer questions from Settlement Class Members. *See* 15 U.S.C. § 78u-4(a)(7). Both forms of Notice will also disclose the date, time and location of the Fairness Hearing and the deadlines for seeking exclusion and submitting Claim forms and any objections to the Settlement, the Plan of Allocation, or to Lead Counsel's requested attorney's fees and expenses. These disclosures are thorough and should be approved.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." In securities class actions, it is customary to provide notice by (a) publishing a

---

[5] https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf

summary notice in a major publication, (b) mailing long-form notice to all individual shareholders who can be found, and (d) publishing notice on a website. *See, e.g., In re Marsh Erisa Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010). The proposed notice plan in this case follows this customary rule in securities class action. Thus, it readily meets standards imposed by Rule 23 and the PSLRA.

## VI.    CONCLUSION

Plaintiff respectfully requests that the Court enter the proposed Order, find preliminarily that the Settlement is reasonable and fair, and find that notification to the Class Members of the terms of the Settlement and of their rights in connection with the Settlement is warranted.

Dated: March 28, 2023                           Respectfully submitted,

                                                **THE ROSEN LAW FIRM, P.A.**

                                                By: /s/ Laurence M. Rosen
                                                Laurence M. Rosen
                                                Jonathan Stern (*Pro hac vice*)
                                                275 Madison Avenue, 40th Floor
                                                New York, New York 10016
                                                Phone: 212-686-1060
                                                Fax: 212-202-3827
                                                Email:
                                                lrosen@rosenlegal.com
                                                jstern@rosenlegal.com

                                                *Lead Counsel for Lead Plaintiff*
                                                *and the Class*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this the 28th of March, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/ Laurence M. Rosen</u>