**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-23303- ALTMAN/Brannon**

**Honorable Roy K. Altman, United States District Judge for the Southern District of Florida**

JERALD VARGAS MALESPIN, individually and
on behalf of all others similarly situated,

Plaintiff,

vs.

LONGEVERON INC., GEOFF GREEN, JAMES
CLAVIJO, JOSHUA M. HARE, DONALD M.
SOFFER, NEIL E. HARE, ROCK SOFFER, EF
HUTTON  F/K/A  KINGSWOOD  CAPITAL
MARKETS, and ALEXANDER CAPITAL L.P.

Defendants.

_____ /

**RENEWED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED**
**CLASS ACTION SETTLEMENT; MEMORANDUM**
**OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

# TABLE OF CONTENTS

MOTION ........................................................................................................................... 1

MEMORANDUM OF LAW ........................................................................................... 2

I.       INTRODUCTION ................................................................................................ 2

II.      PROCEDURAL HISTORY ................................................................................. 4

III.     THE PROPOSED SETTLEMENT MEETS THE CRITERIA NECESSARY FOR
         THIS COURT TO GRANT PRELIMINARY APPROVAL ............................... 5

         A.     Plaintiff and Lead Counsel Adequately Represented the Class .............................. 6

         B.     The Settlement is a Product of Arm's Length Negotiations ................................... 7

         C.     The Relief Provided to the Class is Adequate ....................................................... 7

                1.      The Strength of Plaintiff's Case and the Risk, Expense, Complexity,
                        and Likboth the fely Duration of Continued Litigation ............................. 9

                2.      The Costs, Risks, and Delay of Trial and Appeal .................................... 10

         D.     The Remaining Rule 23(e)(2)(C) Factors Support Approval ............................... 11

                3.      The Methods of Distributing Relief and Processing Claims ................... 11

                4.      Proposed Attorneys' Fees ........................................................................ 11

                5.      Other Agreements .................................................................................... 12

                6.      The Proposed Settlement Does Not Unjustly Favor Any Settlement
                        Class Member, Including Plaintiff ........................................................... 12

IV.      THE COURT SHOULD CERTIFY A SETTLEMENT CLASS .................................... 13

         A.     The Settlement Class Meets the Requirements of Rule 23(a) ............................. 13

                1.      Numerosity ............................................................................................... 13

                2.      Commonality ............................................................................................ 14

                3.      Typicality ................................................................................................. 14

                4.      Adequacy .................................................................................................. 15

         B.     The Settlement Class Meets the Requirements of Rule 23(b)(3) ........................ 16

       1.      Predominance ............................................................................................. 16

       2.      Superiority .................................................................................................. 17

V.      THE COURT SHOULD APPROVE THE PROPOSED FORMS OF NOTICE AND PLAN FOR PROVIDING NOTICE ........................................................... 18

VI.    CONCLUSION ....................................................................................................... 19

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Amchem Prod., Inc. v. Windsor*,
  521 U.S. 591 ................................................................................................................ 16, 17

*Appleyard v. Wallace*,
  754 F.2d 955 (11th Cir. 1985) .................................................................................. 15

*Aranaz v. Catalyst Pharm. Partners Inc.*,
  302 F.R.D. 657 (S.D. Fla. 2014) ............................................................................. 13

*Badger v. S. Farm Bureau Life Ins. Co.*,
  612 F.3d 1334 (11th Cir. 2010) ................................................................................ 11

*Behrens v. Wometco Enterprises, Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988) ............................................................................... 7

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ................................................................................... 5

*Blackie v. Barrack*,
  524 F.2d 891 (9th Cir. 1975) .................................................................................... 17

*Busby v. JRHBW Realty, Inc.*,
  513 F.3d 1314 (11th Cir. 2008) ................................................................................ 15

*Canupp v. Liberty Behav. Health Corp.*,
  417 F. App'x 843 (11th Cir. 2011) ............................................................................ 7

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) .......................................................................... 10

*Cheney v. Cyberguard Corp.*,
  213 F.R.D. 484 (S.D. Fla. 2003) .............................................................................. 14

*Christine Asia Co. v. Yun Ma*,
  No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ............... 12

*Cox v. Am. Cast Iron Pipe Co.*,
  784 F.2d 1546 (11th Cir. 1986) .......................................................................... 13, 14

*CV Reit, Inc. v. Levy*,
  144 F.R.D. 690 (S.D. Fla. 1992) .............................................................................. 14

iii

*Eminence Cap., LLC v. Aspeon, Inc.*,
   316 F.3d 1048 (9th Cir. 2003) ........................................................................................ 9

*Fifth Moorings Condo., Inc. v. Shere*,
   81 F.R.D. 712 (S.D. Fla. 1979) ...................................................................................... 13

*Figueroa v. Sharper Image Corp.*,
   517 F. Supp. 2d 1292 (S.D. Fla. 2007) ........................................................................... 6

*Francisco v. Numismatic Guar. Corp. of Am.*,
   No. 06-61677-CIV, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ..................................... 7

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ........................................................................................ 6

*Health Ins. Innovations Sec. Litig.*,
   No. 8:17-CV-2186-TPB-SPF, 2021 WL 1341881 (M.D. Fla. Mar. 23, 2021) ............... 9

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) ........................... 12

*Hefler v. Wells Fargo & Co.*,
   No. 16-CV-05479-JST, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) ........................... 9

*In re Alexander Grant & Co. Litig.*,
   110 F.R.D. 528 (S.D. Fla. 1986) .................................................................................... 17

*In re Amerifirst Sec. Litig.*,
   139 F.R.D. 423 (S.D. Fla. 1991) .............................................................................. 14, 15

*In re Checking Acct. Overdraft Litig.*,
   275 F.R.D. 654 (S.D. Fla. 2011) .................................................................................. 7, 8

*In re Checking Acct. Overdraft Litig.*,
   830 F. Supp. 2d 1330 (S.D. Fla. 2011) ......................................................................... 10

*In re Elan Sec. Litig.*,
   385 F. Supp. 2d 363 (S.D.N.Y. 2005) ............................................................................ 8

*In re IGI Sec. Litig.*,
   122 F.R.D. 451 (D.N.J. 1988) ...................................................................................... 15

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) .................................................................................. 19

*In re Mego Fin. Corp. Sec. Litig.*,
   213 F.3d 454 (9th Cir. 2000) ..................................................................................... 9, 13

*In re Sci.-Atlanta, Inc. Sec. Litig.*,
    571 F. Supp. 2d 1315 (N.D. Ga. 2007) ............................................................................. 13, 15

