**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-23303- ALTMAN/Brannon**

**Honorable Roy K. Altman, United States District Judge for the Southern District of Florida**

JERALD VARGAS MALESPIN, individually
and on behalf of all others similarly situated,

       Plaintiff,

vs.

LONGEVERON INC., GEOFF GREEN,
JAMES CLAVIJO, JOSHUA M. HARE,
DONALD M. SOFFER, NEIL E. HARE,
ROCK SOFFER, EF HUTTON F/K/A
KINGSWOOD CAPITAL MARKETS, and
ALEXANDER CAPITAL L.P.,

       Defendants.

_____ /

**MOTION FOR FINAL APPROVAL OF CLASS ACTION**
**<u>SETTLEMENT; MEMORANDUM OF LAW IN SUPPORT</u>**

**TABLE OF CONTENTS**

I.   MOTION ........................................................................................................................ 1

II.  MEMORANDUM OF LAW ......................................................................................... 1

    A. PRELIMINARY STATEMENT .................................................................................. 1

    B. BACKGROUND ......................................................................................................... 2

        1.  Allegations ............................................................................................................ 2

        2.  Procedural history ................................................................................................ 3

    C. THE COURT SHOULD FINALLY CERTIFY THE CLASS ..................................... 3

    D. THE SETTLEMENT SHOULD BE FINALLY APPROVED ...................................... 4

        1.  Standards .............................................................................................................. 4

        2.  The Settlement is Fair, Adequate, and Reasonable Under the Rule 23(e)(2)

            Factors ................................................................................................................. 5

            a.  The Settlement Is Procedurally Fair .................................................................. 5

                i.   Plaintiff and Lead Counsel Adequately Represented the Settlement Class .... 5

                ii.  The Settlement is a Product of Arm's Length Negotiations ........................... 7

            b.  The Settlement is Substantively Fair: the Relief Provided is Adequate,

                Taking into Account the Costs, Risks, and Delay of Continued Litigation ......... 8

                i.   The Complexity, Expense, and Likely Duration of Continued Litigation .... 10

                ii.  The Risks of Trial and Appeal and Likelihood of Success at Trial .............. 11

                iii. Considering the Range of Possible Recovery, the Settlement is Clearly

Within the Range of Reasonableness ............................................................ 14

c. The Remaining Rule 23(e)(2)(C) Factors Support Approval ............................. 15

    i.   The Methods of Distributing Relief and Processing Claims ........................ 15

    ii.  Proposed Attorneys' Fees ............................................................... 15

    iii. Other Agreements ........................................................................ 15

d. The Proposed Settlement Does Not Unjustly Favor Any Settlement

    Class Member, Including Plaintiff ........................................................ 16

e. The Reaction of the Class ...................................................................... 17

f. The Stage of Proceedings ...................................................................... 17

3. The Recommendation of Experienced Counsel Favors Approval of the

    Settlement ....................................................................................... 18

E. THE PLAN OF ALLOCATION SHOULD BE APPROVED ...................................... 19

F. THE PROPOSED AWARD OF ATTORNEYS' FEES IS APPROPRIATE ................. 19

G. CONCLUSION ...................................................................................... 20

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Access Now, Inc. v. Claire's Stores, Inc.*,
  No. 0014017-CIV, 2002 WL 11624227 (S.D. Fla. May 7, 2002) ................................................ 17

*Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*,
  211 F.R.D. 457 (S.D. Fla. 2002) ...................................................................................................... 4

*Badger v. S. Farm Bureau Life Ins. Co.*,
  612 F.3d 1334 (11th Cir. 2010) (reversing ................................................................................. 13

*Basic Inc. v. Levinson*,
  485 U.S. 224 (1988) ........................................................................................................................ 12

*Beavers v. Am. Cast Iron Pipe Co.*,
  164 F. Supp. 2d 1290 (N.D. Ala. 2001) ........................................................................................ 11

*Behrens v. Wometco Enterprises, Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988) ............................................................................................ passim

*Bennett v. Behring Corp.*,
  96 F.R.D. 343 (S.D. Fla. 1982) ........................................................................................................ 4

*Bennett v. Behring Corp.*,
  737 F.2d 982 (11th Cir. 1984) ......................................................................................... 4, 5, 10, 11

*Braynen v. Nationstar Mortg., LLC*,
  No. 14-CV-20726, 2015 WL 6872519 (S.D. Fla. Nov. 9, 2015) ................................................. 7

*Burrows v. Purchasing Power, LLC*,
  No. 1: 12-CV-22800, 2013 WL 10167232 (S.D. Fla. Oct. 7, 2013) ............................................ 6

*Canupp v. Liberty Behav. Health Corp.*,
  417 F. App'x 843 (11th Cir. 2011) .................................................................................................. 8

*Canupp v. Sheldon*,
  No. 204-CV-260-FTM-99DNF, 2009 WL 4042928 (M.D. Fla. Nov. 23, 2009) ........................ 5

*Chatelain v. Prudential-Bache Sec., Inc.*,
  805 F. Supp. 209 (S.D.N.Y. 1992) ................................................................................................ 10

*Cheney v. Cyberguard Corp.*,
  213 F.R.D. 484 (S.D. Fla. 2003) .................................................................................................... 12

*Christine Asia Co. v. Yun Ma*,
　No. 115MD02631CMSDA, 2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ........................ 7, 16

*Cifuentes v. Regions Bank*,
　No. 11 CV 23455 FAM, 2014 WL 1153772 (S.D. Fla. Mar. 20, 2014) .................................. 5

*Cotton v. Hinton*,
　559 F.2d 1326 (5th Cir. 1977) .................................................................................................. 5

*Dura Pharms., Inc. v. Broudo*,
　544 U.S. 336 (2005) ............................................................................................................... 11

*Eminence Cap., LLC v. Aspeon, Inc.*,
　316 F.3d 1048 (9th Cir. 2003) ............................................................................................... 12

*Figueroa v. Sharper Image Corp.*,
　517 F. Supp. 2d 1292 (S.D. Fla. 2007) .................................................................................. 11

*Francisco v. Numismatic Guar. Corp. of Am.*,
　No. 06-61677-CIV, 2008 WL 649124 (S.D. Fla. Jan. 31, 2008) ............................................. 9

*George v. Acad. Mortg. Corp. (UT)*,
　369 F. Supp. 3d 1356 (N.D. Ga. 2019) .................................................................................. 15

*Glass v. UBS Fin. Servs., Inc.*,
　No. C-06-4068 MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007).......................................18

*Health Ins. Innovations Sec. Litig.*,
　No. 8:17-CV-2186-TPB-SPF, 2021 WL 1341881 (M.D. Fla. Mar. 23, 2021) ................... 10, 15

*Hefler v. Wells Fargo & Co.*,
　No. 16-CV-05479-JST, 2018 WL 4207245 (N.D. Cal. Sept. 4, 2018) .................................... 16

*In re Checking Acct. Overdraft Litig.*,
　275 F.R.D. 654 (S.D. Fla. 2011)............................................................................................... 9

*In re Checking Acct. Overdraft Litig.*,
　830 F. Supp. 2d 1330 (S.D. Fla. 2011) ................................................................... 8, 10, 14, 17

*In re Chicken Antitrust Litig. Am. Poultry*,
　669 F.2d 228 (5th Cir. 1982) .................................................................................................. 19

*In re Elan Sec. Litig.*,
　385 F. Supp. 2d 363 (S.D.N.Y. 2005) ...................................................................................... 9

