**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-23303- ALTMAN/Brannon**

**Honorable Roy K. Altman, United States District Judge for the Southern District of Florida**

JERALD VARGAS MALESPIN, individually
and on behalf of all others similarly situated,

      Plaintiff,

vs.

LONGEVERON INC., GEOFF GREEN,
JAMES CLAVIJO, JOSHUA M. HARE,
DONALD M. SOFFER, NEIL E. HARE,
ROCK SOFFER, EF HUTTON F/K/A
KINGSWOOD CAPITAL MARKETS, and
ALEXANDER CAPITAL L.P.,

      Defendants.

_____ /

**DECLARATION OF JONATHAN STERN IN SUPPORT OF FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AN AWARD OF ATTORNEYS' FEES AND REMIBURSEMENT OF EXPENSES**

I, Jonathan Stern, declare:

**I.**    **INTRODUCTION**

1.    I have personal knowledge of the matters set forth herein based on my active participation in the prosecution and settlement of this litigation, and, if called as a witness, could and would testify competently thereto.

2.    I provide this Declaration solely to supplement the facts of which the Court can take judicial notice—for example, filings on the Court's own docket and the Court's own pinion and orders. Thus, this Declaration is not a complete summary of the litigation, the reasons for settlement, or the grounds for Class Representatives' attorneys' fee request.

3.      I submit this Declaration in support of the proposed settlement of this litigation (the "Settlement") between Lead Plaintiff John Bosico ("Plaintiff") and Defendants Longeveron Inc. ("Longeveron"), Geoff Green ("Green"), James Clavijo ("Clavijo"), Joshua M. Hare ("J. Hare"), Donald M. Soffer ("D. Soffer"), Neil E. Hare ("N. Hare"), and Rock Soffer ("R. Soffer") (Green, Clavijo, J. Hare, D. Soffer, and N. Hare are collectively referred to as the "Individual Defendants"), EF Hutton f/k/a Kingswood Capital Markets, and Alexander Capital L.P. (the "Underwriter Defendants" and, collectively with Longeveron and the Individual Defendants, "Defendants").

4.      This action has been settled for a payment of $1,397,500 in cash. Plaintiffs' expert report estimated that the maximum possible damages were $4.4 million for section 10(b) damages and $12.1 million for section 11 damages, and the Settlement returns 31.7% of section 10(b) damages and 11.5% of section 11 damages.

5.      I also submit this Declaration in support of Plaintiffs' proposed Plan of Allocation.[1] The Plan of Allocation, which was set forth fully in the Notice, provides that Class Members who submit acceptable Claim Forms Claim will receive a pro rata share of the "Net Settlement Fund," the Settlement consideration less certain court-approved fees and expenses.

6.      Finally, I submit this Declaration in support of Plaintiffs' application for an award of attorneys' fees and reimbursement of expenses. As discussed below, the requested fee represents a fair multiplier on the market rate for counsel's services and is further supported by the contingent risk borne by counsel and the result obtained. The fees requested fall well within the parameters recognized as appropriate in federal securities class actions such as this litigation, both under a percentage of recovery analysis and under a lodestar cross-check analysis. The expenses incurred

---

[1] Unless otherwise indicated, all capitalized terms herein shall have the same meanings as set forth in the Stipulation of Settlement (the "Stipulation") (Dkt. No. 48).

were all reasonable and necessary for the prosecution of the litigation and less than the maximum figure proposed in the Notice sent to the Class.

7.      Significantly, following the distribution of notice to 23,399 potential Class Members, which included the Notice and the Claim Form, no objections have been filed to any aspect of the Settlement, Plan of Allocation, or Plaintiffs' fee request. Additionally, there have been no requests for exclusion from the Settlement Class.

8.      Class Counsel and Plaintiff were sufficiently aware of the strengths and weaknesses of this case. By the time the Settlement was achieved, Class Counsel: (a) submitted a lead plaintiff motion; (b) researched the law and the facts of the case; (c) retained a private investigator to assist in gathering facts and understanding subject matter, (d) drafted the amended complaint; and (e) negotiated with Defense counsel to settle the action. The negotiations were, at all times, conducted at arm's length.

9.      For these reasons and those discussed below, Class Counsel respectfully submits that the Settlement is an excellent result for the Settlement Class and worthy of approval, the proposed Plan of Allocation is equitable and just and the requested fee and expense reimbursement should be awarded in full.

