**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-cv-23303- ALTMAN/Brannon**

**Honorable Roy K. Altman, United States District Judge for the Southern District of Florida**

JERALD VARGAS MALESPIN, individually
and on behalf of all others similarly situated,

      Plaintiff,

vs.

LONGEVERON INC., GEOFF GREEN,
JAMES CLAVIJO, JOSHUA M. HARE,
DONALD M. SOFFER, NEIL E. HARE,
ROCK SOFFER, EF HUTTON F/K/A
KINGSWOOD CAPITAL MARKETS, and
ALEXANDER CAPITAL L.P.,

      Defendants.

_____ /

**RENEWED MOTION FOR AN AWARD OF ATTORNEYS' FEES AND**
**REIMBURSEMENT OF EXPENSES; MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS

I.    INTRODUCTION .........................................................................................................1

II.   CASE BACKGROUND ...............................................................................................3

III.  THE COURT SHOULD AWARD ATTORNEYS' FEES OF ONE-THIRD OF THE
      SETTLEMENT FUND...............................................................................................5

  A.  Lead Counsel Are Entitled to a Fee Award from the Common Fund They Secured for the
      Settlement Class........................................................................................................5

  B.  The Requested Fee Is Reasonable under the Camden Factors ............................................6

    1.  Awards in Similar Cases......................................................................................6

    2.  Time and Labor Required ....................................................................................7

    3.  The Novelty and Difficulty of the Questions Involved .......................................8

    4.  The Skill Required to Perform the Legal Services Properly, and the Experience,
        Reputation, and Ability of the Attorneys............................................................9

    5.  Preclusion of Other Employment........................................................................10

    6.  The Customary and Contingent Nature of the Fee .............................................10

    7.  The Results Obtained...........................................................................................11

    8.  The "Undesirability" of the Case........................................................................13

    9.  The Time Limitations Imposed by the Client or the Circumstances ..............................13

IV.   PLAINTIFF'S COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO
      ACHIEVE THE BENEFIT OBTAINED ..............................................................13

V.    THE COURT SHOULD APPROVE THE AWARD TO PLAINTIFF OF REASONABLE
      COSTS AND EXPENSES (INCLUDING LOST WAGES) DIRECTLY RELATING TO
      THE REPRESENTATION OF THE CLASS........................................................14

VI.   CONCLUSION.........................................................................................................15

i

<u>**TABLE OF AUTHORITIES**</u>

**Page(s)**

<u>**Cases**</u>

*Abercrombie v. TD Bank, N.A.*,
  2022 WL 18779705 (S.D. Fla. Dec. 9, 2022) .............................................................................. 7

*Aranaz v. Catalyst Pharmaceutical Partners Inc.*,
  No. 13-cv-23878-UU (S.D. Fla. 2015) ........................................................................................ 7

*Behrens v. Wometco Enterprises, Inc.*,
  118 F.R.D. 534 (S.D. Fla. 1988) ........................................................................... 8, 10, 11, 13

*Bensley v. FalconStor Software, Inc.*,
  277 F.R.D. 231 (E.D.N.Y. 2011) ................................................................................................. 9

*Boeing Co. v. Van Gemert*,
  444 U.S. 472 (1980) ...................................................................................................................... 5

*Camden I Condo. Ass'n, Inc. v. Dunkle*,
  946 F.2d 768 (11th Cir. 1991) .................................................................................................. 5, 6

*City of Providence v. Aeropostale, Inc.*,
  No. 11 CIV. 7132 CM GWG, 2014 WL 1883494 (S.D.N.Y. May 9, 2014) .............................. 9

*David v. Am. Suzuki Motor Corp.*,
  No. 08-CV-22278, 2010 WL 1628362 ......................................................................................... 9

*Dowdell v. City of Apopka, Fla.*,
  698 F.2d 1181 (11th Cir. 1983) ................................................................................................. 13

*Eminence Cap., LLC v. Aspeon, Inc.*,
  316 F.3d 1048 (9th Cir. 2003) ..................................................................................................... 2

Halliburton Co. v. Erica P. John Fund, Inc.,
  No. 13-317 ...................................................................................................................................... 5

*Hanley v. Tampa Bay Sports and Entertainment LLC*,
  2020 WL 2517766 (M.D. Fla. Apr. 23, 2020) ............................................................................ 7

*Hensley v. Eckerhart*,
  461 U.S. 424 (1983) ..................................................................................................................... 12

*Howard v. Chanticleer Holdings, Inc.*,
  No. 12-81123-CIV, 2013 WL 104998 (S.D. Fla. Jan. 4, 2013) ............................................. 7, 9