*In re Silicone Gel Breast Implant Prod. Liab. Litig.*,
    No. CIV.A.CV94-P-11558-S, 1994 WL 114580 (N.D. Ala. Apr. 1, 1994) .............................. 6

*In re Skinner Grp., Inc.*,
    206 B.R. 252 (Bankr. N.D. Ga. 1997) ................................................................................... 5

*In re U.S. Oil & Gas Litig.*,
    967 F.2d 489 (11th Cir. 1992) ............................................................................................. 5

*In re Zynga Inc. Sec. Litig.*,
    No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ................................. 18

*Johnson v. NPAS Sols., LLC*,
    975 F.3d 1244 (11th Cir. 2020) ........................................................................................... 9

*Kennedy v. Tallant*,
    710 F.2d 711 (11th Cir. 1983) ........................................................................................... 15

*Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd.*,
    No. 916029CIVUNGAROBENAG, 1994 WL 808074 (S.D. Fla. June 8, 1994) ................... 13

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
    136 F. Supp. 3d 1159 (C.D. Cal. 2015) ............................................................................. 16

*Kornberg v. Carnival Cruise Lines, Inc.*,
    741 F.2d 1332 (11th Cir. 1984) ......................................................................................... 15

*Kreuzfeld A.G. v. Carnehammar*,
    138 F.R.D. 594 (S.D. Fla. 1991) ........................................................................................ 14

*Levin v. Mississippi River Corp.*,
    59 F.R.D. 353 (S.D.N.Y.1973) ............................................................................................. 5

*Mashburn v. Nat'l Healthcare, Inc.*,
    684 F. Supp. 660 (M.D. Ala. 1988) ...................................................................................... 5

*Mazur v. Lampert*,
    No. 04-61159-CIV, 2007 WL 9698265 (S.D. Fla. Mar. 23, 2007) ...................................... 13

*Mild v. PPG Indus., Inc.*,
    No. 218CV04231RGKJEM, 2019 WL 3345714 (C.D. Cal. July 25, 2019) ............................ 6

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950) .......................................................................................................... 18

*Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*,
    688 F.2d 615 (9th Cir. 1982) ................................................................................... 9

*Robbins v. Kroger Props. Inc.*,
    116 F.3d 1441 (11th Cir.) ....................................................................................... 10

*Rosario-Guerrro v. Orange Blossom Harvesting*,
    265 F.R.D. 619 (M.D. Fla. 2010) ........................................................................... 15

*Soberal-Perez v. Heckler*,
    717 F.2d 36 (2d Cir. 1983) ..................................................................................... 18

*Strube v. Am. Equity Inv. Life Ins. Co.*,
    226 F.R.D. 688 (M.D. Fla. 2005) ........................................................................... 10

*Turocy v. El Pollo Loco Holdings, Inc.*,
    No. SACV151343DOCKESX, 2018 WL 3343493 (C.D. Cal. July 3, 2018) ........ 16

*Vinh Nguyen v. Radient Pharms. Corp.*,
    No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) .............. 12

*Yedlowski v. Roka Bioscience, Inc.*,
    No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ............. 16

*Zuckerman v. Smart Choice Auto. Grp., Inc.*,
    No. 6:99-CV-237-ORL28KRS, 2001 WL 686879 (M.D. Fla. May 3, 2001) .......... 3

## Statutes

15 U.S.C. § 77z-1 (a)(4) ..................................................................................................... 1

15 U.S.C. § 78u-4(a)(7) .................................................................................................... 19

15 U.S.C § 78u–4(a)(4) .................................................................................................. 3, 9

## Rules

Fed. R. Civ. P. 23 ................................................................................................... passim

Fed. R. Civ. P. 23 (a) .................................................................................................. 13, 18

Fed. R. Civ. P. 23 (a)(2) ................................................................................................... 14

Fed. R. Civ. P. 23 (a)(3) ................................................................................................... 14

Fed. R. Civ. P. 23 (a)(4) ................................................................................................... 15

Fed. R. Civ. P. 23 (b)(3) .............................................................................................. 16, 18

Fed. R. Civ. P. 23 (c)(2)(B) ................................................................................... 18, 19

Fed. R. Civ. P. 23 (e) ................................................................................................ 6

Fed. R. Civ. P. 23 (e)(1) ..................................................................................... 18, 19

Fed. R. Civ. P. 23 (e)(1)(B) ...................................................................................... 5

Fed. R. Civ. P. 23 (e)(2) ....................................................................................... 5, 6

Fed. R. Civ. P. 23 (e)(2)(A) ...................................................................................... 6

Fed. R. Civ. P. 23 (e)(2)(B) ...................................................................................... 7

Fed. R. Civ. P. 23 (e)(2)(C) ............................................................................... 10, 11

Fed. R. Civ. P. 23 (e)(2)(C)(ii)-(iv) ......................................................................... 11

Fed. R. Civ. P. 23 (e)(2)(D) .................................................................................... 12

Fed. R. Civ. P. 23 (e)(3); and Fed. R. Civ. P. 23 (D) ................................................ 6

Fed. R. Civ. P. 23 (g)(1)(A) .................................................................................... 16

**Other Authorities**

*Newberg On Class Actions* (2d Ed) (1985) ...................................................... 5, 8, 17

## MOTION

Lead plaintiff John Bosico ("Plaintiff" or "Class Representative" or "Bosico"), on behalf of himself and the proposed Class (defined below), upon the accompanying Memorandum of Law in Support of Plaintiff's Motion for Preliminary Approval, the Declaration of Jonathan Stern ("Stern Decl.") and the exhibits attached thereto, hereby moves the Court for an order pursuant to Rule 23 of the Federal Rules of Civil Procedure: (1) preliminarily approving the terms of the settlement set forth in the Stipulation and Agreement of Settlement dated April 28, 2023 (the "Settlement Stipulation")[1] entered into by the parties; (2) preliminarily certifying a class, for settlement purposes only, of all persons who purchased Longeveron Inc. Class A common stock: (a) pursuant and/or traceable to the initial public offering conducted on or about February 12, 2021 (the "IPO" or "Offering"); and/or (b) between February 12, 2021 and August 12, 2021, both dates inclusive (the "Settlement Class"); (3) establishing a date for a hearing to determine the fairness, reasonableness, and adequacy of the settlement set forth in the Settlement Stipulation; (4) appointing Strategic Claims Services as Claims Administrator; (5) approving the form and manner of disseminating notice to the Class; (6) scheduling a hearing to consider final approval of the Settlement, an award of attorneys' fees and expenses, and payment to Plaintiff "of reasonable costs and expenses (including lost wages) directly relating to the representation of the class…"pursuant to 15 U.S.C. § 77z-1 (a)(4); and (7) setting deadlines for the dissemination of notice, the submission of proofs of claim and requests for exclusion, and the filings of objections and papers in support of the Settlement.