*In re Giant Interactive Grp., Inc. Sec. Litig.*,
　279 F.R.D. 151 (S.D.N.Y. 2011)............................................................................................. 10

*In re Glob. Crossing Sec. & ERISA Litig.*,
  225 F.R.D. 436 (S.D.N.Y. 2004) ............................................................... 12, 16

*In re Hi-Crush Partners L.P. Sec. Litig.*,
  No. 12-CIV-8557 CM, 2014 WL 7323417 (S.D.N.Y. Dec. 19, 2014) ...................................... 10

*In re Immune Response Sec. Litig.*,
  497 F. Supp. 2d 1166 (S.D. Cal. 2007) ........................................................ 18

*In re Mego Fin. Corp. Sec. Litig.*,
  213 F.3d 454 (9th Cir. 2000) ................................................................ 16, 17

*In re Omnivision Techs., Inc.*,
  559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................ 12

*In re Oracle Sec. Litig.*,
  No. C-90-0931-VRW, 1994 WL 502054 (N.D. Cal. June 18, 1994) ........................................ 19

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*,
  330 F.R.D. 11 (E.D.N.Y. 2019) ................................................................ 5

*In re Smith*,
  926 F.2d 1027 (11th Cir. 1991) .............................................................. 5

*In re Sunbeam Sec. Litig.*,
  176 F. Supp. 2d 1323 (S.D. Fla. 2001) ...................................................... 11, 18

*In re U.S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) .............................................................. 4, 5

*In re Zynga Inc. Sec. Litig.*,
  No. 12-CV-04007-JSC, 2015 WL 6471171 (N.D. Cal. Oct. 27, 2015) ...................................... 18

*Johnson v. NPAS Sols., LLC*,
  975 F.3d 1244 (11th Cir. 2020) .............................................................. 10

*Knox v. Yingli Green Energy Holding Co. Ltd.*,
  136 F. Supp. 3d 1159 (C.D. Cal. 2015) ...................................................... 7

*Linney v. Cellular Alaska P'ship*,
  151 F.3d 1234 (9th Cir. 1998) .............................................................. 18

*Lipuma v. Am. Express Co.*,
  406 F. Supp. 2d 1298 (S.D. Fla. 2005) ...................................................... 14, 17

*Mild v. PPG Indus., Inc.*,
  No. 218CV04231RGKJEM, 2019 WL 3345714 (C.D. Cal. July 25, 2019) ...................................... 6

v

*Miller v. Dyadic Int'l, Inc.*,
   No. 07-80948-CIV, 2010 WL 11591815 (S.D. Fla. July 28, 2010) ........................................... 15

*Millstein v. Holtz*,
   No. 21-CV-61179-RAR, 2022 WL 18024840 (S.D. Fla. Dec. 30, 2022) ............................. 9, 17

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004).................................................................................................... 8

*Pace v. Quintanilla*,
   No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014)................................. 7

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985) ........................................................................................................................ 3

*Plagens v. Deckard*,
   No. 1:20-CV-2744, 2023 WL 2711263 (N.D. Ohio Mar. 30, 2023)........................................ 11

*Ressler v. Jacobson*,
   822 F. Supp. 1551 (M.D. Fla. 1992).................................................................................... 10, 17

*Rieckborn v. Velti PLC*,
   No. 13-CV-03889-WHO, 2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ................................... 18

*Robbins v. Kroger Props. Inc.*,
   116 F.3d 1441 (11th Cir.) ............................................................................................................ 13

*Saccoccio v. JP Morgan Chase Bank, N.A.*,
   297 F.R.D. 683 (S.D. Fla. 2014).................................................................................................. 11

*Strube v. Am. Equity Inv. Life Ins. Co.*,
   226 F.R.D. 688 (M.D. Fla. 2005) ......................................................................................... 10, 18

*Thorpe v. Walter Inv. Mgmt. Corp.*,
   No. 1:14-CV-20880-UU, 2016 WL 10518902 (S.D. Fla. Oct. 17, 2016) ....................... 6, 7, 11

*Vinh Nguyen v. Radient Pharms. Corp.*,
   No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014)................................ 16

*Warren v. City of Tampa*,
   693 F. Supp. 1051 (M.D. Fla. 1988)............................................................................................. 7

*Williams v. New Penn Fin., LLC*,
   No. 3:17-CV-570-J-25JRK, 2019 WL 2526717 (M.D. Fla. May 8, 2019)........................... 8, 18

*Yedlowski v. Roka Bioscience, Inc.*,
   No. 14-CV-8020-FLW-TJB, 2016 WL 6661336 (D.N.J. Nov. 10, 2016) ................................. 6

*Zuckerman v. Smart Choice Auto Group, Inc.*,
     No. 6:99-CV-237-ORL28KRS, 2001 WL 686879 (M.D. Fla. May 3, 2001) ............................ 13

**Statutes**

15 U.S.C § 78u–4(a)(4) ........................................................................................................... 10, 19

**Rules**

Fed. R. Civ. P. 23 ........................................................................................................................ 4

Fed. R. Civ. P. 23(c)(1) ............................................................................................................. 12

Fed. R. Civ. P. 23(e) ............................................................................................................. 1, 4, 5

Fed. R. Civ. P. 23(e)(2) .......................................................................................................... 4, 5

Fed. R. Civ. P. 23(e)(2)(A) ......................................................................................................... 5

Fed. R. Civ. P. 23(e)(2)(B) ..................................................................................................... 5, 7

Fed. R. Civ. P. 23(e)(2)(C) ...................................................................................................... 8, 11

Fed. R. Civ. P. 23(e)(2)(C)(i) .................................................................................................... 10

Fed. R. Civ. P. 23(e)(2)(C)(iii) .................................................................................................. 19

Fed. R. Civ. P. 23(e)(2)(D) ........................................................................................................ 16

Fed. R. Civ. P. 23(e)(3); and (D) ................................................................................................ 5

**Other Authorities**

Manual for Complex Litigation (Third) § 30.44 (1995) ............................................................ 8

Newberg on Class Actions, § 11.51 ........................................................................................... 7

## I.        MOTION

Lead Plaintiff John Bosico ("Plaintiff"), upon the accompanying Memorandum of Law and the Declaration of Jonathan Stern in Support of Final Approval of Class Action Settlement ("Stern Dec.") and the exhibits attached thereto, filed herewith, hereby moves the Court pursuant to Fed. R. Civ. P. 23(e) for final approval of the Settlement of this action for one million three hundred ninety-seven thousand five hundred dollars ($1,397,500) (the "Settlement Amount")[1] and the Plan of Allocation (the "Plan"). The Settlement Amount and the Plan are fair, reasonable, and adequate and should be approved by the Court.

The Proposed Order and Judgment is submitted herewith as the deadline for Settlement Class Members to exclude themselves from the Settlement has passed.  .

## II.       MEMORANDUM OF LAW

### A.        PRELIMINARY STATEMENT

The Settlement is a highly favorable result for Settlement Class Members in this stage of the litigation.  The Settlement was reached after Plaintiff, among other things: (a) conducted an extensive investigation of the facts and law of claims against Defendants Longeveron Inc. ("Longeveron" or the "Company"), Geoff Green ("Green"), James Clavijo ("Clavijo"), Joshua M. Hare ("J. Hare"), Donald M. Soffer ("D. Soffer"), Neil E. Hare ("N. Hare"), and Rock Soffer ("R. Soffer") (Green, Clavijo, J. Hare, D. Soffer, N. Hare, and R. Soffer are collectively referred to as the "Individual Defendants"), EF Hutton f/k/a Kingswood Capital Markets, and Alexander Capital L.P. (the "Underwriter Defendants" and together with the Individual Defendants and Longeveron, the "Defendants"); (b) drafted and filed the Amended Complaint; and (c) negotiated the specific terms of the Settlement. *See* Stern Dec. ¶8.