## II.      DISCUSSION

### A.      PROCEDURAL HISTORY

10.      On September 13, 2021, named plaintiff Jerald Vargas Malespin ("Malespin") filed the initial complaint alleging violations of federal securities laws against defendants Longeveron Inc. ("Longeveron"), Geoff Green ("Green"), James Clavijo ("Clavijo"), Joshua M. Hare ("J. Hare"), Donald M. Soffer ("D. Soffer"), Neil E. Hare ("N. Hare"), and Rock Soffer ("R. Soffer") (Green, Clavijo, J. Hare, D. Soffer, and N. Hare are collectively referred to as the "Individual

Defendants"). (Docket No. 1).

11.     On November 12, 2021, Bosico moved to be appointed lead plaintiff and to have the Court appoint The Rosen Law Firm, P.A. as Class Counsel, (Docket No. 8), which was approved on February 4, 2022. (Docket No. 22).

12.     On April 26, 2022, Plaintiff filed his Amended Complaint (the "AC") against Defendant Longeveron, the Individual Defendants, and the Underwriter Defendants, on behalf of investors who purchased Longeveron securities: (a) pursuant and/or traceable to the Company's initial public offering conducted on or about February 12, 2021; and (b) between February 12, 2021 and August 12, 2021 (the "Class Period"), seeking damages caused by: (i) Defendants' alleged violations of Section 11 of the Securities Act of 1933 (the "Securities Act"); (ii) Individual Defendants' alleged violations of Section 15 of the Securities Act; (iii) Defendants Longeveron, Green, Clavijo, and J. Hare's alleged violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated thereunder; and (iv) Defendants Green, Clavijo, and J. Hare's alleged violations of Section 20(a) of the Exchange Act. (Docket No. 27). Specifically, the AC alleged that defendants Longeveron, Green, Clavijo, J. Hare, D. Soffer, N. Hare, and R. Soffer made or caused to be made false and misleading statements by failing to disclose the existence of facts that undermined the overly optimistic statements regarding Lomocel-B made at the time of the IPO and during the Class Period and that the Underwriter Defendants breached their duty to make a reasonable and diligent investigation of the statements and ensure their correctness. Through the investigation into this matter, their investigation, Lead Counsel determined the scope and strength of the claims Plaintiff could bring on behalf of the putative class, and the corresponding misrepresentations and/or omissions.

13.     Defense counsel from Boies Schiller Flexner LLP are extremely skilled and

4

vigorous advocates.

14. My firm prosecuted this case on a fully contingent basis.

**B.  COST OF LITIGATION**

15. Had this case proceeded, to certify a class, Plaintiffs would have been required, pursuant to *Basic Inc. v. Levinson*, 485 U.S. 224 (1988), to show their entitlement to the presumption of class-wide reliance, Plaintiffs would need to prove that Longeveron securities traded in an efficient market during the Class Period such that new, material information was rapidly incorporated into the price of the securities. To satisfy the *Basic* presumption, Plaintiffs would need to hire an expert economist to conduct an event study showing the price reaction of Longeveron securities to new, material information, prepare a report, and testify at a deposition on the issue of market efficiency. Such well-qualified experts are expensive.

**C.  DAMAGES**

16. My firm prosecuted this case on a fully contingent basis.

17. My firm retained an expert to estimate damages. The expert estimated damages of about $4.4 million for section 10(b) damages and $12.1 million for section 11 damages. Thus, the settlement recovers approximately 31.7% of section 10(b) damages and 11.5% of section 11 damages under the best case scenario. On damages, Defendants would argue that the Class's losses were caused by news unrelated to the Lomocel-B Phase 2b results. Defendants would likely retain an expert that challenged the proposition that there is any basis to conclude that any portion of the stock decline cited by Plaintiff was due to the revelation of Defendants' fraud.  But even if the jury did not completely agree with him, it might attribute some of the drop to this non-fraud factor. If Plaintiff's expert could not establish that the drop on August 13, 2021 was caused by Defendants' false statements, damages could be nullified and there would be no recovery for the class.

### D.   CONCLUSION

18.   Based on my firm's experience in having served as lead or co-lead counsel in dozens successful securities class actions, I believe the Settlement is fair, reasonable, and adequate, and should be approved.

### E.   EXHIBITS

19.   Attached as Exhibit 1 to this Declaration is a true and correct copy of the Declaration of Margery Craig Concerning Mailing of Notice of Pendency and Proposed Settlement of Class Action and Proof of Claim and Release.

20.   Attached as Exhibit 2 to this Declaration is a true and correct copy of the firm resume of The Rosen Law Firm, P.A.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on September 5, 2023

New York, New York.

 /s/ Jonathan Stern
Jonathan Stern

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this day, September 5, 2023 a true and correct copy of the foregoing

document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

<u>/s/ Jonathan Stern</u>