*In re AOL Timer Warner, Inc. Sec. Litig.*,
No. 02 CIV. 5575 (SWK), 2006 WL 3057232 (S.D.N.Y. Oct. 25, 2006) ................................ 6

*In re BankAtlantic Bancorp, Inc. Sec. Litig.*,
No. 07-61542-CIV, 2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) .......................................... 11

*In re Checking Acct. Overdraft Litig.*,
830 F. Supp. 2d 1330 (S.D. Fla. 2011) ............................................................................. 5, 10

*In re Gen. Instrument Sec. Litig.*,
209 F. Supp. 2d 423 (E.D. Pa. 2001) ...................................................................................... 6

In re: Citrix Data Breach Litigation,
No. 19–cv–61350–RKA (S.D. Fla. June 11, 2021) .................................................................. 7

*In re Health Ins. Innovations Sec. Litig.*,
2021 WL 1341881 (M.D. Fla. Mar. 23, 2021) ............................................................... 6, 7, 14

*In re Heritage Bond Litig.*,
No. 02-ML-1475-DT(RCX), 2005 WL 1594389 (C.D. Cal. June 10, 2005) ........................... 6

*In re Lease Oil Antitrust Litig. (No. II),*
186 F.R.D. 403 (S.D. Tex. 1999) ............................................................................................ 6

*In re Sterling Fin. Corp. Sec. Class Action*,
No. CIV.A. 07-2171, 2009 WL 2914363 (E.D. Pa. Sept. 10, 2009) ....................................... 8

*In re Sunbeam Sec. Litig.*,
176 F. Supp. 2d 1323 (S.D. Fla. 2001) ............................................................................. 8, 10

*Ingram v. The Coca-Cola Co.*,
200 F.R.D. 685 (N.D. Ga. 2001) ............................................................................................. 8

*Johnson v. NPAS Sols., LLC*,
975 F.3d 1244 (11th Cir. 2020) ............................................................................................. 14

*Mashburn v. Nat'l Healthcare, Inc.*,
684 F. Supp. 679 (M.D. Ala. 1988) ........................................................................................ 8

*Maz Partners LP v. First Choice Healthcare Solutions, Inc.,*
No. 6:19-cv-00619-PGB-LRH (M.D. Fla August 2, 2021) ................................................... 14

*Missouri v. Jenkins by Agyei*,
491 U.S. 274 (1989) ................................................................................................................. 8

*Norman v. Hous. Auth. of City of Montgomery*,
  836 F.2d 1292 (11th Cir. 1988) ...................................................................................... 10

*Pace v. Quintanilla*,
  No. SACV 14-2067-DOC, 2014 WL 4180766 (C.D. Cal. Aug. 19, 2014) ................................ 9

*Pinto v. Princess Cruise Lines, Ltd.*,
  513 F. Supp. 2d 1334 (S.D. Fla. 2007) ............................................................................. 8, 11

*Ressler v. Jacobson*,
  149 F.R.D. 651 (M.D. Fla. 1992)................................................................................... passim

*Robbins v. Koger Props.*,
  116 F.3d 1441(11th Cir. 1997) (reversing ................................................................. 11

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)....................................................................................................... 5

*Vinh Nguyen v. Radient Pharms. Corp.*,
  No. SACV 11-00406 DOC, 2014 WL 1802293 (C.D. Cal. May 6, 2014) ................................ 9

*Waters v. Int'l Precious Metals Corp.*,
  190 F.3d 1291 (11th Cir. 1999) ..................................................................................... 7

## Statutes

15 U.S.C. § 78u-4(a)(4) ................................................................................................. 14

## Rules

Fed. R. Civ. P. 23(e) ..................................................................................................... 1

## Other Authorities

H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) ........................................... 14

iv

Lead Plaintiff John Bosico ("Plaintiff") upon the accompanying Memorandum of Law and the previously filed Declaration of Jonathan Stern in Support of Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (Docket No. 55, the "Stern Fee Decl.") and the exhibits attached thereto, hereby move the Court pursuant to Fed. R. Civ. P. 23(e) for an Order: (1) awarding attorneys' fees in the amount of $465,833.33; (2) reimbursement of $27,035 in expenses that were incurred in prosecuting this action; and (3) an award of $1,500 for reasonable costs and expenses (including lost wages) directly relating to the representation of the class to Plaintiff. Defendants stated on the record at the status conference dated May 12, 2023 that they would not take a position on the instant application for fees and expenses. A proposed order in connection with both this motion and the forthcoming motion for Final Approval of Class Action Settlement will be filed together with the latter motion.