The following is a proposed timetable listing the dates requested in the [Proposed] Order Granting Class Representative's Motion for Preliminary Approval of Class Action Settlement. The proposed dates will allow sufficient time for notice to issue, for class members to respond to the notice and consider their options, and for objections to be brought to the Court's attention. The proposed schedule is consistent with schedules entered in other securities class actions and the Court's order dated March 31, 2023 (Dkt. No. 47) and with schedules approved by this Court in granting preliminary approval to other proposed class action settlements.

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation.

| Event | Deadline for Compliance |
|---|---|
| Date for the Settlement Hearing. | Plaintiff suggests one hundred twenty (120) days after entry of the Preliminary Approval Order. (Preliminary Approval Order ¶ 6) |
| Mailing of Notice and Proof of Claim and Release. | No later than sixteen (16) calendar days following entry of the Preliminary Approval Order. (Preliminary Approval Order ¶ 13) |
| Publication of Summary Notice. | No later than sixteen (16) calendar days following entry of the Preliminary Approval Order. (Preliminary Approval Order ¶ 19) |
| Deadline for filing Proof of Claim and Release Forms | No later than thirty (30) calendar days prior to the settlement hearing. (Preliminary Approval Order ¶ 21(a) |
| Filing deadline for requests for exclusion. | No later than forty-four (44) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 23) |
| Date for Plaintiff to file papers in support of the Settlement and the Plan of Allocation | No later than thirty-five (35) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 31) |
| Date for Plaintiff to file application for attorneys' fees and reimbursement of expenses | No later than seven (7) days after preliminary approval of the Settlement. (Preliminary Approval Order ¶ 30) |
| Filing deadline for objections. | No later than fourteen (14) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 27) |
| Date for Plaintiff to file reply papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees and reimbursement of expenses. | No later than seven (7) calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 32) |

## MEMORANDUM OF LAW

## I.    INTRODUCTION

Plaintiff previously filed a Motion For Preliminary Approval Of Proposed Class Action Settlement on March 28, 2023 (Dkt. No. 43). The Court entered an order denying that motion without prejudice on March 31, 2023. (Dkt. No. 47). The revised settlement documents address the Court's two directives in the Order: first, it adjusts the schedule for filing a fee brief so that the brief will be filed before notice is sent out, and second, it makes clear that Lead Plaintiff will only seek an "award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class" as permitted by

the Private Securities Litigation Reform Act. 15 U.S.C § 78u–4(a)(4).

Court approval of a class settlement is a two-step process. First, the Court must decide whether to preliminarily approve the settlement, as well as the content and method of providing notice to the Class. Second, after notice has been issued to class members, the Court must make a final determination as to whether the Settlement is fair, reasonable and adequate, such that it should be finally approved.

A court should grant preliminary approval as long as it is within the range of settlements that could be finally approved, and does not suffer from any obvious defects. The proposed settlement easily meets these criteria.  First, the settlement is well within the range of settlements that could be finally approved. Indeed, it is an excellent result for the class. Class Representative secured a settlement of one million three hundred ninety seven thousand five hundred dollars ($1,397,500) (the "Settlement Amount"). Class Representative's expert report estimates that the Class's aggregate damages based upon the alleged corrective disclosures in the amended complaint (*i.e.,* August 13, 2021) are $4.4 million for section 10(b) claims and $12.1 million for section 11 claims.[2]  The settlement recovers 31.7% of section 10(b) damages and 11.5% of section 11 damages. By comparison, the median settlement for cases with damages below $20 million recovers 11.1% of maximum damages in 2022, according to Cornerstone Research. Stern Dec. Ex. 2, p. 6.

The proposed notice to class members (the "Notice)" satisfies the PSLRA's separate disclosure requirements and is the best practicable notice under the circumstances. The Notice is based upon templates that have been approved hundreds of times to communicate securities class action settlements. Plaintiff proposes that notice be given to the class by publication of the summary notice in a press release and the Investors' Business Daily, mailing notice to all class members who can be found from Longeveron Inc.'s ("Longeveron") or brokers' records, and publication of all documents on the claims administrator's website. Numerous courts have approved these exact steps. *Zuckerman v. Smart Choice Auto. Grp., Inc.*, No. 6:99-CV-237-ORL28KRS, 2001 WL 686879, at *3 (M.D. Fla. May 3, 2001); *Aranaz et al., v. Catalyst*

---

[2] The Section 11 damages presume Plaintiff would have defeated a negative causation defense. If Defendants were able to prevail on a negative causation defense with respects to declines in Longeveron stock other than on the date of the alleged corrective disclosure, Section 11 damages would be lower.

*Pharmaceutical Partners, Inc., et al.,* 1:13-cv-23878-UU (S.D. Fla) (Dkt. No. 146) at ¶15; *Vanleeuwen, et al., v. Keyuan Petrochemicals, Inc., et al.,* 1:13-cv-06057 (S.D.N.Y.) (Dkt. No. 183) at ¶16; *Miller, et al., v. Global Geophysical Services, Inc.,* 14-cv-0708 (S.D. Tex.) (Dkt. No. 120) at ¶17. Thus, the proposed notice is adequate.

## II.   PROCEDURAL HISTORY

On September 13, 2021, named plaintiff Jerald Vargas Malespin ("Malespin") filed the initial complaint alleging violations of federal securities laws against defendants Longeveron, Geoff Green ("Green"), James Clavijo ("Clavijo"), Joshua M. Hare ("J. Hare"), Donald M. Soffer ("D. Soffer"), Neil E. Hare ("N. Hare"), and Rock Soffer ("R. Soffer") (Green, Clavijo, J. Hare, D. Soffer, and N. Hare are collectively referred to as the "Individual Defendants"). (Docket No. 1).

On November 12, 2021, Bosico moved to be appointed lead plaintiff and to have the Court appoint The Rosen Law Firm, P.A. as Class Counsel, (Docket No. 8), which was approved on February 4, 2022. (Docket No. 22).