The Settlement represents 31.7% of Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") damages and 11.5% of Section 11 of the Securities Act of 1933 ("Securities Act") damages in the best-case scenario, *i.e.*, assuming that Plaintiff prevails on all claims at trial and appeals, and that the cumulative decline of Longeveron's stock price following all of the alleged corrective disclosures is attributed to Defendants' alleged fraud. *See* Stern Dec. ¶4. This percentage of recovery is higher than many similar securities class action settlements.

---

[1] Unless otherwise indicated, all capitalized terms have the same meaning as in the Stipulation and Agreement of Settlement ("Stipulation") (Dkt. No. 48).

Pursuant to the Court's Preliminary Approval Order of May 12, 2023 (Dkt. No. 53), over 23,399 potential Settlement Class Members and nominees were notified of the pendency of settlement either by mailing of the Notice and Proof of Claim and Release Form ("Claim Form") or by email of a link to the Notice and Claim Form. *See* Declaration of Margery Craig Concerning: (A) CAFA Notice Mailing; (B) Mailing of The Notice and Proof of Claim and Release Form; (C) Publication of the Summary Notice; and (D) Report on Request for Exclusion and Objections attached as Exhibit 1 to the Stern Declaration ("Craig Dec."). ¶8. To date, no class members have objected to the settlement, and no class member has opted out. *Id.*, at ¶¶13-14. The deadline to seek exclusion was August 25, 2023 and to object is September 26, 2023. *Id.*

The Settlement results from arm's-length negotiations among the Settling Parties. For these reasons and those set forth below, Plaintiff respectfully submits that the Court should approve the Settlement because it is fair, reasonable and adequate.

### B.   BACKGROUND

#### 1.   Allegations

Longeveron is a clinical stage biotechnology company that develops cellular therapies for aging-related and life-threatening conditions.

Plaintiff alleges that, during the Class Period, Defendants falsely represented to investors the efficacy of Longeveron's development-stage drug Lomocel-B in treating aging frailty. Defendants touted the tremendous potential of Lomocel-B in its initial public offering ("IPO") documents. However, Plaintiff alleges that Defendants knew from its Bahamas Registry Trial that the results were middling and that Lomocel-B was unlikely to meet Longeveron's self-adopted standard for efficacy in treating aging frailty, and Defendants' bullish statements were misleading for failing to disclose this. Defendants maintain that they did not make any material misstatements or omissions.

The action alleges that Settlement Class Members suffered significant damages when the truth was revealed to the market. Specifically, on August 13, 2021, Longeveron issued two press releases—one announcing topline results of the Phase 2b Aging Frailty Trial, and a second providing a corporate update and reporting the Company's financial results for the second quarter of 2021. Both press releases disclosed, among other results, that "the four Lomecel-B cohorts did not show a statistically significant placebo-adjusted difference" and that "in the patient reported outcome questionnaire PROMIS—Physical Function—Short Form 20a (SF-20a) total score [. . .]

Lomecel-B cohorts did not show a statistically significant difference compared to the placebo cohort[.]" On this news, Longeveron's stock price fell $1.51 per share, or 27.91%, to close at $3.90 per share on August 13, 2021, representing a total decline of 61% from the IPO price.

### 2. Procedural history

On September 13, 2021, named plaintiff Jerald Vargas Malespin ("Malespin") filed the initial complaint alleging violations of federal securities laws against defendants Longeveron Inc. and the Individual Defendants. (Dkt. No. 1).

On November 12, 2021, Bosico moved to be appointed lead plaintiff and to have the Court appoint The Rosen Law Firm, P.A. ("Rosen Law") as Lead Counsel, (Dkt. No. 8), which was approved on February 4, 2022. (Dkt. No. 22).

On April 26, 2022, Plaintiff filed his Amended Complaint (the "AC") against Defendants on behalf of investors who purchased Longeveron securities: (a) pursuant and/or traceable to the Company's initial public offering conducted on or about February 12, 2021; and (b) between February 12, 2021 and August 12, 2021 (the "Class Period"), seeking damages caused by: (i) Defendants' alleged violations of Section 11 of the Securities Act; (ii) Individual Defendants' alleged violations of Section 15 of the Securities Act; (iii) Defendants Longeveron, Green, Clavijo, and J. Hare's alleged violations of Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder; and (iv) Defendants Green, Clavijo, and J. Hare's alleged violations of Section 20(a) of the Exchange Act. (Dkt. No. 27). Specifically, the AC alleged that defendants Longeveron, Green, Clavijo, J. Hare, D. Soffer, N. Hare, and R. Soffer made or caused to be made false and misleading statements by failing to disclose the existence of facts that undermined the overly optimistic statements regarding Lomecel-B made at the time of the IPO and during the Class Period and that the Underwriter Defendants breached their duty to make a reasonable and diligent investigation of the statements and ensure their correctness.

### C. THE COURT SHOULD FINALLY CERTIFY THE CLASS

A necessary part of the settlement process for class actions is the certification of a settlement class before or at the time the settlement is approved by the court. It is widely recognized that a class action is a particularly appropriate mechanism for individual shareholders to obtain recovery in cases of alleged federal securities laws violations. *See, e.g., Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) (class actions allow "[P]laintiffs to pool claims which would be uneconomical to litigate individually ..., [M]ost of the [P]laintiffs would have no realistic day in

court if a class action were not available"). The Court preliminarily approved a Settlement Class on behalf of investors who purchased Longeveron securities: (1) pursuant and/or traceable to the February 12, 2021 IPO; and/or (2) from February 12, 2021 through August 12, 2021 (collectively, the "Settlement Class Period"), and excluding: (i) Opt-Outs (*i.e.*, Persons who file valid and timely requests for exclusion from the Settlement Class in accordance with this Order); (ii) Persons with no compensable losses; and (iii) Defendants, the present and former officers and directors of Longeveron, EF Hutton, or Alexander Capital, and any subsidiary thereof, during the Class Period, and the immediate family members, legal representatives, heirs, successors or assigns of such excluded persons and any entity in which any excluded Person has or had a controlling interest during the Settlement Class Period. See Dkt. No. 53 at ¶2. Nothing has occurred since then to cast doubt on whether the applicable prerequisites of Rule 23 are met, and the Court should now finally certify the Settlement Class.

### D. THE SETTLEMENT SHOULD BE FINALLY APPROVED

#### 1. Standards

There is a "strong judicial policy favoring settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). "[Settlements of class actions] are 'highly favored in the law and will be upheld whenever possible.'" *Bennett v. Behring Corp.*, 96 F.R.D. 343, 348 (S.D. Fla. 1982), *aff'd*, 737 F.2d 982 (11th Cir. 1984); *accord In re U.S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992); *Ass'n For Disabled Americans, Inc. v. Amoco Oil Co.*, 211 F.R.D. 457, 466 (S.D. Fla. 2002). As the court in *U.S. Oil & Gas* noted:

> Complex litigation - like the instant [class action] case - can occupy a court's docket for years on end, depleting the resources of the parties and the taxpayers while rendering meaningful relief increasingly elusive. Accordingly, the Federal Rules of Civil Procedure authorize district courts to facilitate settlements . . . .