## I.      INTRODUCTION

The Parties reached a Settlement to resolve this Action for $1,397,500. Stipulation, at ¶1.kk[1]. The Settlement is a favorable result for the Settlement Class, as it recovers approximately 31.7% of damages under Section 10(b) of the Securities Exchange Act of 1934 ("Section 10(b) Damages") and 11.5% of damages under Section 11 of the Securities Act of 1933 ("Section 11 Damages") under Plaintiff's best-case scenario, as estimated by Plaintiff's damages expert. Having achieved this substantial recovery for the Settlement Class despite facing significant obstacles and risks in this litigation, Lead Counsel seek an award of attorneys' fees of $33\frac{1}{3}$%, or one-third, of the Settlement Amount, or $465,833.33, reimbursement of expenses incurred of $27,035, and an

---

[1] Unless otherwise defined herein, capitalized terms take the same meaning provided in the Stipulation of Settlement, filed on September April 28, 2023 ("Settlement" or "Stipulation") (Dkt. No. 48). Internal citations and quotations are omitted and emphasis is added unless otherwise noted. Citations to "Stern Fee Decl." are to the previously filed Declaration of Jonathan Stern, Docket No. 55.

award to Plaintiff of $1,500 for reasonable costs and expenses (including lost wages) directly relating to the representation of the class to be paid from the Settlement Fund.

Litigants who create a common fund for the benefit of a class are entitled to an award of attorneys' fees and reimbursement of expenses from the common fund. In the Eleventh Circuit, courts typically determine attorneys' fees as a percentage of the common fund. In this Circuit, courts look to the *Camden* factors to determine the fairness of a percentage award. Here, each of these factors weighs in favor of awarding Lead Counsel attorneys' fees of one-third of the Settlement Amount.

The Parties reached the Settlement after informed, arm's-length negotiations. This Settlement is a favorable result for Class Members in light of several obstacles Plaintiffs faced, including Defendants' anticipated motions to dismiss, Defendants' potential defenses, the risks of prosecuting this litigation through trial, and any post-trial motions and appeal.

In obtaining this result, Lead Counsel took on substantial risk. The Private Securities Litigation Reform Act of 1995 ("PSLRA") imposes several procedural obstacles to alleging securities fraud, and its pleading standards in particular are "not [] easy [] to comply with," *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Despite the risks entailed in this litigation, Lead Counsel was able to secure a favorable and prompt recovery for the Settlement Class.

Lead Counsel also seeks reimbursement of out-of-pocket litigation expenses incurred in connection with the prosecution of this action in the amount of $27,035. These expenses, including court filings fees, expert fees, investigator fees, document hosting fees, travel expenses, and administrative expenses, were reasonable and necessary for the successful prosecution of the Action.

Finally, Plaintiff seeks a reimbursement of costs and expense (including lost wages) of $1,500, directly relating to the representation of the class. This request is reasonable in light of the time Plaintiff spent in connection with this Action on behalf of the Settlement Class and is in line with awards granted in similar actions.

## II.     CASE BACKGROUND

On September 13, 2021, named plaintiff Jerald Vargas Malespin ("Malespin") filed the initial complaint alleging violations of federal securities laws against defendants Longeveron Inc. ("Longeveron"), Geoff Green ("Green"), James Clavijo ("Clavijo"), Joshua M. Hare ("J. Hare"), Donald M. Soffer ("D. Soffer"), Neil E. Hare ("N. Hare"), and Rock Soffer ("R. Soffer") (Green, Clavijo, J. Hare, D. Soffer, and N. Hare are collectively referred to as the "Individual Defendants"). (Docket No. 1).

On November 12, 2021, Bosico moved to be appointed lead plaintiff and to have the Court appoint The Rosen Law Firm, P.A. as Class Counsel, (Docket No. 8), which was approved on February 4, 2022. (Docket No. 22).

On April 26, 2022, Plaintiff filed his Amended Complaint (the "AC") against Defendant Longeveron, Individual Defendants, and Defendant Underwriters EF Hutton, division of Benchmark Investments f/k/a Kingswood Capital Markets, and Alexander Capital L.P. (collectively, "Defendants"), on behalf of investors who purchased Longeveron securities: (a) pursuant and/or traceable to the Company's initial public offering conducted on or about February 12, 2021; and (b) between February 12, 2021 and August 12, 2021 (the "Class Period"), seeking damages caused by: (i) Defendants' alleged violations of Section 11 of the Securities Act of 1933 (the "Securities Act"); (ii) Individual Defendants' alleged violations of Section 15 of the Securities Act; (iii) Defendants Longeveron, Green, Clavijo, and J. Hare's alleged violations of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act"), and Rule 10b-5 promulgated

3

thereunder; and (iv) Defendants Green, Clavijo, and J. Hare's alleged violations of Section 20(a) of the Exchange Act. (Docket No. 27). Specifically, the AC alleged that defendants Longeveron, Green, Clavijo, J. Hare, D. Soffer, N. Hare, and R. Soffer made or caused to be made false and misleading statements by failing to disclose the existence of facts that undermined the overly optimistic statements regarding Lomocel-B made at the time of the IPO and during the Class Period and that the Underwriter Defendants breached their duty to make a reasonable and diligent investigation of the statements and ensure their correctness.