On April 26, 2022, Plaintiff filed his Amended Complaint (the "AC") against Defendant Longeveron, Individual Defendants, and Defendant Underwriters EF Hutton, division of Benchmark Investments f/k/a Kingswood Capital Markets, and Alexander Capital L.P. (collectively, "Defendants"), on behalf of investors who purchased Longeveron securities: (a) pursuant and/or traceable to the Company's initial public offering conducted on or about February 12, 2021; and (b) between February 12, 2021 and August 12, 2021 (the "Class Period"), seeking damages caused by: (i) Defendants' alleged violations of Section 11 of the Securities Act of 1933 (the "Securities Act"); (ii) Individual Defendants' alleged violations of Section 15 of the Securities Act; (iii) Defendants Longeveron, Green, Clavijo, and J. Hare's alleged violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder; and (iv) Defendants Green, Clavijo, and J. Hare's alleged violations of Section 20(a) of the Exchange Act. (Docket No. 27). Specifically, the AC alleged that defendants Longeveron, Green, Clavijo, J. Hare, D. Soffer, N. Hare, and R. Soffer made or caused to be made false and misleading statements by failing to disclose the existence of facts that undermined the overly optimistic statements regarding Lomocel-B made at the time of the IPO and during the Class Period and that the Underwriter Defendants breached their duty to make a reasonable and diligent investigation of the statements and ensure their correctness.

Defense counsel informed Plaintiff that Defendants disputed liability and intended to move to dismiss all counts against all Defendants.  Thereafter, the Parties agreed to participate in privates settlement discussions. The parties exchanged settlement demands and offers over the course of several weeks via a series of telephone conferences, and ultimately reached the instant settlement.

The parties, all represented by experienced counsel, agreed to a settlement of $1,397,500 in cash to resolve the claims of the Class against the Defendants, with a class period of February 12, 2021 to August 12, 2021. In exchange, the Plaintiff agreed to release claims against all Defendants, as specified in the Settlement Stipulation.

## III.   THE PROPOSED SETTLEMENT MEETS THE CRITERIA NECESSARY FOR THIS COURT TO GRANT PRELIMINARY APPROVAL

Rule 23(e) requires the judicial approval of any settlement of claims brought on a class-wide basis. Approval of a proposed settlement is within the Court's discretion and is to be exercised in conformity with "[p]ublic policy [that] strongly favors the pretrial settlement of class action lawsuits." *In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). Indeed, federal courts recognize that securities fraud class actions, which can be complex, unpredictable in result and protracted, "readily lend themselves to settlement." *See Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988); *Levin v. Mississippi River Corp.*, 59 F.R.D. 353, 363 (S.D.N.Y.1973), *a'ff'd sub nom.*, *Wesson  Mississippi River Corp.*, 486 F.2d 1398 (2d Cir.), *cert. denied*, 414 U.S. 1112, 94 S.Ct. 843, 38 L.Ed.2d 739 (1973); H. Newberg, *Newberg On Class Actions* (2d Ed), § 22.79, at 155 (1985).

Rule 23(e) requires that class members be provided "notice of the proposed dismissal or compromise" of a class action. To avoid serving notice of an obviously deficient settlement, "courts have resorted to a two-step approach" – holding a preliminary hearing prior to determine whether to disseminate notice and hold a final approval hearing. *In re Skinner Grp., Inc.*, 206 B.R. 252, 260-61 (Bankr. N.D. Ga. 1997); *Bennett v. Behring Corp.*, 737 F.2d 982, 985–86, 988 (11th Cir. 1984) (two-step process for approving class action settlement appropriate).

The issue at preliminary approval turns on whether the Court "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2) governs final approval and requires courts to determine if a proposed settlement is fair, reasonable, and adequate after considering whether:

"(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for

the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other."

Fed. R. Civ. P. 23(e)(2).

After preliminary approval, the class is notified of the settlement and the final fairness hearing. *See, e.g., Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1299 (S.D. Fla. 2007) ("If the preliminary evaluation of the proposed settlement does not disclose grounds to doubt its fairness or other obvious deficiencies... and appears to fall within the range of possible approval, the court should direct that notice issue and should schedule a final approval hearing.") (internal quotation omitted); *In re Silicone Gel Breast Implant Prod. Liab. Litig.*, No. CIV.A.CV94-P-11558-S, 1994 WL 114580, at *7 (N.D. Ala. Apr. 1, 1994) (granting preliminary approval and setting final hearing at future date after class has received notice). The preliminary approval process is not as rigorous and formal as the final approval process.

The proposed Settlement has no obvious deficiencies and falls within the reasonable range of possible approval. First, the Settlement is the culmination of vigorous arm's-length negotiations between well-informed and experienced counsel. Second, the Settlement Amount is well within the reasonable range of recoveries in securities class actions. Third, the substantial risk of continued litigation supports preliminary approval of the proposed Settlement. Therefore, the proposed Settlement satisfies Fed. R. Civ. P. 23(e) and should be preliminarily approved.

### A.      Plaintiff and Lead Counsel Adequately Represented the Class

Courts must consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). Courts determine adequacy by considering two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members[;] and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).

Plaintiff and Lead Counsel have adequately represented the Settlement Class throughout this Action. Plaintiff has no antagonistic interests to other class members, his claims are typical of Settlement Class Members' claims, and Plaintiff shares an interest with the other Settlement Class Members in obtaining the largest possible recovery for the Settlement Class. *Mild v. PPG Indus., Inc.*, No. 218CV04231RGKJEM, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because

Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Further, Plaintiff has worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for himself and the Settlement Class.

As discussed below, Plaintiff retained highly experienced counsel with a successful track record of representing investors in similar securities cases. *Infra*, Section IV(A)(4); *see also* Exhibit 1 to the Declaration of Jonathan Stern ("Stern Dec.") (Rosen Law Firm Resume). Lead Counsel has vigorously prosecuted the Action and will continue to do so through the final settlement approval and distribution process.

**B.      The Settlement is a Product of Arm's Length Negotiations**

Rule 23(e)(2)(B) addresses whether "the [settlement] proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). The negotiations between Lead Counsel and Defendants' counsel that produced the Settlement were serious and informed. Lead Counsel conducted a thorough review of Longeveron's securities filings and publicly available information concerning the Company, leading Plaintiff to file a detailed Amended Complaint setting out a straightforward theory of securities fraud. The parties then engaged in vigorous negotiations and eventually reached a mutually agreeable settlement.