967 F.2d at 493.

In approving a settlement under Federal Rule of Civil Procedure 23(e), the district court must find that it "is fair, adequate and reasonable and is not the product of collusion between the parties." *Bennett*, 737 F.2d at 986 (internal quotations omitted).

Federal Rule of Civil Procedure 23(e)(2) provides that, to determine if a settlement is fair, reasonable, and adequate, the Court must consider whether:

> (A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for

4

the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other.

Approval of a class action settlement "is committed to the sound discretion of the district court." *U.S. Oil & Gas*, 967 F.2d at 493; *Bennett*, 737 F.2d at 987.

Prior to the adoption of the current version of Rule 23(e), the Eleventh Circuit held that in determining whether a proposed settlement is "fair, adequate and reasonable," a court should look to the following factors, which overlap with the 23(e) requirements:

(1) the likelihood of success at trial; (2) the range of possible recovery, (3) the point on or below the range of possible recovery at which a settlement is fair, adequate and reasonable; (4) the complexity, expense and duration of litigation; (5) the substance and amount of opposition to the settlement; and (6) the stage of proceedings at which the settlement was achieved.

*Bennett*, 737 F.2d at 986; *accord Cifuentes v. Regions Bank*, No. 11 CV 23455 FAM, 2014 WL 1153772, at *4 (S.D. Fla. Mar. 20, 2014).

Finally, in evaluating a settlement, a court "is entitled to rely upon the judgment of experienced counsel for the parties." *Canupp v. Sheldon*, No. 204-CV-260-FTM-99DNF, 2009 WL 4042928, at *5 (M.D. Fla. Nov. 23, 2009) (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977)); Indeed, "[a] trial judge ought not try the case during a settlement hearing and should be hesitant to substitute his or her own judgment for that of counsel." *In re Smith*, 926 F.2d 1027, 1028 (11th Cir. 1991).

### 2.  The Settlement is Fair, Adequate, and Reasonable Under the Rule 23(e)(2) Factors

#### a.  The Settlement Is Procedurally Fair

Rule 23(e)(2)(A), requiring adequate representation, and Rule 23(e)(2)(B), requiring arm's-length negotiations, "constitute the 'procedural' analysis" of the fairness inquiry. *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019).  Each aspect of procedural fairness is satisfied here.

##### i.  Plaintiff and Lead Counsel Adequately Represented the Settlement Class

Courts must consider whether the "class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). The "adequacy requirement has two

components; (1) the class representatives have interests in common; and (2) class counsel are qualified, experienced, and generally able to conduct the litigation." *Burrows v. Purchasing Power, LLC*, No. 1: 12-CV-22800, 2013 WL 10167232, at *3 (S.D. Fla. Oct. 7, 2013).

Plaintiff and Lead Counsel have adequately represented the Settlement Class throughout this Action. Plaintiff has no antagonistic interests to other class members, his claims are typical of Settlement Class Members' claims, and Plaintiff shares an interest with the other Settlement Class Members in obtaining the largest possible recovery for the Settlement Class. *Mild v. PPG Indus., Inc.*, No. 218CV04231RGKJEM, 2019 WL 3345714, at *3 (C.D. Cal. July 25, 2019) ("Because Plaintiff's claims are typical of and coextensive with the claims of the Settlement Class, his interest in obtaining the largest possible recovery is aligned with the interests of the rest of the Settlement Class members."). Further, Plaintiff has worked closely with Lead Counsel throughout the pendency of this Action to achieve the best possible result for himself and the Settlement Class. Based on their expertise, experience, and substantial work done in this case, Lead Counsel, with a thorough understanding of the strengths and weaknesses of the action, respectfully recommend that final approval of the Settlement is in the best interests of the Class.

Lead Counsel has been involved in this action since November 2021. Prior to filing the AC, Lead Counsel conducted a thorough investigation including retaining an investigator to interview former Longeveron employees and retaining a damages expert to evaluate the case. Lead Counsel also engaged in lengthy settlement discussions and documented the settlement, moved for preliminary approval, and filed the instant motion for final approval. As set forth in the Stern Declaration and Rosen Law's firm resume, attached thereto, Lead Counsel are experienced securities class action attorneys who are knowledgeable and capable of evaluating cases to determine when a settlement would be beneficial to the class, and when to continue litigating. Stern Dec. ¶8, Ex. 2. This Court, and others around the country, have consistently found Rosen Law to be well-suited as class counsel in securities class actions. *See e.g., Thorpe v. Walter Inv. Mgmt. Corp.*, No. 1:14-CV-20880-UU, 2016 WL 10518902, at *9 (S.D. Fla. Oct. 17, 2016) (noting that co-lead counsel, including the Rosen Law Firm "has developed a reputation for zealous advocacy in securities class actions."); *Yedlowski v. Roka Bioscience, Inc.*, No. 14-CV-8020-FLW-TJB, 2016 WL 6661336, at *21 (D.N.J. Nov. 10, 2016) ("[Rosen Law Firm] is highly experienced in the complex field of securities fraud class action litigation"). Lead Counsel has adequately represented the Settlement Class.

ii.     **The Settlement is a Product of Arm's Length Negotiations**

Rule 23(e)(2)(B) addresses whether "the [settlement] proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B). In order to achieve the Settlement, the parties engaged in extensive settlement negotiations. The negotiations between Lead Counsel and Defendants' counsel that produced the Settlement were serious and informed. Lead Counsel conducted a thorough review of Longeveron's securities filings and publicly available information concerning the Company, leading Plaintiff to file a detailed AC that set out a straightforward theory of securities fraud. The parties then engaged in vigorous negotiations and eventually reached a mutually agreeable settlement.

"[C]ourts respect the integrity of counsel and presume the absence of fraud or collusion in negotiating the settlement, unless evidence to the contrary is offered." Newberg on Class Actions, § 11.51 at 11.88 (4th ed. 1992). There is no hint of collusion in this settlement, which was achieved only after hard-fought litigation, which included factual investigations and the filing of an amended complaint.

In addition to the non-collusive, vigorous settlement negotiations, counsel on both sides of this Action are experienced and knowledgeable when it comes to litigating complex, securities class actions. *Warren v. City of Tampa*, 693 F. Supp. 1051, 1060 (M.D. Fla. 1988), *aff'd*, 893 F.2d 347 (11th Cir. 1989) (in approving settlement of class action, "[t]he Court is affording great weight to the recommendations of counsel for the parties, given their considerable experience in this type of litigation"); *Braynen v. Nationstar Mortg., LLC*, No. 14-CV-20726, 2015 WL 6872519, at *10 (S.D. Fla. Nov. 9, 2015) ("Where the parties have negotiated at arm's length, the Court should find that the settlement is not the product of collusion.") (internal quotation omitted).

Rosen Law's experience and reputation allowed it to leverage the credible threat of further litigation and trial, but also to recognize that the Settlement was a better option for the Settlement Class. Numerous federal courts have recognized that Rosen Law "has developed a reputation for zealous advocacy in securities class actions." *Walter Investment*, 2016 WL 10518902, at *9; *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014); *Knox v. Yingli Green Energy Holding Co. Ltd.*, 136 F. Supp. 3d 1159, 1165 (C.D. Cal. 2015) ("The Rosen Law Firm is 'highly qualified [and] experienced' in securities class actions"); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *19 (S.D.N.Y. Oct. 16, 2019), *appeal withdrawn sub nom. Tan Chao v. William*, No. 19-3823, 2020 WL 763277 (2d Cir.