Defense counsel informed Plaintiff that Defendants disputed liability and intended to move to dismiss all counts against all Defendants.  Thereafter, the Parties agreed to participate in private settlement discussions. The parties exchanged settlement demands and offers over the course of several weeks via a series of telephone conferences, and ultimately reached the instant settlement.

The parties, all represented by experienced counsel, agreed to a settlement of $1,397,500 in cash to resolve the claims of the Class against the Defendants, with a class period of February 12, 2021 to August 12, 2021. In exchange, the Plaintiff agreed to release claims against all Defendants, as specified in the Settlement Stipulation.

On May 12, 2023, the Court approved the Motion for Preliminary Settlement Approval. (Docket No. 53).

On May 19, 2023, Plaintiff filed a motion for attorneys' fees. (Docket No. 54). On May 20, 2023, the Court denied Plaintiff's motion for attorneys' fees without prejudice, directing Plaintiff to re-file the motion at the end of the class notice period. (Docket No. 56). As such, Plaintiff re-submits this motion for attorneys' fees for the Court's consideration.

### III.   THE COURT SHOULD AWARD ATTORNEYS' FEES OF ONE-THIRD OF THE SETTLEMENT FUND

#### A.   Lead Counsel Are Entitled to a Fee Award from the Common Fund They Secured for the Settlement Class

Attorneys who achieve a benefit for class members in the form of a "common fund" are entitled to be compensated for their services from that settlement fund. *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole"); *see also Camden I Condo. Ass'n, Inc. v. Dunkle*, 946 F.2d 768, 771 (11th Cir. 1991); *In re Checking Acct. Overdraft Litig.*, 830 F. Supp. 2d 1330, 1358 (S.D. Fla. 2011). In the Eleventh Circuit, courts must determine the appropriate award to attorneys by granting them a percentage of the fund created through their efforts, dubbed the "percentage of the fund method". *Camden*, 946 F.2d at 774 ("the percentage of the fund approach is the better reasoned in a common fund case. . . [h]enceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class").

Reasonable fee awards are necessary in securities class actions. The Supreme Court has "long recognized that meritorious private actions to enforce federal antifraud securities laws are an essential supplement to criminal prosecutions and civil enforcement actions brought [] by the Department of Justice and the Securities and Exchange Commission." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007); *Halliburton Co. v. Erica P. John Fund, Inc.*, No. 13-317, Brief for the United States as Amicus Curiae Supporting Respondent, at 1-2. *Tellabs* and *Halliburton* were both class actions alleging securities fraud. Attorneys' fee awards were necessary to provide incentives for private lawyers to file those actions, and an award is necessary and appropriate here for the same reasons.

### B.      The Requested Fee Is Reasonable under the Camden Factors

Under *Camden*, the court first fixes a benchmark, and then considers the so-called Camden factors to determine what constitutes a reasonable percentage award. *See Camden*, 946 F.2d at 772. These factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and the length of the professional relationship with the client[2]; and (12) awards in similar cases.

### 1.      Awards in Similar Cases

*Camden*, decided in 1991, suggested that an appropriate initial benchmark for attorneys' fees is 25%, which a court should adjust up or down based on the specific facts of the case. *Camden*, 946 F.2d at 775. However, courts in securities class actions typically award higher percentages due to the unique characteristics and challenges posed in such cases.  For example, such actions involved "highly complex" issues[3]  require an extraordinary investment of time and resources and provide class members with hard cash, rather than coupons.[4]

In several recent orders awarding fees in securities class action settlements, courts have awarded attorneys' fees of either 30% or 33% of the settlement fund. *See* Stern Fee Decl. Ex. 1, *In*

---

[2] Class counsel had no relationship with the Lead Plaintiff before this action; thus, this factor is neutral.

[3] *In re Gen. Instrument Sec. Litig.*, 209 F. Supp. 2d 423, 433 (E.D. Pa. 2001); *In re Heritage Bond Litig.*, No. 02-ML-1475-DT(RCX), 2005 WL 1594389, at *12 (C.D. Cal. June 10, 2005).