**C.      The Relief Provided to the Class is Adequate**

In assessing the adequacy of the settlement, courts place considerable weight on the opinion of experienced and informed counsel. *See Canupp v. Liberty Behav. Health Corp.*, 417 F. App'x 843, 845 (11th Cir. 2011) ("Indeed, absent fraud, collusion, or the like, a district court should be hesitant to substitute its own judgment for that of counsel"); *see also Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 539 (S.D. Fla. 1988), *aff'd sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990) (The court can rely upon the judgment of experienced counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel.) (internal quotation omitted); *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV, 2008 WL 649124, at *12 (S.D. Fla. Jan. 31, 2008) ("[c]ounsel's conclusions that the [s]ettlement is fair, adequate and reasonable provides strong evidence that the settlement merits the Court's approval. Here, the Court gives 'great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation.'"). Thus, there is "a presumption of fairness" to settlements negotiated at arm's length by informed and experienced counsel. *See In re*

*Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661–62 (S.D. Fla. 2011).

In order to achieve the Settlement, the parties engaged in extensive settlement negotiations. The adversarial process supports preliminary approval. *Id* at 662. (approving settlement that was "the product of informed, good-faith, arms-length negotiations between the parties and their capable and experienced counsel, and [which] was reached with the assistance of a well-qualified and experienced mediator").

Class Counsel has ample experience prosecuting securities class actions. Stern Dec. Ex. 1. Further, Class Counsel is well informed about the strengths and weaknesses of the claims against the Defendants. The Settlement was reached only after a thorough investigation of the facts and merits of the legal claims and defenses, which included: the investigation and drafting of an amended complaint, consultation with an expert regarding damages issues, and extensive legal research regarding and investigation into the probable defenses.  Thus, Class Counsel and Lead Plaintiff were well aware of the claims, defenses and litigation risks by the time the Settlement was reached. *See In re Elan Sec. Litig.*, 385 F. Supp. 2d 363, 370 (S.D.N.Y. 2005) (class counsel had sufficient information to make an informed judgment based on interviews of former employees, review of documents relating to SEC investigation and consultation with accounting and damages experts).

Further, the Settlement has no obvious deficiencies.[3] Along with an all-cash recovery, all members of the proposed Class, including Plaintiff, will be treated fairly and in a similar manner— each recovering their pro rata share of the Net Settlement Fund, except that Lead Plaintiff seeks leave to apply for reimbursement of reasonable costs expenses (including lost wages), arising directly from his representation of the class pursuant to Section 78u-4(a)(4) of the Private Securities Litigation Reform Act ("PSLRA"). The PSLRA specifically addresses payment of plaintiff awards as follows: "The share of any final judgment or of any settlement that is awarded to a representative party serving on behalf of a class shall be equal, on a per share basis, to the portion of the final judgment or settlement awarded to all other members of the class. Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving

---

[3] "[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." *Newberg on Class Actions,* § 11.51 at 11.88 (4th ed. 1992).

on behalf of a class." 15 U.S.C § 78u–4(a)(4). [4] As Plaintiff will set forth more fully in his motion for fees and expenses, Plaintiff will seek $1,500 to compensate him for lost wages incurred in acting as Lead Plaintiff. Plaintiff spent approximately 15 hours in his capacity as Lead Plaintiff, and therefore could not undertake freelance work, for which he has charged $100 per hour.

### 1.   The Strength of Plaintiff's Case and the Risk, Expense, Complexity, and Likely Duration of Continued Litigation

In assessing whether the Settlement is fair, reasonable, and adequate, the Court must balance the continuing risks of litigation, including the strengths and weaknesses of the case, and the complexity, expense, and likely duration of continued litigation, against the benefits afforded to the Settlement Class, including the immediacy and certainty of a financial recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458, 459 (9th Cir. 2000), *as amended* (June 19, 2000); *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). The risks of continued litigation here are considerable, especially at the pleading stage. The PSLRA made the pleading stage of securities litigation a "technical and demanding corner of the law." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

The Complaint has not yet been tested by a motion to dismiss, and there are distinct risks here to protracted litigation. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v. Pekoc*, 802 F. App'x 285 (9th Cir. 2020) ("Courts have recognized that, in general, securities actions are highly complex and that securities class litigation is notably difficult and notoriously uncertain.").

The Class Representative's theory of the case is premised on the theory that Defendants failed to disclose to investors the existence of facts that undermined the overly optimistic statements regarding Lomocel-B made at the time of the IPO and during the Class Period.

---

[4] Courts within the Eleventh Circuit have granted such awards to representative parties subsequent to the Eleventh Circuit's decision in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020). *See In re Health Ins. Innovations Sec. Litig.*, No. 8:17-CV-2186-TPB-SPF, 2021 WL 1341881, at *13 (M.D. Fla. Mar. 23, 2021), report and recommendation adopted, No. 8:17-CV-2186-TPB-SPF, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021) (awarding $3,125 lead plaintiff "to compensate him for the time he incurred in his role as Lead Plaintiff and proposed class representative pursuant to the PSLRA"); *Maz Partners LP v. First Choice Healthcare Solutions, Inc.*, No. 6:19-cv-00619-PGB-LRH (M.D. Fla August 2, 2021) (Dkt. No. 81, ¶ 6). Plaintiff inadvertently omitted a discussion of this issue in its initial brief, and had intended to file a corrected brief to include the above discussion, but did not do so before the Court issued its order denying Plaintiff's prior motion without prejudice.

Contrary to Defendants' public representations, the complaint and AC allege that Defendants were in possession of data that reflected negatively on the efficacy of Lomocel-B in treating Aging Frailty.

The AC alleged the following corrective disclosure on August 13, 2021::  that "the four Lomecel-B cohorts did not show a statistically significant placebo-adjusted difference" and that "in the patient reported outcome questionnaire PROMIS—Physical Function—Short Form 20a (SF-20a) total score [. . .] Lomecel-B cohorts did not show a statistically significant difference compared to the placebo cohort[.]". (Docket No. 27, ¶¶ 12, 77-80). Given the complexity of the subject matter and the probable defenses, litigating this case to trial would have required at a minimum extensive discovery on complex medical and scientific issues, as well as experts to opine on those medical issues, and other experts to opine on market efficiency and damages.

### 2.    The Costs, Risks, and Delay of Trial and Appeal

In evaluating a settlement under Rule 23(e)(2)(C), courts also consider "the costs, risks, and delay of trial and appeal." The Court "can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697–98 (M.D. Fla. 2005); *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011). It is well settled that "[t]he risks of litigation are what ultimately leads to settlement." *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 215 (S.D.N.Y. 1992).