Jan. 2, 2020) (finding in approving the largest ever settlement in a case brought by investors in a Chinese company that "the quality of representation by both [Rosen] and Defendants' counsel was high in this case."). Thus, Lead Counsel's experience supports approval. Likewise, Defendants' counsel, Boies Schiller Flexner LLP, is a preeminent firm with skilled securities litigation practitioners, who vigorously represented their clients and was equally knowledgeable about the merits of the case.

Finally, Plaintiff's support for the Settlement is further evidence that the Settlement is fair, reasonable and adequate. *See* Dkt. No. 55-3 at ¶1. ("Bosico Decl."). Plaintiff's advocacy for a settlement should be accorded "special weight because [the plaintiff] may have a better understanding of the case than most members of the class." *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quoting Manual for Complex Litigation (Third) § 30.44 (1995)). Lead Counsel represents that the negotiations were at arm's-length at all times. Stern Decl. ¶8. Thus, there was no fraud or collusion, and negotiations were at arm's length; the Court should approve the settlement. *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1345 (S.D. Fla. 2011). The protracted arms' length negotiations and the support of both experienced counsel and Plaintiff favors final approval of the Settlement.

### b. The Settlement is Substantively Fair: the Relief Provided is Adequate, Taking into Account the Costs, Risks, and Delay of Continued Litigation

Rule 23(e)(2)(C) instructs the Court to consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors. Fed. R. Civ. P. 23(e)(2)(C). "These factors are analogous to several of the *Bennett* factors, which require courts to consider the likelihood of success and range of possible recovery for the class at trial, measured against the trial's anticipated complexity, cost, and duration." *Williams v. New Penn Fin., LLC*, No. 3:17-CV-570-J-25JRK, 2019 WL 2526717, at *4 (M.D. Fla. May 8, 2019).

In assessing the adequacy of the settlement, courts place considerable weight on the opinion of experienced and informed counsel. *See Canupp v. Liberty Behav. Health Corp.*, 417 F. App'x 843, 845 (11th Cir. 2011) ("Indeed, absent fraud, collusion, or the like, a district court should be hesitant to substitute its own judgment for that of counsel"); *see also Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 539 (S.D. Fla. 1988), *aff'd sub nom. Behrens v. Wometco Enterprises*, 899 F.2d 21 (11th Cir. 1990) ("The court can rely upon the judgment of experienced

8

counsel and, absent fraud, should be hesitant to substitute its own judgment for that of counsel.")
(internal quotation omitted); *Francisco v. Numismatic Guar. Corp. of Am.*, No. 06-61677-CIV,
2008 WL 649124, at *12 (S.D. Fla. Jan. 31, 2008) ("[c]ounsel's conclusions that the [s]ettlement
is fair, adequate and reasonable provides strong evidence that the settlement merits the Court's
approval. Here, the Court gives 'great weight to the recommendations of counsel for the parties,
given their considerable experience in this type of litigation.'"). Thus, there is "a presumption of
fairness" to settlements negotiated at arm's length by informed and experienced counsel. *See In re
Checking Acct. Overdraft Litig.*, 275 F.R.D. 654, 661–62 (S.D. Fla. 2011).

Lead Counsel has ample experience prosecuting securities class actions. Stern Dec. Ex. 2.
Further, Lead Counsel is well informed about the strengths and weaknesses of the claims against
the Defendants. The Settlement was reached only after a thorough investigation of the facts and
merits of the legal claims and defenses, which included: the investigation and drafting of the AC,
consultation with an expert regarding damages issues, and extensive legal research regarding and
investigation into the probable defenses. Thus, Lead Counsel and Lead Plaintiff were well aware
of the claims, defenses and litigation risks by the time the Settlement was reached. *See Millstein
v. Holtz*, No. 21-CV-61179-RAR, 2022 WL 18024840, at *4 (S.D. Fla. Dec. 30, 2022) (holding
that class counsel who, *inter alia*, "conducted a thorough investigation and analysis of the [c]lass's
claims" was "well-positioned to evaluate the strengths and weaknesses of the Class's claims, as
well as the appropriate basis upon which to settle them"); *see also*, *In re Elan Sec. Litig.*, 385 F.
Supp. 2d 363, 370 (S.D.N.Y. 2005) (class counsel had sufficient information to make an informed
judgment based on interviews of former employees, review of documents relating to SEC
investigation and consultation with accounting and damages experts).

Further, the Settlement has no obvious deficiencies. Along with an all-cash recovery, all
members of the proposed Settlement Class, including Plaintiff, will be treated fairly and in a
similar manner—each recovering their *pro rata* share of the Net Settlement Fund. The one
exception is that Plaintiff is applying for reimbursement of reasonable costs expenses (including
lost wages), arising directly from his representation of the Settlement Class pursuant to Section
78u-4(a)(4) of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). The PSLRA
specifically addresses payment of plaintiff awards as follows:

> The share of any final judgment or of any settlement that is awarded to a
> representative party serving on behalf of a class shall be equal, on a per share basis,
> to the portion of the final judgment or settlement awarded to all other members of

the class. Nothing in this paragraph shall be construed to limit the award of reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class.

15 U.S.C § 78u–4(a)(4).[2] As Plaintiff sets forth more fully in his motion for fees and expenses, Bosico seeks $1,500 to compensate him for lost wages incurred in acting as Plaintiff. Bosico spent approximately 15 hours in his capacity as Lead Plaintiff, and therefore could not undertake freelance work, for which he has charged $100 per hour. *See* Bosico Decl., ¶13 (Dkt. No. 55-3).

### i. The Complexity, Expense, and Likely Duration of Continued Litigation

Fed. R. Civ. P. 23(e)(2)(C)(i) requires courts to consider "the costs … and delay of trial and appeal." *Bennett* also requires an inquiry into the "complexity, expense and duration of litigation." *Bennett*, 737 F.2d at 986. The Court "can limit its inquiry to determining whether the possible rewards of continued litigation with its risks and costs are outweighed by the benefits of settlement." *Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 697–98 (M.D. Fla. 2005); *Checking Acct. Overdraft*, 830 F. Supp. 2d at 1345. It is well settled that "[t]he risks of litigation are what ultimately leads to settlement." *Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 215 (S.D.N.Y. 1992). "A securities case, by its very nature, is a complex animal." *In re Giant Interactive Grp., Inc. Sec. Litig.*, 279 F.R.D. 151, 164 (S.D.N.Y. 2011) (internal quotations omitted). Further, complex class actions are "notably difficult and notoriously uncertain." *In re Hi-Crush Partners L.P. Sec. Litig.*, No. 12-CIV-8557 CM, 2014 WL 7323417, at *3 (S.D.N.Y. Dec. 19, 2014) (internal quotations omitted). The Court should take into account the significant burden this case would impose on it should it go to trial. *Ressler v. Jacobson*, 822 F. Supp. 1551, 1554 (M.D. Fla. 1992). This factor favors approval.