[4] *In re AOL Time Warner, Inc. Sec. Litig.*, No. 02 CIV. 5575 (SWK), 2006 WL 3057232, at *10 (S.D.N.Y. Oct. 25, 2006); *In re Lease Oil Antitrust Litig. (No. II)*, 186 F.R.D. 403, 447 (S.D. Tex. 1999) (antitrust class action with cash payment).

*re Health Ins. Innovations Sec. Litig.*, No. 8:17-CV-2186-TPB-SPF, 2021 WL 1341881, at \*13 (M.D. Fla. Mar. 23, 2021), *report and recommendation adopted,* No. 8:17-CV-2186-TPB-SPF, 2021 WL 1186838 (M.D. Fla. Mar. 30, 2021) (33% of $2,800,000); *Aranaz v. Catalyst Pharmaceutical Partners Inc.*, No. 13–cv–23878–UU, D.E. 153 at ¶ 18 (S.D. Fla. 2015); *Howard v. Chanticleer Holdings, Inc.*, No. 12- cv-81123-JIC, D.E. 74 at ¶ 4 (S.D. Fla. 2014) ($33^{1/3}$% of $850,000 fund); *see also Abercrombie v. TD Bank, N.A.*, 2022 WL 18779705, at \*8 (S.D. Fla. Dec. 9, 2022) (33.33% of $4,245,000 settlement in non-securities case); *In re: Citrix Data Breach Litigation*, No. 19–cv–61350–RKA, D.E. 67 at ¶ 15(g) (S.D. Fla. June 11, 2021) (32.9% of $2,275,000 settlement in non-securities class action). *Hanley v. Tampa Bay Sports and Entertainment LLC*, 2020 WL 2517766, at \*6 (M.D. Fla. Apr. 23, 2020) ($787,500, or 35%, of $2,250,000 settlement in non-securities class action and noting that a 1/3 fee is consistent with the trend of the circuit).

### 2.      Time and Labor Required

Class Counsel has devoted significant time and resources to researching, investigating, and prosecuting this action. By the time the Settlement was reached, Class Counsel had: (a) investigated the facts and law of claims against Defendants; (b) drafted their initial and Amended Complaint; (c) negotiated the specific terms of the Settlement. *See* Rosen Dec. ¶ 8.

Indeed, Class Counsel expended over 417.71 hours with a market value, or lodestar, of more than $313,660 at counsel's current billing rates, providing a multiplier of about 1.485. Stern Fee Decl. ¶6. While not required in the Eleventh Circuit, an analysis of the requested fee under the "lodestar/multiplier" approach further supports the reasonableness of an award of one-third of the Settlement Amount fee. *Waters v. Int'l Precious Metals Corp.*, 190 F.3d 1291, 1298 (11th Cir. 1999) ("while we have decided in this circuit that a lodestar calculation is not proper in common

fund cases, we may refer to that figure for comparison"). The 1.485 multiplier requested [5] here is below the range of multipliers frequently awarded in class action settlements of similar magnitude in courts within the Eleventh Circuit. *See, e.g, Pinto v. Princess Cruise Lines, Ltd.*, 513 F. Supp. 2d 1334, 1344 (S.D. Fla. 2007) (noting that lodestar multipliers "'in large and complicated class actions' range from 2.26 to 4.5" and that "three appears to be the average"); *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 696 (N.D. Ga. 2001) (awarding fee representing a multiplier between 2.5 and 4); *Mashburn v. Nat'l Healthcare, Inc.*, 684 F. Supp. 679, 702 (M.D. Ala. 1988) ("A multiplier of approximately 3.1 in a national class action securities case is not unusual or unreasonable.").

As such, the time and labor expended justify the fee requested.

### 3.      The Novelty and Difficulty of the Questions Involved

Class Representatives faced all the "multi-faceted and complex legal questions endemic" to cases based on alleged violations of federal securities law. *Ressler v. Jacobson*, 149 F.R.D. 651, 654 (M.D. Fla. 1992); *In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1334 (S.D. Fla. 2001) (same). Moreover, "securities actions have become more difficult from a plaintiff's perspective in the wake of the PSLRA." *In re Sterling Fin. Corp. Sec. Class Action*, No. CIV.A. 07-2171, 2009 WL 2914363, at *4 (E.D. Pa. Sept. 10, 2009). This Action was no exception. In order to prevail, Plaintiffs were required to not only contend with the complexities of the securities laws, but also the intricacies of Longeveron's experimental medical treatments, FDA regulations, and complex questions of statistical analysis in connection with the FDA approval process.