Here, Defendants denied liability, intended to file a motion to dismiss all claims against all Defendants, and said they would vigorously defend this action through judgment including by seeking summary judgment in the event their motion to dismiss was unsuccessful. Defendants also made clear they would appeal in the event of an adverse verdict.  While Plaintiff was prepared to litigate this case through trial against the Defendants, and was at all times confident in his ability to ultimately prove his claims, Plaintiff would have had to survive a motion to dismiss and summary judgment, and a trial is always a risky proposition. In addition, Plaintiff would have been required to prevail on a motion for class certification.

Plaintiff and his counsel recognize the significant risks and uncertainty involved in pursuing Plaintiff's claims through litigation. As the Court is aware, the Class must not only win at trial, but against the Defendants' post-trial motions, and on appeal. *See, e.g., Robbins v. Kroger Props. Inc.*, 116 F.3d 1441, 1448-1449 (11th Cir.), *reh'g en banc denied*, 129 F.3d 617 (11th

Cir.1997) (finding no loss causation and overturning $81 million jury verdict); *Badger v. S. Farm Bureau Life Ins. Co.*, 612 F.3d 1334, 1347 (11th Cir. 2010) (reversing $31.7 million jury verdict). The Settlement avoids these risks.

Under these circumstances, the proposed settlement properly balances the risks, expenses, and delay inherent in complex cases among the respective parties. Thus, the benefits created by the Settlement weigh in favor of granting the motion for preliminary approval. Moreover, in light of the risks of continued litigation and the time and expense to be incurred in prosecuting this action through a trial, the Settlement represents a meaningful recovery that is in the best interest of the class.

### D.      The Remaining Rule 23(e)(2)(C) Factors Support Approval

Rule 23(e)(2)(C)(ii)-(iv) requires courts to consider whether the relief provided for the class is adequate. These factors support approving the Settlement.

### 3.      The Methods of Distributing Relief and Processing Claims

The method for distributing relief to eligible claimants and for processing Settlement Class Members' claims includes standard and effective procedures for processing claims and efficiently distributing the Net Settlement Fund. Plaintiff requests that the Court appoint Strategic Claims Services ("SCS") as Claims Administrator. If SCS is appointed it will, under Lead Counsel's guidance, process claims, allow Claimants an opportunity to cure any deficiencies or request the Court to review a denial of their Claim(s), and pay Authorized Claimants their *pro rata* share of the Net Settlement Fund pursuant to the Plan of Allocation set forth in the Long Notice. The method proposed here is both effective and necessary, as neither Plaintiff nor Defendants possess the individual investor trading data required for a process to distribute the Net Settlement Fund.

### 4.      Proposed Attorneys' Fees

The Notice explains that Lead Counsel will apply for attorneys' fees of one third of the Settlement, or $465,833.33. An award of attorneys' fees of one third of the Settlement Amount is reasonable and consistent with the fees awarded in similar actions in this Circuit. *E.g.*, *Aranaz v. Catalyst Pharmaceutical Partners Inc.*, No. 13–cv–23878–UU, Dkt. No. 153 at ¶ 18 (S.D. Fla. 2015), *Howard v. Chanticleer Holdings, Inc.*, No. 12- cv-81123-JIC, Dkt. No. 74 at ¶ 4 (S.D. Fla. 2014) ($33^{1/3}$% of $850,000 fund); *Fuller v. Imperial Holdings*, No. 11-cv-81184-KAM, D.E. 95 at ¶ 17 (S.D. Fla. Dec. 16, 2013) (30% of $12 million fund); *Murdeshwar v. Searchmedia Holdings Ltd.*, No. 11-cv-20549, Dkt. No. 103 at ¶ 14 (S.D. Fla. Apr. 25, 2012) ($33^{1/3}$% of $2.75 million

fund); *Schorrig v. IBM Southeast Employees' Federal Credit Union*, No. 09-cv-80973-KLR, Dkt. No. 155 at 11 (S.D. Fla. Feb. 24, 2012) (30% of $950,000 fund). Lead Counsel will receive no payment, and have not, until after the Court issues an order awarding attorneys' fees.

### 5. Other Agreements

The Parties also executed a standard supplemental agreement providing that if Settlement Class Members opt out such that the number of shares held by those persons opting out reaches a certain threshold, any of the Defendants may terminate the Settlement. Stipulation ¶36. The terms of the supplemental agreement are kept confidential to avoid incentivizing Settlement Class Members to opt out solely to leverage the threshold to exact an individual settlement, and does not detract from the fairness of the Settlement. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.").

### 6. The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Member, Including Plaintiff

Courts must also evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not offer preferential treatment to any Settlement Class Member, including Plaintiff. The Plan of Allocation proposed in the Long Notice provides for distribution of the Net Settlement Fund to Authorized Claimants who suffered losses on their transactions in Longeveron securities during the Settlement Class Period, based on when each investor purchased, acquired, and/or sold Longeveron securities. The Plan of Allocation was developed by Lead Counsel after consulting with the Claims Administrator and Plaintiff's damages expert. All Settlement Class Members' recoveries will be based upon the relative losses they sustained.

Plaintiff will receive a pro rata distribution from the Net Settlement Fund per the Plan of Allocation, just like all other Settlement Class Members. *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the

timing of purchases of the securities at issue.'").

Plaintiff will also seek reimbursement of costs incurred representing the Settlement Class, as authorized by the PSLRA. *Mego*, 213 F.3d at 454 (affirming reimbursement to class representative in securities class action settlement).

## IV.   THE COURT SHOULD CERTIFY A SETTLEMENT CLASS

As part of the Settlement, Lead Plaintiff respectfully requests that the Court preliminarily certify the proposed Settlement Class (defined as "Class" in ¶1(h) of the Stipulation). Courts in the Eleventh Circuit, including this District, routinely certify class actions such as this one, alleging violations of the federal securities laws. *Aranaz v. Catalyst Pharm. Partners Inc.*, 302 F.R.D. 657, 663 (S.D. Fla. 2014); *Mazur v. Lampert*, No. 04-61159-CIV, 2007 WL 9698265, at *1 (S.D. Fla. Mar. 23, 2007).

### A.   The Settlement Class Meets the Requirements of Rule 23(a)

Rule 23 governs class certification and requires that: (1) the class is so numerous that joinder of all members is impracticable ("numerosity"); (2) there are questions of law or fact common to the class ("commonality"); (3) the claims or defenses of the representative party are typical of those of the class ("typicality"); and (4) the representative party will fairly and adequately protect the interests of the class ("adequacy"). Fed. R. Civ. P. 23(a).