---

[2] Courts within the Eleventh Circuit have granted such awards to representative parties in cases arising under the PSLRA subsequent to the Eleventh Circuit's decision in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020). *See In re Health Ins. Innovations Sec. Litig.*, No. 8:17-CV-2186-TPB-SPF, 2021 WL 1341881, at *13 (M.D. Fla. Mar. 23, 2021), report and recommendation adopted, No. 8:17-CV-2186-TPB-SPF, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021) (awarding $3,125 lead plaintiff "to compensate him for the time he incurred in his role as Lead Plaintiff and proposed class representative pursuant to the PSLRA"); *Maz Partners LP v. First Choice Healthcare Solutions, Inc.*, No. 6:19-cv-00619-PGB-LRH (M.D. Fla August 2, 2021) (Dkt. No. 81, ¶6).

### ii.    The Risks of Trial and Appeal and Likelihood of Success at Trial

In evaluating a settlement under Rule 23(e)(2)(C), courts consider "the costs, risks, and delay of trial and appeal." Similarly, the first *Bennett* factor is "the likelihood of success at trial." *Bennett*, 737 F.2d at 986. This is the most important factor and is weighed against the relief proposed by the settlement. *Figueroa v. Sharper Image Corp.*, 517 F. Supp. 2d 1292, 1323 (S.D. Fla. 2007). This factor favors settlement so long as there is substantial doubt about the class's ability to prevail at trial. *See Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 693 (S.D. Fla. 2014) (mere fact of potential loss at trial weighed in favor of settlement); *Behrens*, 118 F.R.D. at 540 (approving class action settlement because "[i]f the plaintiff pursued this cause through trial, the likelihood of achieving any success would be at risk"); *see Beavers v. Am. Cast Iron Pipe Co.*, 164 F. Supp. 2d 1290, 1298 (N.D. Ala. 2001) ("There are both strengths and weaknesses in each party's position[;] [t]his uncertainty of outcome is another factor favoring approval of the settlement.").

Securities class action plaintiffs face a myriad of procedural hurdles. Failing at any one stage of the litigation could defeat the class action. While a motion to dismiss the complaint had not yet been filed at the time of the Settlement, Defendants likely would have asserted challenges to materiality, falsity, scienter, and loss causation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005) (the elements of a Rule 10b-5 claim are falsity, materiality, scienter, reliance, loss causation and damages). To plead scienter, Plaintiff must allege that Defendants made false statements with at least severe recklessness. *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1330 (S.D. Fla. 2001). Scienter in particular is a difficult element to prove. *Walter Investment*, 2016 WL 10518902, at *3 ("Proving scienter at trial would have required showing not just negligence but severe recklessness, posing additional substantial risk and uncertainty."); *Plagens v. Deckard*, No. 1:20-CV-2744, 2023 WL 2711263, at *26 (N.D. Ohio Mar. 30, 2023) ("In the end, scienter remains difficult to plead and hard to prove."). Here, Plaintiff faced a difficult burden to prove the Individual Defendants' scienter. Loss causation would also present difficulties as there was only one alleged corrective disclosure, and Defendants successfully discrediting the sole corrective disclosure would defeat loss causation.

While Plaintiff believes his arguments opposing an anticipated motion to dismiss are strong, there is no guarantee he would prevail before the Court. The PSLRA imposes heightened

pleading burdens on securities fraud plaintiffs that are "not [] easy [] to comply with." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

Even if Plaintiff defeated the anticipated motion to dismiss, he would still need to undertake the complex and expensive task of obtaining certification of the putative class. One of the more difficult elements of class certification to satisfy is showing that class-wide issues, such as reliance on Defendants' misrepresentations (for Plaintiff's Exchange Act claims), predominate over individualized issues. Pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), to show their entitlement to the presumption of class-wide reliance, Plaintiff would need to prove that Longeveron securities traded in an efficient market during the Class Period such that new, material information was rapidly incorporated into the price of the securities. As to the Securities Act claims, Defendants could have challenged whether class members' purchases were traceable to their Registration Statement.

To satisfy the *Basic* presumption, Plaintiff would need to hire an expert economist to conduct an event study showing the price reaction of Longeveron securities to new, material information, prepare a report, and testify at a deposition on the issue of market efficiency. Such well-qualified experts are expensive. Stern Decl. ¶15. Defendants would likely contest the efficiency of the market for Longeveron securities, and whether the fraud impacted the price of Longeveron securities. Defendants would present their own expert report and testimony to oppose class certification. In addition to briefing the certification motion, Plaintiff would need to produce and review documents, sit for depositions, and take the opposing expert's deposition.

Even if Plaintiff obtained class certification, he faces a risk that he would not be able to sustain class certification through judgment. Rule 23(c)(1) expressly provides that a class certification order may be "altered or amended before final judgment." A class is not safely certified until judgment. *Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 498 (S.D. Fla. 2003) ("In addition, class certification may be altered or amended, where necessary, prior to a decision on the merits."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) ("there is no guarantee the [class] certification would survive through trial, as Defendants might have sought decertification or modification of the class"); *In re Glob. Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 460 (S.D.N.Y. 2004) ("even if plaintiffs could obtain class certification, there could be a risk of decertification at a later stage."). While rare, a change in the law or facts might upset

certification. Thus, the necessity of complex and costly class certification proceedings together with the risk this Court may have denied certification, supports the Settlement's adequacy.

Plaintiff must prove every element of his cause of action and negate every affirmative defense to recover. Moreover, to be awarded the maximum damages, the figure this brief uses as its reference point, Plaintiff must make every factual showing demanded by his theory of the case for both his Securities Act and Exchange Act claims. Defense counsel informed Plaintiff that Defendants disputed liability. Though Plaintiff does not believe the jury would agree with Defendants, there was no guarantee of success.

Furthermore, whether the alleged corrective disclosure caused the Company's stock price to decline and if so, by how much, as well as factual matters related to Longeveron's biotech products, would be resolved by expert testimony, and it is notoriously hard to predict whose expert the jury would believe. *See, e.g., Zuckerman v. Smart Choice Auto Group, Inc.*, No. 6:99-CV-237-ORL28KRS, 2001 WL 686879, at *10 (M.D. Fla. May 3, 2001) ("The determination of damages, like the determination of liability, is a complicated and uncertain process, typically involving conflicting expert opinions."); *Behrens*, 118 F.R.D. at 542 ("In the battle of experts, 'it is virtually impossible to predict with certainty which testimony will be credited.'"). Plaintiff does not believe a jury would agree with Defendants on either of these issues, but it might.

Plaintiff and his counsel recognize the significant risks and uncertainty involved in pursuing Plaintiff's claims through litigation. As the Court is aware, a class must not only win at trial, but against Defendants' post-trial motions, and on appeal. *See, e.g., Robbins v. Kroger Props. Inc.*, 116 F.3d 1441, 1448-1449 (11th Cir.), *reh'g en banc denied*, 129 F.3d 617 (11th Cir.1997) (finding no loss causation and overturning $81 million jury verdict); *Badger v. S. Farm Bureau Life Ins. Co.*, 612 F.3d 1334, 1347 (11th Cir. 2010) (reversing $31.7 million jury verdict).  The Settlement avoids these risks.

Under these circumstances, the proposed settlement properly balances the risks, expenses, and delay inherent in complex cases among the respective parties. Unlike continued litigation, the Settlement is a guaranteed result of Settlement Class Members. Thus, the benefits created by the Settlement weigh in favor of granting the motion for preliminary approval. Moreover, in light of the risks of continued litigation and the time and expense to be incurred in prosecuting this action through a trial, the Settlement represents a meaningful and prompt recovery that is in the best interest of the class.