---

[5] The Supreme Court has held that the use of current rather than historical rates is appropriate in examining the lodestar because current rates more adequately compensate for inflation and the loss of use of funds. *See Missouri v. Jenkins by Agyei*, 491 U.S. 274, 283-84 (1989). Courts in this Circuit also have stated that it is appropriate to use counsel's current rates in order to compensate for the delay in payment and inflation. *See, e.g., Behrens v. Wometco Enterprises, Inc.*, 118 F.R.D. 534, 546 (S.D. Fla. 1988).

In addition, securities class actions in general present difficult questions. For example, loss causation, damages, and market efficiency must all be established through expert testimony. Defendants would have presented their own expert, and the results of battles of the experts are notoriously difficult to predict. *City of Providence v. Aeropostale, Inc.*, No. 11 CIV. 7132 CM GWG, 2014 WL 1883494, at *9 (S.D.N.Y. May 9, 2014). Defendants need only win once; Plaintiffs must win every single time.

### 4.    The Skill Required to Perform the Legal Services Properly, and the Experience, Reputation, and Ability of the Attorneys

The quality of the representation by Class Counsel and the standing of Class Counsel are important factors that support the reasonableness of the requested fee. *See Ressler*, 149 F.R.D. at 654; *see also David v. Am. Suzuki Motor Corp*., No. 08-CV-22278, 2010 WL 1628362, at *8 n. 15 (S.D. Fla. Apr. 15, 2010) (a court should consider "the skill and acumen required to successfully investigate, file, litigate, and settle a complicated class action lawsuit such as this one"). Class Counsel has developed a reputation for zealous advocacy in relatively small securities class actions like this one. *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *9 (C.D. Cal. May 6, 2014) (Rosen Law Firm "took on significant risk in this case, working thoroughly and enthusiastically through extensive litigation that required significant expert involvement"); *Pace v. Quintanilla*, No. SACV 14-2067-DOC, 2014 WL 4180766, at *3 (C.D. Cal. Aug. 19, 2014) ("Indeed, The Rosen Law Firm has appeared before this Court several times before, and the Court is confident that it has the necessary skill and knowledge to effectively prosecute this action"); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 242 (E.D.N.Y. 2011) ("As the court in *In re Fuwei Films Securities Litigation* concluded, based on the [Rosen Law] Firm's experience, 'the Rosen Law Firm is well-qualified to serve as lead counsel in this matter'"); *Howard v. Chanticleer Holdings, Inc.*, No. 12-81123-CIV, 2013 WL 104998, at *3 (S.D. Fla. Jan.

9

4, 2013) ("[T]he Rosen Firm is plainly qualified to serve as class counsel here"). Class Counsel's hard-won reputation allowed them to credibly threaten to take this case as far as it takes. A copy of Class Counsel's firm resume is appended to the Stern Fee Decl. as Exhibit 2.

Class Counsel prosecuted this case zealously and skillfully. The quality of opposing counsel is also important in evaluating the quality of Class Counsel's work. *See, e.g., Sunbeam,* 176 F. Supp. 2d at 1334; *Ressler*, 149 F.R.D. at 654. Defendants were represented by experienced and highly-skilled lawyers from Boies Schiller Flexner LLP, widely recognized as one of the premier law firms in this country. Defense counsel has a reputation for vigorous advocacy in the defense of complex civil cases such as this. That Class Counsel obtained this significant Settlement in the face of such shows that its representation was excellent.

### 5.    Preclusion of Other Employment

When Class Counsel undertook to represent Plaintiffs in this matter, it understood that it would spend significant time and make significant out-of-pocket expenses. The time spent by Class Counsel on this case was at the expense of the time that they could have devoted to other matters.

### 6.    The Customary and Contingent Nature of the Fee

The "customary fee" in a class action lawsuit of this nature is a contingency fee because virtually no individual possesses a sufficiently large stake in the litigation to justify paying his attorneys on an hourly basis. *See Ressler*, 149 F.R.D. at 654; *see also Norman v. Hous. Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988).

The Court should give substantial weight to the contingent nature of Class Counsel's fees when assessing the fee request. *See Behrens*, 118 F.R.D. at 548. Courts have consistently recognized that the risk of receiving little or no recovery is a major factor in determining the award of fees, and that skilled counsel should be encouraged to undertake this risk. *See Checking Account*

*Overdraft.*, 830 F. Supp. 2d at 1364 ("Numerous cases recognize that the contingent fee risk is an important factor in determining the fee award."); *Pinto*, 513 F. Supp. 2d at 1339 ("attorneys' risk is 'perhaps the foremost factor in determining an appropriate fee award")(internal quotations omitted; *Behrens*, 118 F.R.D. at 548 ("A contingency fee arrangement often justifies an increase in the award of attorneys' fees"). This case is fully contingent, meaning that Class Counsel has not received any payments whatsoever and has put up $27,035 of its own money for out-of-pocket expenses, and paid attorney salaries (not counted in the $27,035) for the duration of the case. Stern Fee Decl. ¶7.