#### 1.   Numerosity

For numerosity purposes, "'[i]mpracticability' does not mean impossibility. It is sufficient if it is inconvenient or difficult to join all members of a class" *Kingston Square Tenants Ass'n v. Tuskegee Gardens, Ltd.*, No. 916029CIVUNGAROBENAG, 1994 WL 808074, at *3 (S.D. Fla. June 8, 1994) *quoting Fifth Moorings Condo., Inc. v. Shere*, 81 F.R.D. 712, 716 (S.D. Fla. 1979). In securities litigation, courts regularly find the numerosity requirement satisfied with respect to purchasers of nationally traded securities. See *In re Sci.-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1325 (N.D. Ga. 2007). In this case, Longeveron common stock traded actively on the NASDAQ Capital Market ("NASDAQ") throughout the Class Period under the ticker symbol "LGVN." As of August 12, 2021, there were 5,925,935 shares of Class A common stock outstanding. These shares were purchased by thousands of investors, making joinder impracticable. *See Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) ("while there is no fixed numerosity rule, generally less than twenty-one is inadequate, more than forty adequate….").

### 2.    Commonality

In order to maintain a class action, there must be "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Commonality is met if the plaintiff alleges standardized conduct by the defendants directed toward members of the proposed class. *CV Reit, Inc. v. Levy*, 144 F.R.D. 690, 696 (S.D. Fla. 1992); *In re Amerifirst Sec. Litig.*, 139 F.R.D. 423, 428 (S.D. Fla. 1991) ("a court will normally find commonality where a question of law refers to standardized conduct by defendants towards members of the proposed class."). Rule 23 thus does not require a complete identity of circumstances among class members; differences among class members are not fatal to a class action as long as some common questions of fact or law exist. *Cox*, 784 F.2d at 1557. Rather, "the issue turns on whether there exists at least one issue affecting all or a significant number of proposed class members." *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991).

"Where a common scheme is alleged, common questions of law or fact will exist." *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 490 (S.D. Fla. 2003). Virtually all of the questions of law and fact in this action are common to Plaintiff and all other purchasers of Longeveron Class A common stock during the Class Period. These common questions of law and fact include, among others:

•    Whether the provisions of the Exchange Act and Securities Act were violated by Defendants' acts as alleged herein;

•    Whether documents, including press releases and public statements issued by Defendants to the investing public omitted and/or misrepresented material facts about the Company and its business; and

•    The extent to which members of the class have sustained damages, and the proper measure of damages.

Accordingly, "[a]s both the factual and legal issues necessary to prove these claims and establish the defendants' liability for the alleged misrepresentations and omissions are essentially identical as to each member of the purported class," the commonality requirement is satisfied. *AmeriFirst*, 139 F.R.D. at 428.

### 3.    Typicality

Rule 23(a)(3) requires that "the claims…of the representative parties [be] typical to the claims…of the class." The typicality requirement is met when the class representative's claims

have the same essential characteristics and are based on the same legal theory as claims of the other members of the class. *Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985); *AmeriFirst*, 139 F.R.D. at 428; *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984). Factual differences between the claims of the class representative and those of other class members will not defeat typicality. *Appleyard*, 754 F.2d at 958; *AmeriFirst*, 139 F.R.D. at 428. Rather, "the typicality requirement is generally met if the class representative and the class members received the same unlawful conduct, irrespective of whether the fact patterns that underlie each claim vary." *Rosario-Guerrro v. Orange Blossom Harvesting*, 265 F.R.D. 619, 627 (M.D. Fla. 2010). The focus of the typicality inquiry is not the plaintiff's behavior, but the defendants' actions. *In re IGI Sec. Litig.*, 122 F.R.D. 451, 456 (D.N.J. 1988) ("[I]t is defendants' course of conduct . . . upon which the court must focus in determining typicality"). "As long as Plaintiffs assert, as they do here, that Defendants committed the same wrongful acts in the same manner against all members of the class, they establish the necessary typicality." *AmeriFirst*, 139 F.R.D. at 429 (citing *Kennedy v. Tallant*, 710 F.2d 711, 717 (11th Cir. 1983)). The typicality element is satisfied where "the claims or defenses of the class and class representative arise from the same event or pattern or practice and are based on the same theory." *Rosario-Guerrro*, 265 F.R.D. at 627. Here, Plaintiff's claims are typical of others in the Class because Plaintiff alleges each: (1) purchased Longeveron shares at artificially inflated prices during the Class Period as a result of Defendants' false statements and omissions and (2) seek to recover damages for losses incurred when the fraud was revealed. Plaintiff's claims and the Class' claims arise out of the same alleged, wrongful conduct and are premised on the same legal theory. Accordingly, Plaintiff's claims are typical of those of the Class because they have the same interests and same injury as the other members of the Class. *See Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1322 (11th Cir. 2008).

    **4.**  **Adequacy**

    Rule 23(a)(4) is satisfied if "the representative Parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "The adequacy of representation prerequisite of Rule 23 requires that the class representatives have common interests with the non-representative class members and requires that the representatives demonstrate that they will vigorously prosecute the interests of the class through qualified counsel." *Scientific-Atlanta*, 571 F. Supp. 2d at 1331. Here, as mentioned above, Lead Plaintiff has and will continue to represent the interests of the Settlement Class fairly and adequately. There is no antagonism or conflict of interest

between Lead Plaintiff and the proposed Settlement Class.

As to the adequacy of Lead Counsel, the Court must consider "(i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A). Lead Counsel has been involved in this action almost from the beginning, conducting a pre-filing investigation, retaining an investigator to interview former Longeveron employees, retaining a damages expert to evaluate the case, filing an amended complaint, formalizing the settlement, and filing the instant motion for preliminary approval. As set forth in the Stern Dec, and the firm resume of the Rosen Law Firm attached thereto, Lead Counsel are experienced securities class action attorneys who are knowledgeable and capable of evaluating cases to determine when a settlement would be beneficial to the class, and when to continue litigating. Stern Dec. ¶3, Ex. 1. This Court and others around the country have consistently found The Rosen Law Firm to be well-suited as class counsel in securities class actions. See *Turocy v. El Pollo Loco Holdings, Inc.*, No. SACV151343DOCKESX, 2018 WL 3343493, at *7 (C.D. Cal. July 3, 2018) (appointing Rosen Law as class counsel); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law Firm] is highly experienced in the complex field of securities fraud class action litigation"). Lead Counsel will adequately represent the Settlement Class.