        **iii.**      **Considering the Range of Possible Recovery, the Settlement is Clearly Within the Range of Reasonableness**

The second and third *Bennett* factors, which are usually combined, require the Court to determine the possible range of recovery and then determine the minimum fair, reasonable, and adequate settlement within that range. *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1322 (S.D. Fla. 2005). The Court must evaluate the settlement "in light of the attendant risks with litigation." *Checking Account Overdraft*, 830 F. Supp. 2d at 1350 (internal quotations omitted). Courts in this District emphasize that Settlement requires compromise and "an abandoning of highest hopes." *Id.* (internal quotations omitted).

The Settlement Amount of $1,397,500 is a highly favorable result. Plaintiff's expert estimates that the Settlement Class's aggregate damages based upon the alleged corrective disclosures in the AC (*i.e.,* August 13, 2021) are $4.4 million for Section 10(b) claims and $12.1 million for Section 11 claims.[3] The Settlement value, totaling $1,397,500 plus interest, constitutes approximately 31.7% of Section 10(b) damages and 11.5% of Section 11 damages. This is a highly favorable result, particularly in light of the considerable risks of litigation presented here. As a percentage of the total estimated damages, the Settlement Amount is well-above the percentage of investor losses recovered in typical securities class action settlements.

According to Cornerstone Research, the median settlement for cases with damages below $25 million recovered 11.1% of maximum damages in 2022.[4] The median recovery in cases such as this one alleging Rule 10b-5 claims with damages under $25 million was approximately 17.4% between 2012-2021. *Id.* at 6. Between 2018-2022, securities class actions that settled before motions to dismiss were filed recovered a median of $3.3 million and 9.4% of estimated damages. *Id.* at 14. The recovery here compares favorably to recoveries in similar securities class action settlements. *See also* Janeen McIntosh, Svetlana Starykh and Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review* 17 (NERA Economic Consulting, 2023)

---

[3] The Section 11 damages presume Plaintiff would have defeated a negative causation defense. If Defendants were able to prevail on a negative causation defense with respects to declines in Longeveron stock other than on the date of the alleged corrective disclosure, Section 11 damages would be lower.

[4] Dkt. No. 50-2, p. 6.

(in cases with estimated damages of less than $20 million, median settlement between 2011-2022 returned 28.4% of estimated damages)[5]

### c.   The Remaining Rule 23(e)(2)(C) Factors Support Approval

Rule 23(e)(2)(C)(ii)-(iv) requires courts to consider whether the relief provided for the class is adequate. These factors support approving the Settlement.

### i.   The Methods of Distributing Relief and Processing Claims

The Settlement proceeds will be allocated to Settlement Class Members who submit valid Claim Forms in accordance with the Plan. *See* Sec. II.E, below.  The Claims Administrator, Strategic Claims Services ("SCS"), will review and process all Claim Forms received, provide claimants with an opportunity to cure any deficiency in their claim or request review of the denial of their claim, and will ultimately mail a check to or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund as calculated under the Plan, upon approval of the Court. This type of claims processing and method for distributing settlement proceeds is standard in securities and other class actions and is effective.  Moreover, the Settlement is not "claims-made"—none of the Settlement will revert to Longeveron (Dkt. No. 48, ¶14).

### ii.   Proposed Attorneys' Fees

The Notice explains that Lead Counsel will apply for attorneys' fees of one third of the Settlement, or $465,833.33. An award of attorneys' fees of one third of the Settlement Amount is reasonable and consistent with the fees awarded in similar actions in this Circuit. *E.g.*, *Health Ins.*, 2021 WL 1341881, at *13 (approving fee award of 33%); *Miller v. Dyadic Int'l, Inc.*, No. 07-80948-CIV, 2010 WL 11591815, at *1 (S.D. Fla. July 28, 2010) (approving fee award of one third of settlement amount); *George v. Acad. Mortg. Corp. (UT)*, 369 F. Supp. 3d 1356, 1375 (N.D. Ga. 2019) (awarding attorney's fees of 33% in non securities class action). Lead Counsel has received no payment, and will not, until after the Court issues an order awarding attorneys' fees.

### iii.   Other Agreements

The Parties also executed a standard supplemental agreement providing that if Settlement Class Members opt out such that the number of shares held by those persons opting out reaches a certain threshold, any of the Defendants may terminate the Settlement. Stipulation ¶36. The terms

---

[5]Available at:
https://www.nera.com/content/dam/nera/publications/2023/PUB_2022_Full_Year_Trends.pdf

of the supplemental agreement are kept confidential to avoid incentivizing Settlement Class Members to opt out solely to leverage the threshold to exact an individual settlement, and does not detract from the fairness of the Settlement. *Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 4207245, at *11 (N.D. Cal. Sept. 4, 2018) ("a termination option triggered by the number of class members who opt out of the Settlement does not by itself render the Settlement unfair."); *Christine Asia Co. v. Yun Ma*, No. 115MD02631CMSDA, 2019 WL 5257534, at *15 (S.D.N.Y. Oct. 16, 2019) ("This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement.").

### d.  The Proposed Settlement Does Not Unjustly Favor Any Settlement Class Member, Including Plaintiff

Courts must also evaluate whether the settlement treats class members equitably relative to one another. Fed. R. Civ. P. 23(e)(2)(D). The Settlement does not offer preferential treatment to any Settlement Class Member, including Plaintiff. The Plan proposed in the Long Notice provides for distribution of the Net Settlement Fund to Authorized Claimants who suffered losses on their transactions in Longeveron securities during the Settlement Class Period, based on when each investor purchased, acquired, and/or sold Longeveron securities. The Plan was developed by Lead Counsel after consulting with the Claims Administrator and Plaintiff's damages expert. All Settlement Class Members' recoveries will be based upon the relative losses they sustained.

Plaintiff will receive a *pro rata* distribution from the Net Settlement Fund per the Plan, just like all other Settlement Class Members. *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ("A settlement in a securities class action case can be reasonable if it 'fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims and the timing of purchases of the securities at issue.'"); *Glob. Crossing*, 225 F.R.D. 436, 462 (S.D.N.Y. 2004) ("When formulated by competent and experienced class counsel, an allocation plan need have only a "reasonable, rational basis.").

Plaintiff also seeks reimbursement of costs incurred representing the Settlement Class, as authorized by the PSLRA. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 454 (9th Cir. 2000) (affirming reimbursement to class representative in securities class action settlement).

### e.   The Reaction of the Class

The overwhelmingly positive reaction of class members to the proposed settlement is a significant factor to be considered, and the absence of objections "is excellent evidence of the settlement's fairness and adequacy." *Ressler*, 822 F. Supp. at 1556; *Access Now, Inc. v. Claire's Stores, Inc.*, No. 0014017-CIV, 2002 WL 1162422, at *7 (S.D. Fla. May 7, 2002) ("[t]he fact that no objections have been filed strongly favors approval of the settlement").

Over 23,399 potential Settlement Class Members and nominees were notified of the pendency of settlement either by mailing of the Notice and Claim Form or by email of a link to the Notice and Claim Form. *See* Craig Dec. ¶8. The Notice apprised Settlement Class Members of their right to object to the Settlement, the Plan, or to Lead Counsel's application for attorneys' fees and expenses, and the procedure to object or seek exclusion. *Id*. at Ex. A. To date, there have been no objections to Lead Counsel's request for fees and expenses. *Id*. at ¶14. The deadline to object is September 28, 2016. *Id*. To date, no Settlement Class Member has opted out of the Settlement. *Id*. at ¶13. The deadline to opt out of the Settlement was August 25, 2023. *Id*.