Experience eventually teaches every lawyer that there is no such thing as a certain win in litigation. In similar cases, Plaintiff's Counsel has suffered major defeats after years of litigation, trial, and appeals in which they expended millions of dollars in time and received no compensation at all. Even a victory at trial does not guarantee success, as demonstrated in this district's *BankAtlantic* case. *In re BankAtlantic Bancorp, Inc. Sec. Litig.*, No. 07-61542-CIV, 2011 WL 1585605, at *22 (S.D. Fla. Apr. 25, 2011). And even surviving post-trial motions in the district court is no guarantee of success on appeal. *Robbins v. Koger Props.*, 116 F.3d 1441, 1148-49(11th Cir. 1997) (reversing $81.3 million jury verdict in a securities class action after almost seven years of litigation and rendering judgment in favor of defendant based on novel ruling that plaintiffs could not establish loss causation by showing the price of the security was inflated by the misrepresentations).

Lead Counsel's efforts in achieving this result have been without compensation of any kind, and its fee and payment of expenses have been wholly contingent upon the result achieved.

The contingent nature of Class Counsel's representation strongly favors the requested fee.

### 7. The Results Obtained

Courts have consistently recognized that the result achieved is a major factor to be

11

considered in making a fee award. *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Ressler*, 149 F.R.D. at 655 ("It is well-settled that one of the primary determinants of the quality of the work performed is the result obtained.").

The Settlement Amount of $1,397,500 is an outstanding result. Class Representative's expert estimates that the Class's aggregate damages based upon the alleged corrective disclosures in the amended complaint (*i.e.,* August 13, 2021) are $4.4 million for section 10(b) claims and $12.1 million for section 11 claims.[6]  The Settlement value, totaling $1,397,500 plus interest, constitutes approximately 31.7% of Section 10(b) Damages and 11.5% of Section 11 Damages. This is a highly favorable result, particularly in light of the considerable risks of litigation presented here. As a percentage of the total estimated damages, the Settlement Amount is well-above the percentage of investor losses recovered in typical securities class action settlements.

According to Cornerstone Research, the median settlement for cases with damages below $25 million recovers 11.1% of maximum damages in 2022.[7] The median recovery in cases such as this one alleging Rule 10b-5 claims with damages under $25 million was approximately 17.4% between 2012-2021. *Id.* at 6. Between 2018-2022, securities class actions that settled before motions to dismiss were filed recovered a median of $3.3 million and 9.4% of estimated damages. *Id.* at 14. The recovery here compares favorably to recoveries in similar securities class action settlements, supporting the requested fee.

Moreover, the Settlement provides for payment to Class Members now, without delay, and not some wholly-speculative payment of a hypothetically-larger amount years down the road. "[M]uch of the value of a settlement lies in the ability to make funds available promptly." *In re*

---

[6] The Section 11 damages presume Plaintiff would have defeated a negative causation defense. If Defendants were able to prevail on a negative causation defense with respects to declines in Longeveron stock other than on the date of the alleged corrective disclosure, Section 11 damages would be lower.

[7] Docket No. 50-2, p. 6.

*"Agent Orange " Prod. Liab. Litig.*, 611 F. Supp. 1396, 1405 (E.D.N.Y. 1985).

### 8.   The "Undesirability" of the Case

Class Counsel represented one of only two movants seeking lead plaintiff appointment. The sole competing lead plaintiff movant withdrew his motion upon recognizing he did not have the greatest financial interest.

As a development stage biotechnology company with no FDA approved products, Longeveron is not flush with cash. This presents a real danger that recovery may not be likely, or that, even in the event of a recovery, it would be limited. However, Plaintiff's Counsel pursued this case on behalf of Class Members and arrived at a settlement. This success speaks to Plaintiff's Counsel's tenacious representation of the Class' interests.

### 9.   The Time Limitations Imposed by the Client or the Circumstances

While not a limitation per se, Class Counsel worked with the Court's schedule to take this case through from filing to settlement hearing in about 20 months. The median time from filing to settlement hearing in securities class actions was 3.2 years, or about 38 months, in 2022. (Docket No. 50-2, at 13). This rapid-paced litigation ensures that class members will receive payments much more quickly than investors usually do in securities class actions, warranting a higher award. *Ressler*, 149 F.R.D. at 655.