**B.      The Settlement Class Meets the Requirements of Rule 23(b)(3)**

Pursuant to Fed. R. Civ. P. 23(b)(3), this Court also must decide "that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) ("predominance" and "superiority").

**1.      Predominance**

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation," and is "readily met" in securities class actions. *Amchem Prod., Inc. v. Winds*or, 521 U.S. 591, 623 and 625 (1997). Here, no question exists that issues surrounding Defendants' alleged misconduct, such as whether their statements were false or

misleading, whether they acted with requisite scienter, and whether their conduct caused damages to Plaintiff and the Settlement Class, are common to each member of the Settlement Class. The common questions need not be dispositive, however. Indeed, "[t]he very definition of the requirement of the predominance of common questions contemplates that individual issues will usually remain after the common issues are adjudicated." 1 Newberg on Class Actions § 4.25 at 4-82 to 4-83 (3d ed. 1992).  As discussed above, the predominance of common questions over individual claims is apparent from the fact that if Plaintiff and every other Class member were each to bring an individual action, they would each still be required to prove Defendants' liability and would need to prove the same allegations. "Courts generally focus on the liability issue in deciding whether the predominance requirement is met, and if the liability issue is common to the class, common questions are held to predominate over individual questions." *In re Alexander Grant & Co. Litig.*, 110 F.R.D. 528, 534 (S.D. Fla. 1986). Undoubtedly, common questions of fact and law predominate here because Defendants' alleged conduct affected all class members in the same manner – by making materially false and misleading statements to the public about Lomocel-B. Once common questions of liability are resolved, all that remains is the mechanical act of computing the amount of damages suffered by each Class member. *See Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975) ("The amount of damages is invariably an individual question and does not defeat class action treatment."). Thus, common questions predominate.

### 2.    Superiority

For a settlement class, superiority is more easily established. *Amchem,* 521 U.S. at 620 ("Confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

Other superiority factors support certification. As the Supreme Court has recognized, "the policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights." *Amchem*, 521 U.S. at 617. Many of the Settlement Class Members are individuals for whom prosecution of a costly individual action for relatively minor damages is not a realistic or efficient alternative. No Settlement Class Members have brought separate claims, which would likely be consolidated into this Action anyway. A class action avoids the duplication of efforts and inconsistent rulings. *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *7

(N.D. Cal. Oct. 27, 2015) (if shareholders "each brought individual actions, they would each be required to prove the same wrongdoing to establish Defendants' liability. Different courts could interpret the claims different, resulting in inconsistent rulings or unfair results."). By avoiding repetitious litigation and efficiently resolving the claims of the entire Settlement Class at once, this Action satisfies the superiority requirement. The Court should preliminarily certify the Settlement Class as this Action satisfies each of the Rule 23(a) and (b)(3) requirements.

## V.     THE COURT SHOULD APPROVE THE PROPOSED FORMS OF NOTICE AND PLAN FOR PROVIDING NOTICE

To satisfy due process, notice to class members must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). "'The notice must be of such nature as reasonably to convey the required information [...] and it must afford a reasonable time for those interested to make their appearance.'" *Soberal-Perez v. Heckler*, 717 F.2d 36, 43 (2d Cir. 1983) (quoting *Mullane*, 339 U.S. at 314).

Plaintiff requests that the Court approve the form and content of the proposed Notice and Summary Notice. (*See* Ex. A-1 and A-3 to the Settlement Stipulation). Consistent with Rules 23(c)(2)(B) and 23(e)(1), the proposed Notice will be mailed to all identifiable Class Members and provide them with detailed information concerning: (a) the rights of Class Members, including the manner in which to object; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) the process for filing a proof of claim; (e) a description of the Plan of Allocation; (f) the fees and expenses sought by Class Counsel and Plaintiff; and (g) the necessary information for any Class Member to examine the Court records should they desire to do so. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in street name. The Notice closely follows a template provided by the Federal Judicial Center. *Compare* Ex. A-1 *with* Federal Judicial Center Model Securities class action certificate and settlement: full notice.[5]

The Notice also satisfies the PSLRA's separate disclosure requirements by (a) stating the amount of the Settlement on both an aggregate and average per share basis, (b) providing a brief statement explaining the reasons why the parties are proposing the Settlement, (c) stating the amount of attorney's fees, expenses, and compensation for the time and expenses of Class

---

[5] https://www.fjc.gov/sites/default/files/2016/ClaAct13.pdf

Representative (both on an aggregate and average per share basis) that Class Counsel are seeking, and (d) providing the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel who will be available to answer questions from Settlement Class Members. *See* 15 U.S.C. § 78u-4(a)(7). Both forms of Notice will also disclose the date, time and location of the Fairness Hearing and the deadlines for seeking exclusion and submitting Claim forms and any objections to the Settlement, the Plan of Allocation, or to Lead Counsel's requested attorney's fees and expenses. These disclosures are thorough and should be approved.

Rule 23(c)(2)(B) requires a certified class to receive "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Similarly, Rule 23(e)(1) requires a court to "direct notice in a reasonable manner to all class members who would be bound by" a proposed settlement, voluntary dismissal, or compromise. In securities class actions, it is customary to provide notice by (a) publishing a summary notice in a major publication, (b) mailing long-form notice to all individual shareholders who can be found, and (d) publishing notice on a website. *See, e.g., In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145 (S.D.N.Y. 2010). The proposed notice plan in this case follows this customary rule in securities class action. Thus, it readily meets standards imposed by Rule 23 and the PSLRA.

**VI.    CONCLUSION**

Plaintiff respectfully requests that the Court enter the proposed Order, find preliminarily that the Settlement is reasonable and fair, and find that notification to the Class Members of the terms of the Settlement and of their rights in connection with the Settlement is warranted.

Dated: April 28, 2023                    Respectfully submitted,

                                         **THE ROSEN LAW FIRM, P.A.**

                                         By: /s/ Laurence M. Rosen
                                         Laurence M. Rosen
                                         Jonathan Stern (*Pro hac vice*)
                                         275 Madison Avenue, 40th Floor
                                         New York, New York 10016
                                         Phone: 212-686-1060
                                         Fax: 212-202-3827
                                         Email:
                                         lrosen@rosenlegal.com
                                         jstern@rosenlegal.com

                                         *Lead Counsel for Lead Plaintiff*
                                         *and the Class*

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this the 28th of April, 2023, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.


<u>/s/ Laurence M. Rosen</u>