### f.   The Stage of Proceedings

The purpose of considering the stage of the proceedings is to ensure that a plaintiff had sufficient information to evaluate the case and to determine the adequacy of the settlement. *Behrens*, 118 F.R.D. at 544. "The law is clear that early settlements are to be encouraged, and accordingly, only some reasonable amount of discovery should be required to make these determinations." *Checking Account Overdraft*, 830 F. Supp. 2d at 1349 (quoting *Ressler*, 822 F. Supp. at 1555).

Through their investigation, Lead Counsel determined the scope and strength of the claims Plaintiff could bring on behalf of the putative class, and the corresponding misrepresentations and/or omissions. Stern Decl. ¶8. Through these efforts, Plaintiff and Lead Counsel gained sufficient information to evaluate Settlement before additional time and resources were expended on further litigation. Courts regularly find this factor to support approval of a settlement even when plaintiffs settle before a decision on the motion to dismiss or for class certification, or before any discovery. *See, e.g., Lipuma*, 406 F. Supp. 2d at 1324 ("Certainly, courts favor early settlement."); *Millstein*, 2022 WL 18024840, at *5 (approving settlement as to one defendant before motion to dismiss); *Mego*, 213 F.3d at 459 (finding that even absent extensive formal discovery, class

17

counsel's significant investigation and research supported settlement approval); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (approving settlement after the filing of a motion to dismiss and prior to significant discovery); *Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO, 2015 WL 468329, at *6 (N.D. Cal. Feb. 3, 2015) (approving settlement before decision on motion to dismiss); For this reason, courts have commended class counsel for recognizing when, as was the case here, a prompt resolution of the matter is in the best interest of the class. *See Glass v. UBS Fin. Servs., Inc.*, No. C-06-4068 MMC, 2007 WL 221862, at *15 (N.D. Cal. Jan. 26, 2007) ("Class counsel achieved an excellent result for the class members by settling the instant action promptly"), *aff'd*, 331 F. Appx. 452, 457 (9th Cir. 2009).

Here, at the time of Settlement, Plaintiff and Lead Counsel had acquired "fulsome understandings" of the parties' respective positions on the legal and factual issues in the case. *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *9 (N.D. Cal. Oct. 27, 2015); *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007) (investigation provided sufficient understanding of merits even though the PSLRA precluded discovery). Plaintiff and Lead Counsel were sufficiently informed at this stage of the litigation to negotiate a reasonable Settlement, supporting final approval. Plaintiff has a solid grasp of the factual merits of the case. The AC was drafted by Lead Counsel after a months-long factual investigation, including interviews with former Longeveron employees.

Thus, this factor favors approval. *See Sunbeam*, 176 F. Supp. 2d at 1332 (because "case had progressed to a point where each side was well aware of the other side's position and the merits thereof[,] [t]his factor weighs in favor of the Court finding the proposed settlement to be fair, adequate, and reasonable"); *Behrens*, 118 F.R.D. at 544.

### 3. The Recommendation of Experienced Counsel Favors Approval of the Settlement

Lead Counsel, experienced securities class action practitioners, strongly endorses the Settlement. As such, when evaluating a settlement, "the court may 'rely upon the judgment of experienced counsel for the parties,' and 'absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel.'" *Williams*, 2019 WL 2526717, at *3. Given their familiarity and knowledge of this area of the law, "counsel's informed recommendation of the agreement is persuasive that approval is appropriate." *Strube*, 226 F.R.D. at 703.

### E.      THE PLAN OF ALLOCATION SHOULD BE APPROVED

The standard for approval of a plan of allocation is the same as the standard for approving a settlement: whether it "is fair, adequate and reasonable and is not the product of collusion between the parties." *In re Chicken Antitrust Litig. Am. Poultry*, 669 F.2d 228, 238 (5th Cir. 1982).

The Plan was formulated with the aid of an experienced consultant. The Plan was designed to reimburse class members to the extent of their damages under the securities laws. *See also In re Oracle Sec. Litig.*, No. C-90-0931-VRW, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994) ("A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable"). After taking into account lack of loss causation and the timing of Settlement Class Members' stock purchases and sales, the Plan does not discriminate between Settlement Class Members in the same position. The Net Cash Settlement Amount is distributed on a *pro rata* basis depending on Class Members' recognized losses. Accordingly, the Plan is fair and adequate and should be approved.

### F.      THE PROPOSED AWARD OF ATTORNEYS' FEES IS APPROPRIATE

Rule 23 also addresses "the terms of any proposed award of attorney's fees, including timing of payment." Fed. R. Civ. P. 23(e)(2)(C)(iii). As discussed in the Fee Brief, Lead Counsel seek an award of attorneys' fees of one third of the Settlement Amount, or $465,833.33, and reimbursement of expenses incurred of $27,035.[6] This fee request, fully disclosed in the Summary Notice and Long Notice is consistent with awards granted in similar actions in the Eleventh Circuit. *See* Fee Brief, section III(B)(1).

Plaintiff also requests $1,500 pursuant to the PSLRA, 15 U.S.C. § 78u-4(a)(4), in connection with his representation of the Settlement Class. The PSLRA empowers courts to grant awards to reimburse plaintiffs for "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." *Id.* Plaintiff supervised and engaged with Lead Counsel during litigation and throughout settlement negotiations, and kept abreast of developments in this case and with Longeveron generally. During

---

[6] Plaintiff initially filed a motion for attorneys' fees on May 19, 2023 (Dkt. No. 54). The Court denied this motion without prejudice so that it can be adjudicated together with the instant motion. Plaintiff is filing a substantially identical renewed motion for fees and expenses concurrently herewith.

the time period when this litigation was pending, Plaintiff worked as a Product and Project Manager. Plaintiff also pursued freelance accounting work and freelance computer consulting work. Bosico Decl., ¶4 (Dkt. No. 55-3). In the course of his freelance work, Plaintiff has charged up to $100 per hour. Plaintiff has spent approximately 15 hours on litigation related activities described above. *Id* ¶13. In so doing, Plaintiff was unable to take on freelance business opportunities that he could have otherwise pursued. The lost wages warrant reimbursement of $1,500 for the time and effort Plaintiff expended on the Settlement Class's behalf. *Id.*

Plaintiff's request for compensation is appropriate, as courts regularly grant similar awards to representative plaintiffs. *See* Fee Brief, section V.

### G.    CONCLUSION

For the reasons stated herein, Plaintiff respectfully requests that the Court finally approve the proposed Settlement and the Plan as fair, reasonable, and adequate and enter the [Proposed] Order and Judgment submitted concurrently herewith.

<u>**LOCAL RULE 7.1(a)(3) CERTIFICATION**</u>

Plaintiffs' Counsel has conferred with Defendants' Counsel regarding the requested relief and Defendants do not oppose Plaintiffs' motion.

Dated: September 5, 2023                            Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By:     /s/ Laurence Rosen
Laurence M. Rosen
Fla. Bar No. 0182877
Jonathan Stern (admitted *pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Phone: 212-686-1060
Fax: 212-202-3827
Email: lrosen@rosenlegal.com
        jstern@rosenlegal.com

Class Counsel

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on this day, September 5, 2023 a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/ Laurence Rosen</u>