### IV.   PLAINTIFF'S COUNSEL'S EXPENSES WERE REASONABLE AND NECESSARY TO ACHIEVE THE BENEFIT OBTAINED

Litigation expenses should be reimbursed if they are "reasonable and necessary to obtain the settlement." *Ressler*, 149 F.R.D. at 657; *see also Dowdell v. City of Apopka, Fla.*, 698 F.2d 1181, 1192 (11th Cir. 1983) ("all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case" may be recovered); *Behrens*, 118 F.R.D. at 549 ("plaintiff's counsel is entitled to be reimbursed from the class fund for the

reasonable expenses incurred in this action"); 1 Alba Conte, Attorney Fee Awards, § 2.19, at 73-74 (3d ed. 2006) ("Alba Conte") ("an attorney who creates or preserves a common fund by judgment or settlement for the benefit of a class is entitled to receive reimbursement of reasonable fees and expenses involved").

Class Counsel efficiently litigated this action and incurred expenses totaling $27,035 in connection with the prosecution and resolution of the Action. *See* Stern Fee Decl. ¶8. These expenses include amounts incurred to pay fees of consulting experts, mediation fees, copying, telephone, travel costs, computer-assisted research, court fees, travel, mailing and fax costs, and other customary expenditures.

**V.     THE COURT SHOULD APPROVE THE AWARD TO PLAINTIFF OF REASONABLE COSTS AND EXPENSES (INCLUDING LOST WAGES) DIRECTLY RELATING TO THE REPRESENTATION OF THE CLASS**

The Court should also award Plaintiff $1,500 for the time he spent representing the Settlement Class. The PSLRA empowers courts to grant awards to reimburse plaintiffs for "reasonable costs and expenses (including lost wages) directly relating to the representation of the class to any representative party serving on behalf of a class." 15 U.S.C. § 78u-4(a)(4); *see also* H.R. Conf. Rep. No. 369, 104th Cong., 1st Sess. 35 (1995) ("The Conference Committee recognizes that lead plaintiffs should be reimbursed for reasonable costs and expenses associated with service as lead plaintiff, including lost wages, and grants the courts discretion to award fees accordingly."). Indeed, in the wake of the Eleventh Circuit's decision in *Johnson v. NPAS Sols., LLC*, 975 F.3d 1244 (11th Cir. 2020) limiting payments to representative parties in class actions in general, lead plaintiffs have received awards under this provision of the PSLRA. *See In re Health Insurance Innovations*, 2021 WL 1341881, at *13 (awarding $3,125 lead plaintiff "to compensate him for the time he incurred in his role as Lead Plaintiff and proposed class representative pursuant to the PSLRA"); *Maz Partners LP v. First Choice Healthcare Solutions,*

14

*Inc.*, No. 6:19-cv-00619-PGB-LRH (M.D. Fla August 2, 2021) (Dkt. No. 81, ¶ 6).

Throughout this litigation, Plaintiff was available to Plaintiff's Counsel as needed and performed his duties with attentiveness and diligence, including by: (1) reviewing complaints, motion papers and other pleadings; (2) regularly communicating and corresponding with counsel regarding the litigation and settlement; (3) discussing court orders with his attorneys; and (4) and reviewing and evaluating the settlement. *See* Stern Fee Decl. Exhibit 3 (Declaration of John Bosico, or "Bosico Decl."). During the time period when this litigation was pending, Plaintiff worked as a Product and Project Manager. Plaintiff also pursued freelance accounting work and freelance computer consulting work. Bosico Decl., ¶4. In the course of his freelance work, Plaintiff has charged up to $100 per hour. Plaintiff has spent approximately 15 hours on litigation related activities described above. Bosico Decl., ¶13. In so doing, Plaintiff was unable to take on freelance business opportunities that he could have otherwise pursued. The lost wages warrant reimbursement of $1,500 for the time and effort Plaintiff expended on the Settlement Class's behalf.

Plaintiff dedicated his own valuable time faithfully representing the Settlement Class. Here, the requested compensation to Plaintiff is reasonable and thus, the Court should award the requested amount to Plaintiff.

## VI.    CONCLUSION

For the foregoing reasons, the Court should award: (i) attorneys' fees of $33\frac{1}{3}\%$, or one-third, of the Settlement Amount together with interest thereon; (ii) reimbursement of expenses of $27,035; and (iii) $1,500 to Plaintiff.

Dated: September 5, 2023

Respectfully submitted,

**THE ROSEN LAW FIRM, P.A.**

By: /s/ Laurence M. Rosen
Laurence M. Rosen
Jonathan Stern (*Pro hac vice*)
275 Madison Avenue, 40th Floor
New York, New York 10016
Phone: 212-686-1060
Fax: 212-202-3827
Email:
lrosen@rosenlegal.com
jstern@rosenlegal.com

*Lead Counsel for Lead Plaintiff
and the Class*

16